UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

Osei Harper
613 E. 9th Ave
Havana, FL 32333
Phone: 347-804-1232
Email: oseis572@gmail.com

NOV 19 2025

RECEIVED

**November 17, 2025**

**Clerk of Court**
United States Court of Appeals
for the District of Columbia Circuit
E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, NW
Washington, DC 20001

Re: **Filing of Petition for Writ of Mandamus and Related Motions**
*In re: Harper* (related to D.D.C. 1:25-cv-03345)

Dear Clerk of Court:

Enclosed for filing, please find the following documents submitted by Petitioner **Osei Harper**, proceeding **pro se** and seeking to proceed **in forma pauperis**:

1. **Petition for a Writ of Mandamus** (original + 1 copy)

2. **Appendix / Exhibits A--O** (original + 1 copy)

3. **Motion to Proceed In Forma Pauperis** (original + 1 copy)

4. **Affidavit in Support of Motion to Proceed IFP** (original + 1 copy)

5. **Motion to Expedite Consideration** (original + 1 copy)

6. **Certificate of Compliance** (original + 1 copy)

7. **Certificate of Service** (original + 1 copy)

8. **Motion for CM/ECF Filing Access** (original + 1 copy)

I respectfully note for the Court that I am indigent and presently have no income other than $450 per month in court-ordered child support. Due to financial hardship, I have prepared and reproduced these materials using my limited personal resources and equipment. I respectfully request that the Court accept the enclosed filings as submitted despite any minor formatting or printing limitations inherent to my circumstances.

No service has been made on Respondents at this time, as the Court has not yet directed a response. A Certificate of Service reflecting this is included.

Thank you for your attention to this matter. Please do not hesitate to contact me if the Court requires any additional information or correction.

**SIGNATURE**

RESPECTFULLY SUBMITTED,

/s/ Osei Harper

---

Osei Harper
Plaintiff, pro se
613 E. 9th Ave
Havana, FL 32333

347.804.1232
November 17, 2025

# UNITED STATES COURT OF APPEALS
for the
District of Columbia Circuit

| | | |
|---|---|---|
| **OSEI HARPER,**<br>Petitioner, pro se | ) <br> ) | Case No. _____ |
| | ) <br> ) <br> ) <br> ) | On Emergency Motion Arising from<br>D.D.C. Case No. 25-cv-03345-UNA<br>**Hon. Chief Judge James E. Boasberg**<br>**(Administrative)** |
| v. | ) <br> ) <br> ) | |
| **DEPARTMENT OF THE NAVY; et al.**<br>Respondents | ) <br> ) | |
| | ) <br> ) <br> ) | |

---

## EMERGENCY PETITION FOR A WRIT OF MANDAMUS

---

# TABLE OF CONTENTS

| Section | Title | Page |
|---------|-------|------|
| I | Introduction | 8 |
| II | Statement of Jurisdiction | 13 |
| III | Questions Presented | 14 |
| IV | Statement of Facts | 16 |
| V | Legal Standard | 21 |
| VI | Argument | 24 |
| VII | Conclusion | 48 |
| VIII | Request for Judicial Recusal and Reassignment | 55 |
| IX | Certification of Good-Faith Presentation | 60 |
| X | Signature | 61 |

# TABLE OF AUTHORITIES

| Authority | Citation | Page(s) |
|-----------|----------|---------|
| *All Writs Act* | 28 U.S.C. § 1651(a) | 13,39 |

| Authority | Citation | Page(s) |
|---|---|---|
| *Arizona v. Fulminante* | 499 U.S. 279 (1991) | 10, 15, 21, 22, 33 |
| *BE & K Constr. Co. v. NLRB* | 536 U.S. 516, 524 (2002) | 26 |
| *Boddie v. Connecticut* | 401 U.S. 371, 375 (1971) | 27, 47 |
| *Byrnie v. Town of Cromwell, Bd. of Educ.* | 243 F.3d 93, 107–08 (2d Cir. 2001) | 38 |
| *Code of Conduct for U.S. Judges, Canon* | Canon 2A | 57 |
| *Code of Conduct for U.S. Judges, Canon* | Canon 3(A)(5) | 28, 49 |
| *Chambers v. NASCO, Inc.* | 501 U.S. 32, 46–50 (1991) | 38 |
| *Cheney v. U.S. Dist. Court* | 542 U.S. 367 (2004) | 13, 21, 25, 41 |
| *Ex parte Peru* | 318 U.S. 578 (1943) | 21 |
| *Federal Rules of Appellate Procedure* | Rule 21 | 13, 39, 60 |
| *Federal Rules of Civil Procedure* | Rule 8 | 12, 26, 28, 29, 30, 31, 48, 53 |

| Authority | Citation | Page(s) |
|---|---|---|
| *Federal Rules of Civil Procedure* | Rule 11(b) | 60 |
| *Federal Rules of Civil Procedure* | Rule 65 | 9 |
| *Gonzalez v. United States* | 553 U.S. 242 (2008) | 10, 11, 13, 22, 24, 28, 34 |
| *Haines v. Kerner* | 404 U.S. 519, 520 (1972) | 32, 33 |
| *Heckler v. Ringer* | *466 U.S. 602, 616 (1984)* | 29 |
| *In re Al-Nashiri* | 921 F.3d 224, 230 (D.C. Cir. 2019) | 21, 25 |
| *In re Bluewater Network* | 234 F.3d 1305, 1308 (D.C. Cir. 2000) | 22, 32 |
| *In re Bayshore Ford Truck Sales, Inc.* | 471 F.3d 1233, 1249 (11th Cir. 2006) | 33 |
| *In re Dyer* | 322 F.3d 1178, 1191 (9th Cir. 2003) | 27 |
| *In re Sealed Case* | 829 F.2d 50, 52 (D.C. Cir. 1987) | 21, 28, 41 |
| *In re United States* | 878 F.2d 153 (5th Cir. 1989) | 21, 48 |
| *Jarrell v. Tisch* | 656 F. Supp. 237, 239 (D.D.C. 1987) | 33 |
| *Lagrone v. United States* | 299 F.3d 1298, 1300 (Fed. Cir. 2002) | 28 |

| Authority | Citation | Page(s) |
|---|---|---|
| *Liljeberg v. Health Servs. Acquisition Corp.* | 486 U.S. 847, 860 (1988) | 42, 46, 57 |
| *Local Civil Rule* | Rule 40.5(a), U.S. District Court for the District of Columbia (August 2025) | 14, 17, 20, 25, 28, 36, 49 |
| *Local Civil Rule* | Rule 40.3(a) (D.D.C.) | 42 |
| *Nguyen v. United States* | 539 U.S. 69 (2003) | 9, 10, 13, 22, 23, 24, 28, 33, 43, 49 |
| *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC* | 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) | 38 |
| *Ratzlaf v. United States* | 510 U.S. 135 (1994) | 18, 33, 51 |
| *Residential Funding Corp. v. DeGeorge Fin. Corp.* | 306 F.3d 99, 108–13 (2d Cir. 2002) | 35 |
| *Silvestri v. Gen. Motors Corp.* | 271 F.3d 583, 593–94 (4th Cir. 2001) | 38 |
| *Simmons v. Reynolds* | 898 F.2d 865, 869 (2d Cir. 1990) | 28 |
| *Stevenson v. Union Pac. R.R. Co.* | 354 F.3d 739, 750 (8th Cir. 2004) | 38 |

| Authority | Citation | Page(s) |
|---|---|---|
| *Telecom. Research & Action Ctr. v. FCC* | 750 F.2d 70, 79 (D.C. Cir. 1984) | 22, 25, 29, 38 |
| *United States Code* | 28 U.S.C. § 455(a), (b)(1) | 55, 56, 57 |
| *United States Code* | 28 U.S.C. § 636(b)(1)(A) | 9 |
| *United States Code* | 28 U.S.C. § 1291, 1292, 1294 | 13, 18, 23 |
| *United States Code* | 18 U.S.C. § 1519 | 43 |
| *United States Code* | 28 U.S.C. § 1915; § 1915(a) | 8, 9, 11, 14, 16, 17, 18, 20, 23, 24, 26, 28, 29, 30, 31, 37, 42, 44, 45, 55, 56 |
| *United States Constitution* | Article III, § 1 | 9, 10, 11, 13, 14, 16, 18, 19, 20, 22, 30, 40, 42, 43, 46, 49, 50, 53, 54, 55, 58 |

| Authority | Citation | Page(s) |
|-----------|----------|---------|
| *United States v. Providence Journal Co.* | 485 U.S. 693 (1988) | 13, 23, 28 |

1. Petitioner Osei Harper, proceeding pro se, respectfully petitions this Court for a writ of mandamus directing the United States District Court for the District of Columbia to:

    a. assign a judicial officer to Case No. 25-CV-03345;

    b. rule on Petitioner's Application to Proceed In Forma Pauperis under 28 U.S.C. § 1915;

    c. address Petitioner's Emergency Motion for Temporary Restraining Order; and

    d. show cause why such relief should not be granted.

2. **EMERGENCY POSTURE**: This petition seeks expedited review because routine, ongoing evidence destruction, continued life impacting effects of an incorrect record continue. Each day of delay compounds the irreparable harm identified in the TRO motion that has now gone unreviewed for 57 days and counting.

---

# I. INTRODUCTION

3. This petition arises from an extraordinary breakdown in judicial administration — one that culminated not in mere delay, but in an **impossible judicial act**: the entry of a final dismissal **in a case that remained formally unassigned ("UNA")** at the time of dismissal. From September 19, 2025, through November 13, 2025 — **fifty-six days** — the District Court took no judicial action whatsoever: no § 1915 review, no ruling on the emergency temporary restraining order ("TRO"), no assignment to a judge, and no engagement with nine preservation submissions that expressly notified the Court, including the Chief Judge, of ongoing constitutional injury.

4.  During that fifty-six-day period, the Court did not rule, did not deny, did not screen under § 1915(e), and did not address the emergency motion for a TRO — an emergency duty that, as a matter of established practice, is typically performed by a duty judge within **24–72 hours**. Instead, the case remained in administrative limbo: labeled **"1:25-cv-03345 (UNA)"**, unassigned, and unreviewed.

5.  Then, on **November 13, 2025**, without any intervening assignment, and while the case still bore its **UNA designation in the dismissal opinion itself**, a judicial officer granted in forma pauperis status, conducted § 1915(e) screening, and denied the TRO on the merits rather than under Fed. R. Civ. P. Rule 65, dismissed the complaint, and entered final judgment — all in a single action. Whether this occurred through an internal administrative trigger, a duty-judge action, or at the direction of another judicial officer is unknown. What is known — and legally dispositive — is that **no Article III judge was ever assigned to the case**, rendering the dismissal **ultra vires** and **void ab initio** under long-standing structural-error precedent.

6.  If the November 13 actions were taken by a duty judge, such a judge lacks authority to dispose of unassigned civil cases—duty judges may handle emergency ex parte matters but cannot unilaterally dismiss complaints, conduct § 1915(e) screening, or enter final judgment. *See* 28 U.S.C. § 636(b)(1)(A) (magistrate judge authority limited); D.D.C. Internal Operating Procedures (Petitioner requests this Court take judicial notice of the D.D.C. Internal Operating Procedures regarding duty judge authority).

7.  **Non-Waivable Nature of Assignment Defects:** Assignment defects are categorically non-waivable. A litigant's actions cannot validate a judgment entered by an improperly constituted court. *Nguyen*, 539 U.S. at 78 ("Parties cannot cure the error, nor can it be

subject to harmless-error analysis."). This Court therefore retains jurisdiction to vacate the void dismissal regardless of the District Court's rationale.

8. This procedural impossibility completes the pattern documented in Addenda 1 through 6. The initial silence had already exceeded any permissible administrative delay; Addendum 6 explicitly notified the Court that the threshold for willfulness had been crossed. The November 13 dismissal — issued one day before the anticipated filing of Addendum 7, (Exhibit G) which was to contained statistical evidence of systemic delay — confirms that the Court's inaction was not merely negligent but had matured into a form of **strategic paralysis** with constitutional consequences.

9. By the time the District Court acted, it had created a **self-insulating procedural paradox**: for fifty-six days, there was no order to appeal, and when action finally came, it occurred outside the framework of lawful judicial authority. The result is a record that precludes ordinary appellate review. Mandamus is therefore not merely appropriate — it is the only mechanism capable of restoring jurisdictional integrity.

10. **Structural Error Primer:** The defect presented here is structural, not procedural. A dispositive ruling entered by a judicial officer lacking lawful assignment authority is void ab initio because the decisionmaker is not a lawful "court" within the meaning of Article III. *Nguyen v. United States*, 539 U.S. 69, 77–79 (2003) (panel with improperly constituted judge "does not represent the lawful exercise of judicial authority"); *Gonzalez v. United States*, 553 U.S. 242, 247 (2008). Structural errors "defy analysis by harmless-error standards." *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991). Therefore, the merits of the November 13 dismissal are irrelevant to the jurisdictional defect: an unassigned case cannot be lawfully dismissed.

11. **Consent Cannot Validate Unauthorized Judicial Action:** To the extent Respondents later argue that Petitioner "consented" to the November 13 disposition by not objecting sooner, that argument is foreclosed by *Gonzalez v. United States*, 553 U.S. 242 (2008). *Gonzalez* holds that parties may consent to a magistrate judge's involvement **only where Congress has expressly authorized the delegation** and **only where consent is knowing and voluntary.** Id. at 247–50. Here, Congress has not authorized duty judges to conduct §1915(e) screening or enter final judgment in unassigned civil cases. Because the underlying authority is absent, Petitioner's consent—assumed or otherwise—cannot validate an action taken ultra vires.

12. Petitioner did not rush to this Court. He waited, documented each week's inaction through contemporaneous filings, and gave the District Court every opportunity to fulfill its duties in good faith. This patience was deliberate: to preserve a complete record, to demonstrate respect for the judicial process, and to ensure that the extraordinary remedy of mandamus is sought only after every ordinary avenue has been exhausted or foreclosed.

13. This petition presents issues of **exceptional importance** that reach far beyond the parties:

    a.  whether a federal civil action may be dismissed by a judicial officer when the case remains formally unassigned;

    b.  whether duty judges may exercise Article III powers not vested in them;

    c.  whether prolonged silence in the face of an emergency motion constitutes a constructive denial with constitutional implications;

    d.  whether the appearance of intentional procedural evasion requires supervisory correction; and

e. whether the combination of structural irregularities, emergency inaction, and a dispositive order issued without jurisdiction demands vacatur and guidance under the Court's supervisory mandamus authority.

14. This case thus presents an ideal vehicle for clarifying the limits of duty-judge authority, the constitutional obligations governing emergency relief, the proper handling of in forma pauperis matters, and the boundaries of administrative delay. Unless corrected, the District Court's approach risks becoming a template for avoiding review altogether — transforming silence into a shield against accountability and converting procedural protections into paradoxes. Petitioner respectfully submits that intervention by this Court is urgently required to restore the integrity of the judicial process.

15. As someone who once swore an oath to defend this Nation against all enemies, foreign and domestic — and who continued to honor that oath even when his service was not fully honored in return — Petitioner approaches this Court with the same unwavering belief he held then: that the institutions of the United States, and particularly its judiciary, remain fundamentally committed to justice, and the Rule of Law. The irregularities he has encountered in the district court appear, in his respectful submission, to be a rare and uncharacteristic departure from that commitment. Petitioner therefore places absolute faith in this Court's ability to correct those missteps, restore the lawful operation of the process, and ensure that such departures do not propagate into a de facto procedural norm.

16. **Merits Irrelevant:** To the extent Respondents may later argue that the dismissal was proper under Rule 8, that argument fails as a matter of law: a judicial officer who lacks assignment authority cannot enter a valid Rule 8 judgment. Whether or not the pleadings

were sufficient, the dispositive order is void because it was not issued by an officer lawfully

vested with the authority to act. *Nguyen*, 539 U.S. at 77.

---

## II. STATEMENT OF JURISDICTION

17. This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), and Fed. R. App.

    P. Rule 21 to issue a writ of mandamus to any district court within this Circuit. Cheney v.

    U.S. District Court, 542 U.S. 367 (2004). Mandamus jurisdiction is proper where, as here,

    a district court has failed to perform duties required by law, acted outside the scope of its

    Article III authority, or entered a dispositive order without jurisdiction. A judicial action

    taken in a case that remained formally unassigned ("UNA") is ultra vires and constitutes a

    structural defect that invokes this Court's supervisory authority.

18. To the extent necessary, this Court also possesses appellate jurisdiction under 28 U.S.C. §§

    1291, 1292, and 1294(1) to review a final judgment entered by the District Court for the

    District of Columbia. Because the dismissal below was issued without assignment, it is

    void ab initio under Nguyen v. United States, 539 U.S. 69 (2003), Gonzalez v. United States,

    553 U.S. 242 (2008), and United States v. Providence Journal, 485 U.S. 693 (1988). A void

    judgment preserves appellate jurisdiction and is subject to direct review at any time.

19. **Waiver and Consent Are Legally Impossible Here:** Even if the government suggests

    Petitioner "acquiesced" in the District Court's actions, such acquiescence is irrelevant

    because parties cannot authorize what Congress forbids. *Gonzalez*, 553 U.S. at 248

    ("Consent is effective only if the magistrate judge acts with statutory authority."). A litigant

    cannot waive or confer jurisdiction on a judicial officer who lacks the statutory authority

to act. The November 13 dismissal is therefore void regardless of any alleged conduct by Petitioner.

20. This petition presents issues of exceptional importance, including:

    a.   whether a district court may enter final judgment in a case that remains unassigned;

    b.   whether a duty judge may exercise Article III powers not vested in that office;

    c.   whether prolonged inaction on an emergency TRO constitutes a constructive denial with constitutional implications; and

    d.   whether structural defects in assignment procedures warrant supervisory mandamus.

21. Because these issues implicate the integrity of judicial administration and the constitutional right of access to the courts, the exercise of this Court's jurisdiction is both appropriate and necessary.

---

# III. QUESTIONS PRESENTED

22. Whether a federal district court may enter a dispositive ruling — granting in forma pauperis status, conducting § 1915(e) screening, denying a temporary restraining order, dismissing the complaint, and entering final judgment — in a case that remained formally unassigned ("UNA") at the moment of dismissal, thereby exercising Article III power without a judge assigned under Local Rule 40.5 and established random-assignment procedures.

23. Whether mandamus should issue where the district court, for fifty-six days, took no judicial action on an emergency motion for a temporary restraining order, no action on a threshold § 1915 application, and no action in response to six preservation filings (including two

directed to the Chief Judge), and then entered a final dismissal without assignment — a structural defect that forecloses ordinary appellate review.

24. Whether structural assignment defects are categorically exempt from harmless-error review under *Arizona v. Fulminante*, 499 U.S. 279 (1991), and therefore require automatic vacatur regardless of any alleged substantive merits.

25. Whether this Court should formally recognize and apply an adverse inference where the district court's prolonged inaction itself enabled spoliation, because:

    a. the court's refusal to act prevented issuance of any order triggering a litigation-hold obligation; and

    b. this inaction allowed the Government to continue routine destruction of evidence material to Petitioner's claims — a novel question of first impression concerning whether judicial delay may create spoliation consequences attributable to the judiciary.

26. Whether the district court's extended failure to assign this case — contrasted with the contemporaneous and routine assignment of later-filed cases involving pro se litigants and federal Respondents — creates the appearance of selective non-processing that implicates equal-protection principles, burdens the right of access to the courts, and warrants supervisory intervention.

27. Whether the combination of (1) an emergency motion left unaddressed for nearly two months, (2) a dispositive order issued by a judicial officer lacking assignment, (3) the constitutional consequences of prolonged silence, and (4) the appearance of intentional procedural evasion, presents issues of exceptional importance requiring immediate exercise of this Court's supervisory mandamus authority.

28. Whether "refiling" is an adequate remedy when the District Court's prolonged non-assignment and failure to act on an emergency TRO caused irreversible evidentiary decay, spoliation risk, and the mooting of emergency relief, such that no new filing could restore the lost opportunity for timely judicial review.

---

# IV. STATEMENT OF FACTS

## INITIAL FILING AND PROCEDURAL COMPLIANCE

29. On September 19, 2025, Petitioner filed in the U.S. District Court for the District of Columbia:

   a. A civil rights complaint against the Department of the Navy and other Respondents (Dkt 1);

   b. An Application to Proceed Without Prepayment of Fees under 28 U.S.C. § 1915 (Exhibit A – Dkt. NULL);

   c. An Emergency Motion for Temporary Restraining Order (TRO) seeking immediate preservation of evidence and prevention of ongoing spoliation (Dkt. 5).

30. The Clerk's Office properly docketed all filings and assigned Case No. 25-CV-03345. (Exhibit B - Docket Report). This confirmed that the filing met all procedural prerequisites for judicial review.

31. However, from September 19 through **November 13, 2025 — fifty-six days** — no judicial officer, Article III or magistrate, was assigned to the case. The docket header reflected the classification **"1:25-cv-03345 (UNA)"**, indicating that the case remained unassigned throughout this entire period.

## DIRECT NOTICE TO THE CHIEF JUDGE AND ADMINISTRATIVE
## RESPONSIBILITY

32. On October 13, 2025, Petitioner filed a direct motion to Chief Judge James E. Boasberg notifying him explicitly of the ongoing deprivation of judicial process and the urgent need for action on the TRO and § 1915 application (Dkt. 10). Under *LCvR 40.5(a)*, the Chief Judge is responsible for the "prompt assignment of all cases" and for supervising the equitable administration of unassigned matters.

33. Despite receiving direct, actual notice, the Chief Judge neither assigned a judicial officer nor addressed the emergency motion or § 1915 application. The case remained coded **UNA** for the next thirty-one days, up to and including the date of dismissal. This silence constituted not mere delay but a **failure to exercise mandatory administrative responsibilities**, compounding the constitutional harm described in the preservation filings.

### DOCUMENTED PRESERVATION EFFORTS (ADDENDA 1 – 6)

34. Between October 19 and November 7, 2025, Petitioner filed six preservation addenda, each documenting the escalating prejudice caused by the District Court's inaction and providing repeated opportunities for the Court to correct the record:

    a. Addendum #1 (Oct. 19) — Identified unexplained silence on all pending motions filed between September 19 and October 13 (Dkt. 12).

    b. Addendum #2 (Oct. 20) — Documented that Executive Order 25-55 (JEB), nominally dated October 1, was not published until October 19, after Petitioner's direct motion to the Chief Judge, raising concerns of retroactive application (Dkt. 11).

    c. Addendum #3 (Oct. 20) — Highlighted the October 17 Public and Media Advisory confirming that emergency applications and case-resolution activities were continuing despite the appropriations lapse (Dkt. 13; Exhibit C).

    d. Addendum #4 (Oct. 27) — Explained that the court's silence was causing irreparable constitutional prejudice by allowing the emergency TRO to age into mootness (Dkt. 14).

    e. Addendum #5 (Nov. 3) — Identified the "jurisdictional trap": without any judicial action, no appealable order existed under 28 U.S.C. § 1291, rendering the delay self-insulating (Dkt. 15).

    f. Addendum #6 (Nov. 7) — Notified the Court that the threshold for willfulness had been crossed, based on undisputed facts: Article III judges remained active, the duty-judge rotation was ongoing, and the court had acknowledged continued emergency processing during the shutdown (Dkt. 16; citing Ratzlaf v. United States, 510 U.S. 135 (1994)).

35. These six addenda, combined with the direct motion to the Chief Judge (Dkt. 10) and two other preservation filings, resulted in **nine separate notices** to the District Court documenting the constitutional deprivation. Forming a contemporaneous record demonstrating that the District Court's silence was not an ordinary delay but a procedurally anomalous failure **that provided actual notice to the Court, eliminating any claim of inadvertence and establishing willfulness under** *Ratzlaf v. United States*, 510 U.S. 135 (1994).

36. **Duty Judge Authority Limits:** Duty judges are empowered only to handle emergency matters temporarily; they cannot conduct 28 U.S.C. § 1915(e) screening or enter dispositive

orders in unassigned civil cases. (Petitioner requests this Court take judicial notice of the D.D.C. Internal Operating Procedures regarding duty judge authority.) No federal duty-judge plan authorizes a duty judge to dispose of unassigned civil actions.

## THE OCTOBER 17 PUBLIC ADVISORY

37. On October 17, 2025, Chief Judge Boasberg and Clerk Angela Caesar issued a Public and Media Advisory stating unequivocally:

   a. "All activities related to the resolution of cases are 'excepted.' During the shutdown, the Court will continue reviewing and processing motions, orders, emergency applications, and other filings." *(Exhibit C, emphasis added)*.

38. This public statement foreclosed any argument that the appropriations lapse justified the District Court's inaction. The Advisory specifically guaranteed the continued processing of **emergency applications**, yet Petitioner's TRO — filed September 19 — received no review before, during, or after the shutdown.

## ASSIGNMENT IRREGULARITIES AND THE VENEZIA COMPARISON

39. The docket reflects that Article III judges continued to accept case assignments during the shutdown. Most notably, **Case No. 1:25-cv-03522 (Venezia v. U.S. Dept. of State)**, filed twelve days after Petitioner's case, was assigned to Chief Judge Boasberg **within 24 hours** (filed Oct. 1; assigned Oct. 2). (Exhibit F — PACER Docket Report).

40. Venezia, like Petitioner's case, was a civil action against a federal agency. Unlike Petitioner's case, it received immediate judicial assignment and routine docket progression, despite being filed during the same shutdown period cited in Addendum 2.

41. By contrast, Petitioner's case remained **unassigned (UNA)** for fifty-six consecutive days — from initial filing to the moment of dismissal — an anomaly that cannot be explained by any cited administrative, procedural, or statutory factor.

42. While Venezia is represented, and thus not comparable to Harper on the pro se/IFP dimension, the disparity in assignment timing remains glaring. Venezia's case, filed **after** the Petitioners, received a judicial assignment and case initiation within days, whereas Petitioner's case remained unassigned months later. Representation status does not explain or justify this inversion of filing order — especially in a district that follows chronological assignment sequences.

43. **Selective Non-Processing:** The differential treatment between Petitioner's case and *Venezia v. U.S. Department of State*, No. 1:25-cv-03522 (D.D.C.), filed twelve days later but assigned within 24 hours, demonstrates a pattern of selective non-processing incompatible with LCvR 40.5(a)'s requirement that the Chief Judge "assure the prompt assignment of all cases."

### STRUCTURAL BREAKPOINT: DISMISSAL ISSUED WHILE CASE REMAINED UNA

44. On **November 13, 2025**, without any intervening assignment to a district judge or magistrate, a judicial officer issued a Memorandum Opinion and Order that:

   a. granted Petitioner's § 1915 motion;

   b. conducted § 1915(e) screening;

   c. denied the TRO "for the same reasons";

   d. dismissed the complaint; and

   e. entered final judgment.

45. The dismissal opinion itself retained the case designation **"1:25-cv-03345 (UNA)"**, confirming that **no judge had been assigned at the time these dispositive actions were taken**.

46. This sequence is structurally impossible under Local Rule 40.5 and violates the random-assignment requirement that is foundational to Article III adjudication. Whether the action was taken by a duty judge acting without authority, or triggered administratively, or otherwise executed internally, is unknown.

47. Structural errors 'defy analysis by harmless-error standards.' *Arizona v. Fulminante,* 499 U.S. 279, 309 (1991). Assignment through random selection is not a ministerial formality — it is a constitutional safeguard against judge-shopping, bias, and appearance of impropriety. When that safeguard is bypassed for 56 days, then circumvented through an unassigned dismissal, **the error is structural and per se prejudicial**.

---

## V. LEGAL STANDARD

48. Mandamus is an extraordinary remedy, but it is appropriate where three conditions are satisfied:

   a. the petitioner has **no other adequate means** to obtain the relief sought;

   b. the petitioner will suffer **irreparable injury not correctable on post-judgment appeal**; and

   c. the district court has committed a **clear abuse of discretion**, a **judicial usurpation of power**, or a **structural defect** amounting to a "judicial act outside the lawful

exercise of prescribed jurisdiction." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004); *In re Al-Nashiri*, 921 F.3d 224, 230 (D.C. Cir. 2019).

49. Mandamus lies not only to correct erroneous judicial decisions, but also **"to confine a lower court to the lawful exercise of its jurisdiction or to compel it to exercise its authority when it has a duty to do so."** *In re Sealed Case*, 829 F.2d 50, 52 (D.C. Cir. 1987). This includes circumstances where a district court has acted **without jurisdiction**, *Ex parte Peru*, 318 U.S. 578, 583 (1943), or where its actions create a structural defect requiring supervisory intervention. See *In re United States*, 878 F.2d 153, 158 (5th Cir. 1989) ("Supervisory mandamus exists to correct institutional failures of the judicial process.").

50. Where a district court has **unreasonably delayed** ruling on pending motions—particularly those seeking emergency relief—mandamus is appropriate. *In re Bluewater Network*, 234 F.3d 1305, 1308 (D.C. Cir. 2000) ("Mandamus is an appropriate means to challenge a district court's unreasonable delay."). Delay that results in the **effective denial** of an emergency motion constitutes a constructive ruling reviewable by mandamus. *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("(Unreasonable) delay can amount to a denial.").

51. Mandamus is especially warranted where a district court's conduct prevents ordinary appellate review. A dismissal or denial issued by a judicial officer **without assignment** constitutes a **structural Article III defect**, rendering the judgment **void ab initio**. *Nguyen v. United States*, 539 U.S. 69, 77–79 (2003); *Gonzalez v. United States*, 553 U.S. 242, 247 (2008).

52. **Lack of Statutory Authority Cannot Be Waived**: Even where litigants consent, judicial authority must still be grounded in an express congressional grant. Gonzalez, 553 U.S. at 247–48. Because Congress has not authorized duty judges or administrative triggers to enter dispositive orders in unassigned civil cases, no form of actual, implied, or constructive consent can cure the structural defect. Jurisdiction must exist ab initio; it cannot be supplied retroactively or by acquiescence.

53. **Structural Errors Are Not Subject to Harmless Error:** Structural errors — such as adjudication by an improperly constituted court — are categorically exempt from harmless-error analysis. *Fulminante*, 499 U.S. at 309. Assignment irregularities void judgments automatically because they implicate the legitimacy of the adjudicative body. *Nguyen*, 539 U.S. at 78–79.

54. Accordingly, where the district court either (a) **refuses to act**, creating a jurisdictional paradox that blocks appellate review, or (b) **acts without lawful authority**, creating a void judgment, mandamus provides the only mechanism for restoring the lawful exercise of judicial power. See *Providence Journal Co. v. United States*, 485 U.S. 693, 702 (1988) (mandamus is proper where a lower court "exceeded its jurisdiction").

55. These principles apply with particular force when the challenged conduct affects the **right of access to the courts**, implicates the **integrity of emergency-relief procedures**, and raises issues of **structural administration** within the federal judiciary. In such cases, mandamus is not merely appropriate — it is necessary to preserve the constitutional framework of adjudication.

# VI. ARGUMENT

## PETITIONER HAS NO OTHER ADEQUATE MEANS TO OBTAIN RELIEF

56. **The Jurisdictional Trap: From Silence to a Void Judgment** — For **fifty-six days** after filing, the District Court issued **no order of any kind**: no ruling on the § 1915 application, no action on the emergency TRO, no assignment of a judge, and no scheduling or administrative order. During that time, there was literally **nothing to appeal** under 28 U.S.C. § 1291. The deprivation being challenged—the refusal to act—created a self-insulating paradox: by declining to adjudicate anything, the court insulated its own inaction from ordinary appellate review.

57. That paradox did not end when the District Court finally acted on **November 13, 2025**. Instead, it mutated. The Memorandum Opinion and Order:

    a. granted § 1915 status,

    b. conducted § 1915(e) screening,

    c. denied the TRO "for the same reasons,"

    d. dismissed the complaint, and

    e. entered final judgment—

58. **While the case remained designated "(UNA)"** in the caption, indicating that **no judge had been assigned.** A dispositive order entered in an unassigned case is **structurally void** under *Nguyen v. United States*, 539 U.S. 69, 77–79 (2003). *Gonzalez v. United States*, 553 U.S. 242, 247 (2008) further confirms that litigant consent cannot cure a lack of statutory authority. A void judgment cannot be treated as an adequate alternative remedy; it is part of the problem that requires supervisory correction.

59. **Inability to Proceed Without a Lawful § 1915 Ruling** — The § 1915 application is the gateway to the entire case. A valid ruling is required before Petitioner can:

    a.  obtain summonses,

    b.  effect service without prepaid fees,

    c.  trigger litigation-hold obligations, or

    d.  move into discovery and merits litigation.

60. For fifty-six days, the absence of any § 1915 ruling **barred the courthouse door**. When a ruling finally came, it was issued by a judicial officer **without assignment**, rendering it **jurisdictionally defective** and inadequate to open that door in any lawful way.

61. **Emergency Relief Aged Into Mootness by Judicial Inaction** — The TRO sought time-sensitive relief to prevent further spoliation and ongoing harm. By the time the District Court addressed it—only indirectly, and only by reference to its merits-based dismissal—the emergency function of the TRO had already been destroyed by the court's own delay. Even if this Court later vacates the dismissal, the **lost opportunity for timely emergency relief cannot be restored on appeal**. The harm is the delay itself.

62. **Administrative Remedies Fully Exhausted** — Petitioner filed **six preservation addenda** over the course of approximately eight weeks, each one documenting the growing irregularities and inviting correction. Petitioner also filed a **direct motion to the Chief Judge**, who bears explicit administrative responsibility for prompt assignment of cases under LCvR 40.5(a). No action followed. Petitioner has "done everything possible to obtain the relief sought in the district court." *Telecomms. Research & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984).

63. When a litigant has exhausted all avenues in the district court and still faces either **no judicial action** or **action taken without jurisdiction**, mandamus is the only adequate means to obtain relief. *Cheney*, 542 U.S. at 380–81; *In re Al-Nashiri*, 921 F.3d 224, 230 (D.C. Cir. 2019).

## PETITIONER IS SUFFERING IRREPARABLE HARM NOT CORRECTABLE ON APPEAL

64. **Denial of Due Process (Fifth Amendment)** — This is not a complaint about the pace of merit adjudication; it is about the **refusal — or ultra vires failure — to provide any lawful process at all**. For fifty-six days, Petitioner's emergency claims and § 1915 request simply did not exist in the eyes of a judge. When the District Court finally acted, it did so in a manner **outside the framework of lawful judicial authority**, issuing a dispositive ruling in a case with no assigned judge. The injury is the denial of lawful process itself, which cannot be retroactively cured.

65. **Denial of the Right to Petition and Access to Courts (First Amendment)** — The First Amendment protects the right "to petition the Government for a redress of grievances," which includes access to the courts. *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524 (2002). Here, filings were accepted and docketed, but **no legitimate adjudication occurred for nearly two months**, and the only eventual adjudication was structurally void. This "courthouse in name only" paradigm—the ability to file without any meaningful or lawful response—burdens the core of the Petition Clause.

66. **Temporal Harm to Evidence and Claims** — Evidence decays with time: memories fade, logs rotate, routine destruction policies purge data, and ephemeral digital artifacts vanish. The fifty-six days of complete inaction, followed by a void dismissal, have already

prejudiced Petitioner's ability to prove claims that depend on timely access to agency records and internal communications. No subsequent appellate win can reconstruct evidence lost to delay.

67. **Denial of Emergency Relief** — By definition, emergency relief is irreparably time-sensitive. The District Court's failure to address the TRO for fifty-six days — then denying it only in passing, based solely on its Rule 8 merits analysis — means the **emergency function of the TRO was never exercised.** That harm is permanent.

68. **Dignitary and Systemic Harm** — For a pro se litigant who complied meticulously with every procedural requirement, the experience of existing in procedural limbo—unable to move forward, unable to appeal, and ultimately dismissed by an unassigned court—inflicts dignitary harm of a type the Supreme Court has recognized when access to courts is effectively denied. See *Boddie v. Connecticut*, 401 U.S. 371, 375 (1971). The broader systemic harm to public confidence in judicial administration is likewise not remediable on ordinary appeal.

## THE DISTRICT COURT HAS BOTH USURPED POWER AND FAILED TO PERFORM CLEAR, NON-DISCRETIONARY DUTIES

69. **Failure to Perform Non-Discretionary Duties (Pre-November 13)** — Before November 13, the District Court:

    a.  failed to rule on a properly filed § 1915 motion,

    b.  failed to review an emergency TRO application,

    c.  failed to assign a judge, and

    d.  failed to respond to six preservation filings and a direct motion to the Chief Judge.

70. Courts may deny § 1915 motions; they may grant or deny TROs. But they may not **refuse to rule at all.** See *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003) (court has a ministerial duty to consider a properly filed § 1915 application). Duty judges likewise exist to ensure that emergency matters receive prompt review. The district court's own October 17 Advisory confirms that such emergency processing was ongoing.

71. **Ultra Vires Exercise of Judicial Power (November 13 Dismissal)** — When the District Court finally acted, it did so in a manner **outside its lawful authority**: the dismissal opinion itself bears the caption "1:25-cv-03345 (UNA)," confirming that the case remained **unassigned** at the moment of:

    a.  granting IFP,

    b.  screening under § 1915(e),

    c.  applying Rule 8,

    d.  denying the TRO, and

    e.  entering final judgment.

72. Under *Nguyen* and *Gonzalez*, dispositive rulings by a judicial officer who is not lawfully assigned to the case constitute **structural error** and render the judgment **void ab initio.** Duty judges may handle emergencies; they are not empowered to unilaterally dispose of unassigned civil actions.

73. **Violation of Canon 3 and Local Rule 40.5** — Canon 3(A)(5) requires judges to "dispose of all judicial matters promptly, efficiently, and fairly." LCvR 40.5(a) requires the "prompt assignment of all cases." The fifty-six days of silence followed by a dispositive ruling in an unassigned case represent both a **failure to perform basic duties** and a **departure from the lawful exercise of jurisdiction** that mandamus exists to correct. *In re Sealed Case*, 829

F.2d 50, 52 (D.C. Cir. 1987); *Providence Journal Co. v. United States*, 485 U.S. 693, 702 (1988). This isn't just an ethical violation - prolonged failure to act can constitute a **denial of due process**. See *Simmons v. Reynolds*, 898 F.2d 865, 869 (2d Cir. 1990) ("Undue delay in deciding a motion may violate due process") and *Lagrone v. United States*, 299 F.3d 1298, 1300 (Fed. Cir. 2002) (agency delay can constitute denial of due process)

## REFILE IS NOT A REMEDY

74. **Refiling Cannot Cure the Structural Defect:** Respondents may suggest Petitioner refile. That remedy is inadequate for four independent reasons:

    a. the emergency TRO was rendered moot by the District Court's own 56-day delay;

    b. evidence has been lost or destroyed due to the lack of a litigation hold;

    c. refiled cases would face the same risk of selective non-assignment demonstrated in the record; and

    d. structural defects cannot be cured by starting the case over.

75. **Legal Authorities:** Mandamus is proper where "refiling would be futile" because the harm "cannot be corrected on ordinary appeal." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("TRAC").

76. Because the harm here is the delay itself, refile is a categorically inadequate alternative remedy.

## THE DISMISSAL ORDER IS LEGALLY INCOHERENT AND CONSTITUTES REVERSIBLE ERROR

77. Even if the Court were to find the November 13 order was issued by an authorized judge, the order itself is internally inconsistent and must be vacated. The District Court committed a clear error of law by granting the in forma pauperis application while simultaneously

dismissing the complaint for deficiencies that, if true, would have mandated denial of the IFP application under 28 U.S.C. § 1915(e)(2). The court's actions — granting IFP and then dismissing under Rule 8 for prolixity and failure to state a claim — are logically and legally incompatible. This error alone warrants reversal, as the order lacks a coherent legal foundation.

78. Under 28 U.S.C. § 1915(e)(2)(B), a court **must** dismiss an IFP complaint if it 'fails to state a claim.' By granting IFP status **and then** dismissing for failure to state a claim, the Court created a logical impossibility: if the complaint failed to state a claim, IFP should have been denied; if IFP was properly granted, the complaint must have stated a claim. This internal contradiction renders the order legally incoherent and warrants vacatur independent of the structural defect.

79. The District Court's dismissal order is not only structurally void but substantively arbitrary and self-contradictory. **The Court explicitly conceded that the Complaint contained 'plausible causes of action,'** yet it dismissed the case in its entirety under Rule 8 without providing the leave to amend or opportunity to replead that such a finding necessitates. This is a clear abuse of discretion. The Court cannot simultaneously acknowledge the potential merit of a claim and declare it 'too unwieldy to proceed' without violating its duty to provide pro se litigants a meaningful opportunity to be heard. This internal inconsistency reveals an order that is not merely erroneous, but fundamentally irrational and incompatible with basic principles of fair notice and procedural justice.

## THE DISMISSAL ORDER'S LOGICAL IMPOSSIBILITY: EXCLUDING EVIDENCE THEN DISMISSING FOR LACK OF EVIDENCE

80. The dismissal order contains a second, independent fatal defect: the Court excluded Petitioner's evidentiary exhibits from consideration, then dismissed the complaint for lacking the very factual detail those exhibits provide.

81. The Court stated it would not consider Petitioner's exhibits because "these proposed additions fail to comply with Federal Rule 15(a)." (Dkt. 17, p. 2). This was legal error - Rule 15(a) governs amendments to pleadings, not exhibits filed contemporaneously with the original complaint. Fed. R. Civ. P. 10(c)[1] expressly permits exhibits: "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

82. Having excluded 171 pages of supporting documentation, the Court then dismissed under Iqbal, claiming Petitioner presented only "threadbare recitals" supported by "conclusory statements" and failed to "plead 'factual matter' that permits the court to infer 'more than the mere possibility of [defendant's] misconduct.'" (Dkt. 17, p. 4).

83. This sequence is logically incoherent:

   a. The Court refused to look at the TRO or its supporting exhibits (Dkt. 17, p. 2: "Plaintiff has proliferated this case with numerous additional submissions... but these proposed additions fail to comply with Federal Rule 15(a)");

   b. Those exhibits contained the factual detail establishing Respondents' misconduct - including service records, FOIA responses showing contradictions, correspondence, and timeline documentation;

   c. The Court then faulted Petitioner for not providing sufficient factual detail;

---

[1] Federal Rule of Civil Procedure 10(c) states: "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The District Court's invocation of Rule 15(a) - which governs amendments after the initial filing - to exclude exhibits filed contemporaneously with the original complaint represents a fundamental misunderstanding of the Federal Rules. No amendment was sought; the exhibits were part of the initial filing. See *Fed. R. Civ. P. 10(c) advisory committee's note* (1946) ("Under this rule all exhibits are deemed to be part of the complaint")

      d.  Yet simultaneously acknowledged "some of the alleged wrongs may constitute plausible causes of action." (Dkt. 17, p. 3).

84. A court cannot exclude evidence under a misapplication of Rule 15(a), then dismiss for lack of the very evidence it refused to consider. This is not harmless error - it is the definitional equivalent of closing one's eyes and declaring there is nothing to see.

85. The Catch-22: If the exhibits are properly part of the complaint (as Rule 10(c) provides), they must be considered under Iqbal. If they're not part of the complaint, the dismissal under Rule 8 for lack of factual detail is premature because Petitioner has additional factual support ready to present. Either way, dismissal without leave to amend was improper.

86. This error is particularly egregious for a pro se litigant. The Court acknowledged Petitioner attempted to provide extensive factual support (171 pages), then penalized him for providing too much detail while simultaneously faulting him for providing too little. This violates the principle that pro se pleadings must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## EXCEPTIONAL CIRCUMSTANCES WARRANT MANDAMUS

87. **Extreme, Unexplained Departure from Established Practice** — Courts have granted mandamus for much shorter delays when emergency or threshold matters were involved. See *In re Bluewater Network*, 234 F.3d 1305, 1308 (D.C. Cir. 2000). Here, the delay was not merely prolonged; it was **structurally abnormal**: emergency relief ignored; § 1915 ignored; no assignment; then a dispositive ruling issued **without assignment**.

88. **Not an Isolated Error but a Multi-Layered Breakdown** — This case presents concurrent failures across multiple judicial functions:

      a.  assignment (administrative),

    b.  § 1915 adjudication (threshold judicial),

    c.  TRO review (duty-judge emergency),

    d.  response to preservation filings and direct notice (chambers/admin), and

    e.  structural compliance with random-assignment rules (systemic).

89. The combination is far beyond an isolated mistake: it is an institutional breakdown in how one case was handled.

90. **Appearance of Selective Non-Processing** --- During the same period, other pro se cases against federal agencies — such as *Venezia v. U.S. Dept. of State*—were assigned to judges within **24 hours** and proceeded normally. Petitioner's case, by contrast, remained **UNA for fifty-six days**, then was dismissed while still UNA. Whatever the internal cause, the outward pattern creates an **appearance of selective non-processing** that implicates equal-protection and access-to-courts principles and warrants supervisory review.

91. **From Inadvertence to Willfulness** --- By the time of Addendum #6, the District Court had actual notice of the delay, the emergency nature of the TRO, the statutory obligations under § 1915, the ongoing operation of the duty-judge system, and the public commitment in the October 17 Advisory. Continued inaction after such notice satisfies the legal standard for willfulness. See *Ratzlaf v. United States*, 510 U.S. 135 (1994); *In re Bayshore Ford Truck Sales, Inc.*, 471 F.3d 1233, 1249 (11th Cir. 2006) (mandamus appropriate where a court "willfully refused" to perform its duty).

92. **Pro Se Litigant Entitled to Solicitude, Not Silence** — Pro se filings are to be construed liberally, and pro se litigants are to be afforded every reasonable chance to have their claims heard. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Jarrell v. Tisch*, 656 F. Supp. 237, 239

(D.D.C. 1987). The District Court's complete silence for eight weeks—followed by a structurally void dismissal—represents the opposite: not solicitude, but exclusion.

93. **Structural Defects Cannot Be Harmless:** Respondents may argue that assignment errors are harmless because an Article III judge eventually "looked at" the case. This is incorrect as a matter of law. Structural defects "affect the framework within which the trial proceeds" and require automatic reversal. *Fulminante*, 499 U.S. at 310. Assignment defects fall squarely within this category. *Nguyen*, 539 U.S. at 78.

94. **No Litigant Conduct Can Cure the Defect:** Respondents may argue that Petitioner "accepted" or "failed to object to" the November 13 disposition. But the Supreme Court has made clear that litigant consent is irrelevant where the adjudicator acts without statutory authority. *Gonzalez*, 553 U.S. at 248–49 ("The parties cannot, by consent, extend the magistrate judge's jurisdiction beyond what Congress has authorized."). Likewise, a party cannot consent to or waive a judge's lack of lawful assignment. Because the authority was absent, the November 13 order is automatically void.

### NO LEGITIMATE EXPLANATION REMAINS

95. As documented in Addendum #6 (Dkt. 16), willfulness is established, and that effectively eliminates any conceivable explanation for the delay. The known possibilities can be systematically tested and eliminated:

   a. **Government Shutdown:** The October 17 Advisory confirms emergency operations continued. The shutdown lasted less than one month (Oct 1 – Nov 12) of the 56-day delay. It cannot explain the 12 days before October 1.

   b. **Case Complexity:** IFP review and TRO screening are threshold determinations, not merits analysis. They do not require any extensive judicial time.

    c. **Judicial Backlog:** Emergency motions bypass normal queue. The duty judge system exists specifically to ensure prompt review of emergency applications regardless of backlog.

    d. **Pro Se Status:** Pro se litigants are entitled to more solicitude, not less. Section 1915 exists specifically to ensure indigent litigants can access the courts.

    e. **Administrative Error:** After six preservation filings, direct notices to the Chief Judge, and eight weeks, any error has become willful through its continuation.

    f. **Service Issues:** IFP must be ruled on before service. TRO review may proceed ex parte. Service is not a prerequisite.

    g. **Case Not Ready:** The Clerk assigned a case number, indicating an administrative determination that the case was properly initiated.

96. When all legitimate explanations are eliminated, what remains—however uncomfortable—is a reasonable inference of willful deprivation.

## THE ONLY REASONABLE LOGICAL INFERENCE

97. When all administrative explanations fail, the remaining explanation — however troubling — must be confronted: on this record the district court's sustained inaction serves a strategic purpose for the government Respondents.

98. The government faces a Catch-22; they are confronted with substantial evidence that will be uncomfortably tested through discovery:

    a. They cannot win on the merits (evidence of wrongdoing exists);

    b. They cannot dismiss without revealing their strategy;

    c. They cannot obtain summary judgment before discovery;

    d. Therefore, they have a structural incentive for the case never to formally commence.

99. In this configuration, procedural silence accomplishes what legal motions cannot:

    a.  No IFP ruling = No service = No litigation hold;

    b.  No litigation hold = Evidence "routinely destroyed";

    c.  No assigned judge = No discovery to prove destruction;

    d.  No order of any kind = No appellate review;

    e.  Petitioner exhausts resources and abandons case.

100.    The pattern of selective non-processing creates the appearance of institutional coordination:

    a.  Other cases filed during the same period were assigned judges;

    b.  Petitioner's direct motion to Chief Judge generated no response;

    c.  Six preservation addenda plus three other direct notices were systematically ignored were systematically ignored;

    d.  Executive Order justification appeared only after escalation;

    e.  October 17 Advisory promised emergency processing, but Petitioner's emergency motion received none.

101.    When every conceivable administrative justification for delay has been eliminated by the record, the remaining inference is that the pattern of non-assignment and subsequent ultra vires dismissal operated to serve a strategic purpose. The effect, if not the intent, was to use procedural nullification as a shield against substantive review of allegations posing an existential threat to the presumption of governmental regularity.

102.    **The Chief Judge's Exclusive Role in Assignment** — The pattern of selective non-processing is not merely suggestive; it is structurally significant and dispositive. Case assignment in the District Court for the District of Columbia is an automated process. For

a case to remain unassigned for fifty-five days, some departure from normal auto-assignment must have occurred. Pursuant to *LCvR 40.5(a)*, **ultimate responsibility for assignment resides with the Chief Judge.** On the present record, the continued non-assignment is best understood not as a mere omission but as a sustained departure from the ordinary assignment process that falls within the Chief Judge's administrative sphere.

103.     This exclusive control, combined with the documented record, reveals a pattern that suggests institutional coordination:

   a. **Selective Intervention:** Other cases filed during the same period proceeded through the automated system and were assigned judges, while this case was seemingly singled out.

   b. **Direct Notice and Affirmation of Inaction:** The Chief Judge was petitioned directly (Dkt. 10) and confirmed the court's operational status (Exhibit C), yet the affirmative block on this case remained in place.

   c. **Systematic Disregard:** Nine preservation addenda, which explicitly detailed the jurisdictional trap and the mounting constitutional harm, were systematically ignored, indicating the silence is a sustained posture, not an oversight.

   d. **Contradiction of Public Assurance:** The October 17 Advisory promised the processing of emergency applications, a promise rendered hollow by the Chief Judge's own exclusive prevention of any judicial review.

104.     This is not mere bureaucratic dysfunction. It is **functional strategic paralysis — a** sustained refusal to create any reviewable record, orchestrated in a manner that enables evidence destruction and Petitioner attrition.

105.    This Court's intervention is necessary not only to vindicate Petitioner's rights, but to prevent the judiciary from providing the appearance of being an instrument of governmental stonewalling.

## CONSTRUCTIVE SPOLIATION, ADVERSE INFERENCE, AND EQUITABLE NEUTRALIZATION

106.    **Judicial Delay as Constructive Spoliation** — The judiciary's sustained inaction has had two simultaneous effects:

  a.  it deprived the record of the **judicial acts essential to review**, and

  b.  it allowed Respondents to retain **exclusive, unrestrained control over material evidence**, in the absence of any litigation hold.

107.    **Evidence Lost Due to Judicial Delay:** Courts routinely hold that evidentiary decay caused by procedural obstruction constitutes irreparable harm because it cannot be reconstructed. See *Silvestri v. Gen. Motors*, 271 F.3d 583, 593–94 (4th Cir. 2001) (loss of key evidence due to delay cannot be remedied once destruction occurs).

108.    This dual effect — procedural paralysis for Petitioner and evidentiary freedom for Respondents — operates as a form of **constructive spoliation** at the institutional level.

109.    Courts consistently hold that when delay, neglect, or misconduct results in the destruction or unavailability of material evidence, the appropriate remedy is an **adverse inference** that the missing evidence would have been unfavorable to the responsible party. See, e.g., *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010); *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107–08 (2d Cir. 2001); *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 750 (8th Cir. 2004).

110.     Although these cases involve litigants, the **equitable rationale applies with equal force** when institutional conduct — here, judicial delay coupled with a void dismissal— erases the evidentiary substrate of review. Where institutional delay obstructs record formation and forecloses timely litigation holds, it functions as a constructive loss of evidence. See *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–13 (2d Cir. 2002); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

111.     The Supreme Court has recognized that courts retain **inherent power** to address bad-faith conduct that threatens the integrity of proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991). That inherent power extends to fashioning remedies that restore parity when institutional behavior has distorted the evidentiary landscape. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593–94 (4th Cir. 2001).

112.     **Requested Adverse Inference** — Petitioner therefore respectfully requests that this Court:

    a. recognize that the District Court's delay and void dismissal **enabled ongoing spoliation risk** by deferring any litigation-hold obligation;

    b. infer that any evidence now claimed by Respondents to be "unavailable," "routinely destroyed," or "no longer retained" would have supported Petitioner's claims; and

    c. hold that **any gaps in the record caused by delay or missing documentation are to be resolved in Petitioner's favor**, with Respondents bearing the burden of disproving prejudice arising from that loss.

113.     Without such an inference, judicial silence becomes a tactical advantage for the parties whose conduct is being challenged.

## REQUEST FOR EMERGENCY PRESERVATION ORDER PENDING

## MANDAMUS

114.    **Continuing Harm During the Pendency of This Petition** — The evidentiary harm described above is ongoing. Until a valid § 1915 ruling enables service, Respondents have no formal litigation-hold obligation in this case. Each passing day under current conditions risks further loss of material evidence.

115.    Pursuant to 28 U.S.C. § 1651(a) and Fed. R. App. P. Rule 21, Petitioner requests that this Court enter, or direct the District Court to enter, an emergency preservation order requiring Respondents to:

    a.    preserve all documents, electronically stored information, and tangible items related to the subject matter of the complaint. Specifically,

        i.    Unredacted FITREP[2]s for Bernhard,

        ii.    NCIS investigative files,

        iii.    Correspondence between officials handling Petitioners FOIA requests,

        iv.    Correspondence Between VF-1 officers and NAS Miramar Restricted Barracks officers,

        v.    Correspondence from or to the BCNR regarding my case,

        vi.    Navy OIG correspondence regarding my case,

        vii.    Confinement records

    b.    suspend ordinary destruction or retention policies as to those materials;

    c.    notify all relevant custodians of the preservation duty; and

---

[2] **Fitness** Report - official performance evaluation in military service records.

    d. file a certification confirming implementation of a litigation hold within seven (7) days.

116. If this Court prefers not to issue such an order directly, it should include in any mandate a requirement that the District Court enter such an order contemporaneously with the assignment of a judge and reconsideration of the § 1915 and TRO motions.

## THE RELIEF SOUGHT IS NARROW, STRUCTURAL, AND APPROPRIATE

117. Petitioner does not ask this Court to decide the merits of his claims. He asks only for the structural relief necessary to restore lawful process:

    a. **Vacate** the November 13, 2025 dismissal as **void** because it was entered while the case remained UNA;

    b. **Direct** the District Court to assign Case No. 1:25-cv-03345 to an Article III judge through its normal random-assignment procedures;

    c. **Order** that an assigned judge promptly and lawfully adjudicate the § 1915 application and the TRO under the correct standards;

    d. **Issue** (or direct issuance of) a preservation order to neutralize further evidentiary harm; and

    e. **Recognize** an appropriate adverse inference to restore parity where delay has enabled spoliation.

118. Petitioner does **not** seek:

    a. a particular outcome on the § 1915 motion,

    b. a directed grant of the TRO,

    c. a ruling on the merits of the complaint, or

    d. a formal finding of judicial misconduct against any individual.

119.     The requested relief is thus **procedural, structural, and modest** in scope: it asks this Court to **confine the District Court to the lawful exercise of its jurisdiction** and to compel it to perform duties that are non-discretionary. That is the classic function of mandamus. *Cheney*, 542 U.S. at 380–81; *In re Sealed Case*, 829 F.2d at 52.

# VII. INSTITUTIONAL RISK: PROCEDURAL NULLIFICATION AS A SHIELD AGAINST SYSTEMIC ACCOUNTABILITY

## THE FUNCTIONAL DOCTRINE OF JUDICIAL AVOIDANCE

120.     Whether driven by design, inertia, or some combination of both, the **functional outcome** in this case is unmistakable: matters that allege **isolated, individual error** proceed through the ordinary assignment and adjudication process, while cases that credibly implicate **systemic or institutional misconduct** encounter procedural stasis and, here, a structurally void dismissal. That pattern does not resemble the neutral administration of justice; it resembles **institutional self-protection effected through procedure**.

121.     Petitioner's allegations are not routine. They include: falsification of official records, racially discriminatory treatment at the command level, confinement without conviction, and cruelty rising to the level of Eighth Amendment concern. These are precisely the kinds of claims that, if proven, would not merely correct an individual injustice but call into question **entire systems** of military justice and recordkeeping. In such cases, the government has a strong incentive to **defend the process rather than the facts**—to rely on procedural gates and delays rather than open merits litigation.

122.    In this posture, **judicial inaction and structural irregularities** do not operate as neutral case-management outcomes. When an emergency TRO is left unreviewed for fifty-six days, when a case remains unassigned throughout that period, and when the first and only judicial action is a dispositive ruling in a case still marked "UNA," the effect is that **process becomes the mechanism through which merits are avoided.** This Court need not assign motive to recognize that such a configuration is incompatible with the role of Article III courts. The result: the case dies in procedural purgatory. Never to be tested on the merits.

123.    **Bypass of Random-Assignment Safeguards:** Random assignment is a constitutional safeguard against bias, appearance of impropriety, and judge-shopping. See LCvR 40.3(a); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–62 (1988). Bypassing this safeguard for 56 days, then issuing a dispositive ruling without assignment, eliminates the neutrality that Article III requires.

124.    **Assignment a Prerequisite to Adjudication:** A judge must be lawfully assigned before exercising Article III judicial power. *Nguyen*, 539 U.S. at 77. A dispositive ruling issued before assignment is a nullity. The continued presence of the "UNA" designation in the dismissal caption is affirmative evidence that assignment never occurred.

## THE UNRAVELING OF THE PRESUMPTION OF REGULARITY

125.    This case also presents a direct challenge to the **presumption of regularity** that normally attaches to official records and governmental conduct. Petitioner has identified discrepancies that cannot coexist without undermining that presumption:

    a.    (a)    **The Triple-Record Contradiction** — Petitioner has received:

        i.    an "official" record;

     ii.  contemporaneous documentation; and

     iii.  heavily redacted FOIA productions — which, taken together, cannot all be true. They describe mutually exclusive versions of critical events. At least one set of records must be inaccurate in a way that transcends clerical error. When courts are confronted with such contradictions, continued reliance on a blanket presumption of regularity becomes untenable.

b.  **The Bernhard/Cochran Substitution.** The insertion of a distinguished officer's name (CDR Donnie L. Cochran) in place of the officer alleged to have engaged in retaliatory misconduct (CDR D.L. Bernhard) in official documents, if proven, is not a minor administrative mistake: it is an **active historical misrepresentation.** That sort of substitution aligns with the core concerns of 18 U.S.C. § 1519 (falsification of federal records). Even at the pleadings stage, such allegations raise the **stakes** of allowing the case to proceed to discovery.

c.  **The Glomar-Like Response to Routine Records.** Petitioner further alleges that NCIS invoked a "neither confirm nor deny" posture for categories of routine personnel and investigative records — an approach more commonly associated with national-security or covert operations. If accurate, such responses suggest a **conscious decision to shield information** that would ordinarily be available in the course of judicial review.

126.    Taken together, these components do not yet prove criminality; that is the purpose of litigation and discovery. But they do demonstrate that this is **not a routine paperwork dispute.** It is a case where the ordinary presumption that "the records must be correct" is itself a central, and contested, issue. In that context, structural irregularities in judicial

processing — such as the failure to assign a judge and the entry of a dispositive ruling in a UNA case — take on **heightened institutional significance**.

## THE GOVERNMENT STRUCTURAL INCENTIVES AND THE TURN TO PROCESS

127.    From the face of the record, it is possible to discern the **structural incentives** confronting the Government in a case like this:

    a.  Admitting falsification or irregularity in core service records risks **systemic implications** extending far beyond Petitioner's case, potentially inviting review in other matters where the same actors or processes were involved.

    b.  Fully and honestly litigating the claims through discovery would expose internal communications, investigative steps, and decision-making chains that could reveal **patterns**, not isolated anomalies.

    c.  By contrast, preventing the case from fully commencing — through non-assignment, delayed threshold rulings, and, ultimately, a structurally void dismissal — avoids both admission and discovery.

128.    Petitioner asserts that he offered the Navy multiple opportunities to resolve the matter confidentially before ever filing suit, and that those opportunities were declined or ignored. Whatever the internal reasoning, the external pattern is that **the Government has accepted the risk of litigation, but only so long as judicial mechanisms prevent that litigation from ever reaching a merits stage.** This Court need not accept Petitioner's characterization of that calculus to recognize that **procedural nullification** effectively serves as a shield against substantive scrutiny.

## COMPLICITY THROUGH STRATEGIC INACTION AND STRUCTURAL DEFECT

129.     The District Court's role in this configuration is not purely passive. For fifty-six days, the case remained **unassigned**, the TRO unreviewed, the § 1915 motion unresolved, and six preservation filings—plus a direct motion to the Chief Judge—unanswered. When action finally came, it was a **dispositive ruling in a case that still bore the UNA designation**.

130.     At that point, the court's inaction and its ultra vires action **converged**: the prior silence had allowed time-sensitive harm to accrue and evidence to dissipate; the void dismissal purported to close the case without ever having complied with the assignment framework that gives judicial decisions their legitimacy. Whatever its internal cause, such a sequence **functionally aligns** with the interests of any litigant seeking to avoid discovery in a case alleging deep institutional misconduct.

131.     This does not require this Court to find bad faith or conspiracy. It requires only recognition that when a court:

   a.  fails to assign a case,

   b.  withholds emergency review, and

   c.  then issues a dispositive order without assignment.

132.     It has departed from the **regular order of Article III adjudication** in a manner that creates both the **appearance** and **effect** of institutional complicity. That appearance alone warrants the exercise of supervisory mandamus. See *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860–62 (1988) (structural irregularities undermining public confidence require corrective action even absent proof of subjective bad faith).

## THE 101-CASE COHORT AND THE RISK OF SYSTEMIC QUARANTINE

133.     Petitioner's concerns are not limited to his own docket. Using publicly available

PACER data as of November 7, 2025, Petitioner conducted a preliminary review indicating:

    a. approximately **949 in forma pauperis filings** year-to-date (Exhibit D); and

    b. a cohort of **roughly 101 civil cases** (Exhibit E) that remained unassigned to any
    judicial officer and showed no meaningful judicial activity.

134.     Petitioner does not suggest that every one of those cases shares his factual profile.

However, the **size of the unassigned cohort**, as compared to the overall IFP caseload, is

large enough to raise legitimate concern that **indigent, pro se, or otherwise disfavored**

**cases are experiencing materially different processing** than other civil matters. Even

assuming some degree of normal administrative lag, a pool of over one hundred unassigned

cases represents a **pattern**, not a stray anomaly.

135.     This Court need not resolve the full scope of that pattern in this petition. It is enough

that:

    a. Petitioner's case indisputably remained UNA for fifty-six days,

    b. was subjected to emergency inaction, and

    c. was ultimately dismissed in a posture that is structurally void.

136.     Against the backdrop of a larger unassigned cohort, this case becomes more than a

singular misstep; it becomes a **signal case** illustrating how procedural tools can,

intentionally or not, produce the **functional equivalent of an institutional quarantine** for

certain categories of litigants.

137.     Mandamus is therefore not merely a vehicle to correct one litigant's experience of

delay. It is the **only available mechanism** to interrupt a configuration in which procedural

non-assignment and structurally defective dismissals risk becoming a durable method of **avoiding judicial engagement with systemic allegations.** In that sense, this case presents an "institutional existential threat" not because of the relief Petitioner seeks, but because of what the record reveals about how certain cases can be functionally nullified before the law can reach them.

138. **Comparative Pattern Evidence:** Petitioner's preliminary dataset shows approximately 101 unassigned civil cases during 2025, clustered disproportionately among pro se and IFP litigants.

139. **Significance Under Equal Protection:** When assignment irregularities correlate with indigent litigants, the pattern implicates equal-protection concerns requiring supervisory intervention. *Boddie v. Connecticut*, 401 U.S. 371, 375 (1971).

140. **Supervisory Mandamus:** Systemic assignment failures affecting access to justice fall within the core purpose of supervisory mandamus. *In re United States*, 878 F.2d 153, 158 (5th Cir. 1989).

---

# VIII. CONCLUSION

141. For **fifty-six days,** Petitioner stood at the courthouse door — properly filed complaint, § 1915 application, and emergency TRO in hand — having followed every rule and every procedure available to a pro se litigant. The Clerk's Office accepted the filings, assigned a case number, and confirmed that the case had been properly initiated. Yet during that entire period, **no judge was assigned, no motion was reviewed, and no order was**

**entered.** This Court need not, and should not, reach the merits of the District Court's Rule 8 analysis. The structural defect in the order's issuance renders that analysis a legal nullity.

142.    When the District Court finally acted on **November 13, 2025**, it did so in a manner that only deepened the constitutional injury: it granted IFP, screened under § 1915(e), denied the TRO, dismissed the complaint, and entered final judgment **in a case that remained designated "1:25-cv-03345 (UNA)"**. A dispositive ruling rendered while the case is still formally unassigned is not a mere irregularity; it is a **structural defect** that renders the judgment **void ab initio** and confirms that Petitioner has never received the lawful process the Constitution requires.

143.    The Chief Judge's inaction, despite **direct notice** and explicit administrative responsibility for the prompt assignment of cases, followed by a dispositive ruling in an unassigned matter, exemplifies precisely the kind of **breakdown in judicial administration** for which mandamus exists. The extraordinary circumstances presented here — prolonged emergency silence, structural assignment failure, and ultra vires disposition—warrant the extraordinary remedy of supervisory mandamus.

144.    The image that emerges is stark: **the courthouse door is physically open, but institutionally unmanned.** Article III judges are sworn to uphold the Constitution and to administer justice "promptly, efficiently, and fairly." Canon 3(A)(5) codifies that obligation; LCvR 40.5(a) requires prompt assignment; the October 17 Advisory publicly reassured litigants that emergency applications would continue to be processed even during a shutdown. Yet for Petitioner, who complied meticulously with every procedural requirement, none of these protections materialized in time, and the eventual ruling was structurally void.

145.     Petitioner did not rush to this Court. Over the course of approximately eight weeks, he filed **six preservation addenda** and a direct motion to the Chief Judge, each one documenting the growing irregularities and inviting correction. Each was met with silence. That silence has now matured into a void dismissal entered outside the framework of lawful jurisdiction. The time for administrative grace has passed; the ordinary appellate process is compromised; only this Court can restore what the District Court has withheld: **access to a lawful judicial process.**

146.     **Retroactive Assignment Cannot Cure Void Acts:** A void judgment cannot be retroactively validated by assigning a judge after the fact. Jurisdiction must exist at the moment judgment is entered. *Nguyen*, 539 U.S. at 77.

147.     This petition, therefore, presents this Court with a choice of constitutional significance. The question is not whether Petitioner should ultimately prevail on the merits of his naval-record claims. The question is whether a federal district court may, without consequence, keep a pro se IFP case **unassigned for nearly two months**, ignore an emergency motion, and then dismiss the case while it remains formally UNA — effectively using procedural nullification as a shield against review.

148.     If such a configuration is permitted to stand, silence and structural defect will have become legitimate tools by which the judiciary can, intentionally or not, insulate allegations of serious governmental misconduct from any meaningful hearing. That is incompatible with the basic premise that **no branch and no combination of branches may place itself above the law.** Mandamus is the instrument by which this Court may reassert that principle.

## PUBLIC INTEREST AND CONSTITUTIONAL STEWARDSHIP

149.    The relief sought serves not merely Petitioner's private interests but the **structural integrity of the judicial system**. Public confidence in the courts depends on more than dignified language and published advisories; it depends on the observable reality that litigants — especially indigent and pro se litigants — can obtain timely, lawful adjudication of their filings. When a case remains unassigned for weeks and is then dismissed in an unassigned posture, that confidence erodes.

150.    Failure to act in such circumstances risks inviting external intervention — whether by Congress, the Judicial Conference, or other oversight bodies — to address patterns of non-assignment and procedural nullification. This Court is uniquely positioned to **preempt that institutional crisis** by exercising its supervisory authority now, clarifying that extended non-assignment and ultra vires dismissals are incompatible with Article III obligations.

## THE RECORD IS SUFFICIENT; DELAY ITSELF HAS BECOME THE HARM

151.    **The record before this Court is already more than sufficient**: it documents the initial filing, fifty-six days of emergency silence, six preservation addenda, direct notice to the Chief Judge, the October 17 Advisory promising continued emergency processing, and the November 13 dismissal entered while the case remained UNA. The harm is not speculative and not incomplete; it is **fully crystallized**.

152.    **Continued Delay After Actual Notice Demonstrates Willfulness:** Once a court receives actual notice of a deprivation and elects to continue the conduct, the resulting violation becomes willful. See *Ratzlaf v. United States*, 510 U.S. 135, 149 n.19 (1994)

(willfulness includes "deliberate avoidance" after notice). The District Court received six preservation addenda plus three other direct notices and still issued no action for 56 days.

153.    In such circumstances, mandamus cannot await some further "perfection" of the record, because the very nature of the injury is that **time itself is the instrument of harm**. Evidence continues to decay; memories continue to fade; routine destruction policies continue to run; and the structural message to other indigent litigants is that some cases will simply never be heard. By the time every thread of that harm is fully traceable, justice will already be irretrievable.

154.    This case, therefore, stands at a constitutional inflection point. If a pro se IFP litigant—who has complied with every rule, documented every irregularity, and exhausted every internal avenue—can see his case held in administrative limbo and then dismissed by an unassigned court without corrective action from this Court, the **functional promise of access to justice** becomes contingent rather than guaranteed.

---

**The purpose of the law is to prevent futility through fairness.**

**The Constitution was designed to prevent immotility through prescriptive action.**

**Once inaction itself becomes weaponized, intervention becomes a requirement.**

---

155.    When **inaction and structural defect themselves become the mechanism of avoidance**, intervention ceases to be discretionary and becomes a requirement. Petitioner respectfully asks this Court to issue the writ, vacate the void dismissal, restore lawful

process, and reaffirm that in this Circuit, **silence and structural irregularity cannot be the last word.**

## THE DISMISSAL ORDER IS INTERNALLY INCONSISTENT AND FACTUALLY INACCURATE — A POTENTIAL FRAUD ON THE RECORD

156.     The District Court's dismissal is not only structurally void and legally incoherent — it is built upon a foundation of demonstrable factual inaccuracies **and a deliberate refusal to consider the evidence that would contradict those inaccuracies.** The Court claimed "the Complaint is neither short nor plain," "Indeed, Plaintiff's intended claims are 'too unwieldy to proceed.'", (Dkt. 17, p. 4) and failed to provide a clear statement of claims. A cursory review of the Complaint itself reveals these assertions to be patently false.

157.     The Complaint contains a table of contents, a table of authorities, and is organized into sixteen numbered sections. It pleads eight distinct causes of action in a dedicated 'Causes of Action' section, with each count clearly labeled and grounded in specific legal authority. The Court's own opinion admits that 'some of the alleged wrongs may constitute plausible causes of action,' yet it dismissed the entire complaint under Rule 8 without providing the leave to amend that such a finding necessitates.

158.     This dismissal rests on factual errors and an internally inconsistent application of Rule 8. It gives the appearance of a procedurally pretextual use of the Rule to dispose of a Complaint that the Court itself acknowledged may contain plausible claims. The convergence of:

   a. **structural illegitimacy** (a dispositive ruling issued while the case remained designated "UNA"),

    b. **legal incoherence** (the IFP grant/dismissal paradox, which foreclosed the opportunity to amend that Rule 8 requires), and

    c. **factual characterization and assertions that are demonstrably irreconcilable with the actual structure of the Complaint**.

    d. **evidentiary exclusion through Rule 15(a) misapplication** (excluding 171 pages of exhibits as improper "amendments" to avoid confronting the factual support they provide), followed by dismissal for lack of factual support.

159.    The result is an order so arbitrary, capricious, and incompatible with Article III authority as to constitute a **judicial usurpation of power** correctable only through mandamus.

## THE INSTITUTIONAL IMPERATIVE FOR MANDAMUS

160.    This case presents more than individual error; it demonstrates how the appearance of a lack of institutional rigor can metastasize, allowing procedural rules to become instruments of power rather than safeguards of justice. The District Court's conduct represents the appearance of a triple failure:

    a. First, by introducing the possibility of **structural lawlessness** — exercising judicial power without lawful assignment, rendering its actions void ab initio.

    b. Second, catering to the possibility of **substantive irregularity** — the potential for a functionally pretextual basis for dismissal that contradicts both the factual record and the court's own admissions.

    c. Third, opening the door for possible **systemic danger** — establishing a template in which procedural rules can be utilized to nullify disfavored claims through inaction followed by ultra vires termination.

161.    When a court goes beyond its statutory mandate and gives the appearance of substituting procedural interpretation for the engagement the law requires, it moves outside the framework that confers legitimacy on Article III adjudication. *See Will v. United States*, 389 U.S. 90, 95–96 (1967) (mandamus appropriate to correct a "judicial usurpation of power"); *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) (mandamus lies to confine a lower court to the "proper limits" of its authority). Mandamus exists precisely to correct such abrogations of authority — to remind judicial officers that their power derives from, and is limited by, law.

162.    The D.C. Circuit must intervene not merely to correct one litigant's injury but to reaffirm the foundational principle that, in our constitutional system, no branch — and no combination of branches — may place itself above the law through procedural manipulation that effectively prevents judicial review. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("[T]he government of the United States has been emphatically termed a government of laws, and not of men."); *Stern v. Marshall*, 564 U.S. 462, 483 (2011) ("the accumulation of excessive authority in a single branch is checked by the separation of powers"); *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953) (mandamus prevents "practical nullification" of appellate rights).

---

## IX. REQUEST FOR JUDICIAL RECUSAL AND REASSIGNMENT

163.    Pursuant to 28 U.S.C. § 455(a) and (b)(1), Petitioner respectfully requests that **Chief Judge James E. Boasberg** be recused from any further administrative or judicial

participation in Case No. **1:25-cv-03345 (UNA)** and that the matter be reassigned to a different Article III judge or magistrate judge of the United States District Court for the District of Columbia.

## GROUNDS FOR RECUSAL

164.     **Objective Appearance of Partiality (§ 455(a))** — A judge must recuse where his "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Here, the appearance-of-impartiality standard is plainly triggered.

    a.  **Direct Notice Without Action** — Chief Judge Boasberg received **direct notice** of this case on October 13, 2025, and for **56 days** no judicial officer was assigned, no motion was reviewed, and no administrative correction occurred. During that period, the case remained designated **"UNA."**

    b.  **Public Assurance vs. Private Inaction** — The same official who received notice also **signed the October 17, 2025 Public Advisory** affirming that emergency matters and IFP filings would continue to be processed. The divergence between **public representation of continuity** and **actual administrative stasis** creates an objective conflict under § 455(a).

    c.  **Contemporaneous Assignment of Other Cases** — On **October 2, 2025**, twelve days after Petitioner filed an emergency TRO, Chief Judge Boasberg personally accepted assignment of **Case No. 1:25-cv-03522 (Venezia v. U.S. Dept. of State)** — a pro se civil action against a federal agency filed later than Petitioner's. Petitioner's earlier-filed case thus remained unassigned while a later-filed, similar case proceeded normally.

d.  This creates an **irreconcilable conflict**: Chief Judge Boasberg cannot impartially review his own decision to assign Venezia immediately while leaving Petitioner's earlier-filed case unassigned, nor can he fairly evaluate whether that differential treatment violated Petitioner's constitutional rights.

e.  This creates **two distinct conflict dimensions**:

   i.  **Administrative Conflict:** As Chief Judge, he has supervisory responsibility over the assignment system whose failure is central to this petition.

   ii. **Individual Conflict:** As an active participating assignee in Venezia, he made an assignment decision during the same period Petitioner's earlier-filed case remained unassigned.

f.  **Self-Review Problem** — Because the mandamus petition challenges the **very administrative processes** that fall under the Chief Judge's authority, he would be placed in the position of reviewing the propriety of his own administrative or supervisory involvement — a situation that § 455(a) prohibits.

165.  **Reasonable Observer Standard:** Section 455(a) requires recusal whenever an informed observer could reasonably question impartiality. *Liljeberg*, 486 U.S. at 860. The differential treatment of Venezia and Petitioner's case, combined with the Chief Judge's receipt of direct notice, satisfies this standard.

166.  Thus, recusal is necessary to preserve both **actual fairness** and the **appearance of impartiality.**

167.  **Prior Involvement in the Administrative Conduct at Issue (§ 455(b)(1))** — Section 455(b)(1) requires recusal where a judge has "personal knowledge of disputed

evidentiary facts concerning the proceeding." Here, the Chief Judge is not a neutral third-party observer — he is:

    a. the **administrative officer** responsible for assignment of all cases,

    b. the signatory to the **October 17 operational assurance**, and

    c. the recipient of **direct notice** regarding the delay and non-assignment.

168.    The question presented by this mandamus petition — whether the non-assignment and structural defects violated Petitioner's rights — is one in which the Chief Judge is inevitably a **material participant**. Recusal therefore safeguards the integrity of the review process See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860–61 (1988).

169.    **Preservation of Institutional Confidence** — This request is made with respect for the Chief Judge's service and without attributing bad faith. The request is rooted in **institutional necessity**, not personal accusation.

170.    Canon 2A instructs judges to act in a manner that "promotes public confidence in the integrity and impartiality of the judiciary." Reassignment here is essential not only to avoid the appearance of impropriety, but to ensure that the structural issues raised — including prolonged non-assignment and a dispositive ruling entered while the case remained UNA — are evaluated by a judicial officer who had **no administrative or personal involvement** in the underlying events.

171.    Recusal protects both the judiciary's integrity and the legitimacy of the eventual proceedings.

## RELIEF REQUESTED

**172.**    **Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the District of Columbia to:**

a. **Recusal and Reassignment**

　　i. Reassign Case No. **1:25-cv-03345 (UNA)** to an Article III judge or magistrate judge **other than Chief Judge Boasberg**;

　　ii. Ensure that Chief Judge Boasberg exercises **no further administrative or supervisory control** over this matter;

　　iii. Direct the Clerk's Office to implement controls preventing further non-assignment anomalies and provide written certification of the reassignment.

b. **Corrective Administrative Plan (CAP)**

　　i. Order the District Court to submit a **Corrective Administrative Plan** within 30 days addressing:

　　　　1. the identification and clearing of the backlog of **unassigned IFP cases** (including the 101-case cohort),

　　　　2. safeguards against selective non-processing.

　　　　3. mechanisms to ensure emergency motions receive duty-judge review within established timeframes.

c. **Restoration of Procedural Legality and Impartiality**

　　i. Assign a judicial officer to the case within **seven (7) days**;

　　ii. Rule on the § 1915 application within **seven (7) days**;

　　iii. Address the emergency TRO within **seven (7) days**;

　　iv. Enter or order entry of a **litigation-hold preservation order**;

　　v. Enter, or direct the district court to enter, an emergency preservation order requiring Respondents to:

　　　　1. Implement immediate litigation hold;

2. Preserve all documents and ESI related to the claims;

3. Suspend all document destruction policies;

4. Certify compliance within seven (7) days.

**d. Judicial Accountability to the Circuit**

i. Require the District Court to file a **status report within seven (7) days** certifying:

1. judicial assignment.

2. disposition of the § 1915 motion.

3. action on the TRO.

4. entry of a preservation order.

ii. Retain **limited supervisory jurisdiction** until these conditions are met.

**e. Additional Relief**

i. Award Petitioner his costs associated with this petition;

ii. Grant such other relief as this Court deems just and proper.

# X. CERTIFICATION OF GOOD-FAITH PRESENTATION

173.    Pursuant to Fed. R. App. P. Rule 21(a)(1) and Fed. R. Civ. P. Rule 11(b), Petitioner certifies that this petition is presented in good faith, supported by evidence contained in the record below, and not interposed for delay or harassment, but solely to compel performance of nondiscretionary judicial duties.

Respectfully submitted this 28th day of November, 2025.

# XI. SIGNATURE

RESPECTFULLY SUBMITTED.

/s/ Osei Harper

11/17/2025

Osei Harper

Petitioner, pro se

613 E. 9th Ave

Havana, FL 32333

347.804.1232

# UNITED STATES COURT OF APPEALS

for the
District of Columbia Circuit

---

In re:

**Osei Harper**

Petitioner

v.

**United States Department of the Navy, et al.**

Respondents

---

**Appendix**

---

Petition for a Writ of Mandamus

No: _____ (D.C. Circuit 2025)

---

Respectfully Submitted by,

Osei Harper

Plaintiff, pro se

613 E. 9th Ave

Havana, FL 32333

347.804.1232

November 17th, 2025

APPENDIX – EXHIBIT INDEX

Exhibit A – Petitioner's In Forma Pauperis Application (Signed)

Exhibit B – D.D.C. Docket Report / Status Report (Nov. 14, 2025)

Exhibit C1 – District Court Public Advisory Regarding Oct. 17, 2025 Shutdown

Exhibit C2 – Executive Order 25-55 (Government Closure Order)

Exhibit D – CourtListener 2025 Search: 949 Total IFP Civil Filings

Exhibit E – CourtListener 2025 Search: 101 Unassigned IFP Cases (as of Nov. 7)

Exhibit F – PacerWatch Report of Comparator Case (Venezia v. United States)

Exhibit G – Addendum 7: Plaintiff's Affidavit and Evidentiary Summary

Exhibit H1 – District Court Memorandum Opinion (Dismissal)

Exhibit H2 – District Court Dismissal Order

Exhibit I – Emergency Motion for Temporary Restraining Order (Signed)

Exhibit J – Notice of Procedural Delay (Signed)

Exhibit K1 – Addendum 1 (Signed)

Exhibit K2 – Addendum 2 (Signed)

Exhibit K3 – Addendum 3 (Signed)

Exhibit K4 – Addendum 4 (Signed)

Exhibit K5 – Addendum 5 (Signed)

Exhibit K6 – Addendum 6 (Signed)

Exhibit L – Original Complaint (Signed)

Exhibit M – Final Notice and Request to Chief Judge (Signed)

Exhibit N – Exhibits List Filed in the District Court (Signed)

Exhibit O – Consolidated Evidence of FOIA Inconsistencies (Filed as Ex. 28)

# EXHIBIT A

## In Forma Pauperis Application (Signed)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit A

Page 1 of 5

AO 239  (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

# United States District Court
### for the
District of Columbia

| | |
|---|---|
| OSEI HARPER, | ) |
| *Plaintiff/Petitioner* | ) |
| v. | )    Civil Action No. |
| DEPARTMENT OF THE NAVY, et al., | ) |
| *Defendant/Respondent* | ) |

## APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Long Form)

**Affidavit in Support of the Application**

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested. I declare under penalty of perjury that the information below is true and understand that a false statement may result in a dismissal of my claims.

**Instructions**

Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.

Signed:  Osei Harper

Date:  09/16/2025

1.  For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly income amount during the past 12 months | | Income amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ 0.00 | $ | $ 0.00 | $ |
| Self-employment | $ 0.00 | $ | $ 0.00 | $ |
| Income from real property *(such as rental income)* | $ 0.00 | $ | $ 0.00 | $ |
| Interest and dividends | $ 0.00 | $ | $ 0.00 | $ |
| Gifts | $ 0.00 | $ | $ 0.00 | $ |
| Alimony | $ 0.00 | $ | $ 0.00 | $ |
| Child support | $ 125.00 | $ | $ 450.00 | $ |

Page 2 of 5

AO 239  (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

| | | | | |
|---|---|---|---|---|
| Retirement *(such as social security, pensions, annuities, insurance)* | $  0.00 | $ | $  0.00 | $ |
| Disability *(such as social security, insurance payments)* | $  0.00 | $ | $  0.00 | $ |
| Unemployment payments | $  0.00 | $ | $  0.00 | $ |
| Public-assistance *(such as welfare)* | $  232.00 | $ | $  116.00 | $ |
| Other *(specify):* | $  0.00 | $ | $  0.00 | $ |
| **Total monthly income:** | $  **357.00** | $  **0.00** | $  **566.00** | $  **0.00** |

2.    List your employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| Tallahassee Dodge | 3987 W Tennessee St, Tallahassee, Fl | 12/16/2024 - 02/28/2025 | $  2,000.00 |
| | | | $ |

3.    List your spouse's employment history for the past two years, most recent employer first. *(Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

4.    How much cash do you and your spouse have? $  0.00

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial institution | Type of account | Amount you have | Amount your spouse has |
|---|---|---|---|
| Chase | Checking | $  -72.62 | $ |
| Chase | Savings | $  0.18 | $ |
| American Express | High Yield Savings | $  85.00 | $ |

If you are a prisoner, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.  If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

5.  List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.

| Assets owned by you or your spouse | | |
|---|---|---|
| Home *(Value)* | $ | 0.00 |
| Other real estate *(Value)* | $ | 0.00 |
| Motor vehicle #1 *(Value)* | $ | 0.00 |
|     Make and year: | | |
|     Model: | | |
|     Registration #: | | |
| Motor vehicle #2 *(Value)* | $ | 0.00 |
|     Make and year: | | |
|     Model: | | |
|     Registration #: | | |
| Other assets *(Value)* | $ | 0.00 |
| Other assets *(Value)* | $ | 0.00 |

6.  State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |

7.  State the persons who rely on you or your spouse for support.

| Name (or, if under 18, initials only) | Relationship | Age |
|---|---|---|
| ELH | Son | 16 |
| | | |
| | | |

Page 4 of 5

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

8.  Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.

| | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment *(including lot rented for mobile home)* <br> Are real estate taxes included? ☐ Yes ☑ No <br> Is property insurance included? ☐ Yes ☑ No | $ 0.00 | $ |
| Utilities *(electricity, heating fuel, water, sewer, and telephone)* | $ 0.00 | $ |
| Home maintenance *(repairs and upkeep)* | $ 0.00 | $ |
| Food | $ 535.00 | $ |
| Clothing | $ 0.00 | $ |
| Laundry and dry-cleaning | $ 0.00 | $ |
| Medical and dental expenses | $ 0.00 | $ |
| Transportation *(not including motor vehicle payments)* | $ 0.00 | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ 0.00 | $ |
| Insurance *(not deducted from wages or included in mortgage payments)* | | |
|     Homeowner's or renter's: | $ 0.00 | $ |
|     Life: | $ 0.00 | $ |
|     Health: | $ 0.00 | $ |
|     Motor vehicle: | $ 0.00 | $ |
|     Other: | $ 0.00 | $ |
| Taxes *(not deducted from wages or included in mortgage payments) (specify):* | $ 0.00 | $ |
| Installment payments | | |
|     Motor vehicle: | $ 0.00 | $ |
|     Credit card *(name):*     Capital One | $ 100.00 | $ |
|     Department store *(name):* | $ 0.00 | $ |
|     Other: | $ 0.00 | $ |
| Alimony, maintenance, and support paid to others | $ 0.00 | $ |

AO 239 (Rev. 01/15) Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form)

| | | |
|---|---|---|
| Regular expenses for operation of business, profession, or farm *(attach detailed statement)* | $ 0.00 | $ |
| Other *(specify)*: | $ 0.00 | $ |
| Total monthly expenses: | $ 635.00 | $ 0.00 |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

   ☐ Yes  ☑ No     If yes, describe on an attached sheet.

10. Have you spent — or will you be spending — any money for expenses or attorney fees in conjunction with this lawsuit?  ☐ Yes  ☑ No

    If yes, how much?  $ _____

11. Provide any other information that will help explain why you cannot pay the costs of these proceedings.
    I am homeless, recovering from surgery, and currently unemployed. I have no other income. I am unable to pay the filing fees or costs of this proceeding without sacrificing basic necessities such as food, housing, or medical care.

12. Identify the city and state of your legal residence.
    Havana, Florida

    Your daytime phone number: _____(347) 804-1232_____

    Your age: __53__  Your years of schooling: ___20___

    Osei
    Harper

    Digitally signed by
    Osei Harper
    Date: 2025.09.17
    14:14:51 -04'00'

# EXHIBIT B

# D.D.C. Docket Report / Status Report
## (11/14/2025)

# Harper v. Navy, No. 25-cv-03345
## (D.D.C.), Exhibit B

Query    Reports    Utilities    Help    Log Out

CLOSED,IFP,PROSE-NP,TYPE-F

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:25-cv-03345-UNA

| | |
|---|---|
| HARPER v. DEPARTMENT OF THE NAVY et al | Date Filed: 09/19/2025 |
| Assigned to: Unassigned | Date Terminated: 11/13/2025 |
| Cause: 28:1361 Petition for Writ of Mandamus | Jury Demand: None |
| | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: Federal Question |

**Plaintiff**

**OSEI HARPER**                          represented by **OSEI HARPER**
613 E. 9th Ave.
Havana, FL 32333
PRO SE

V.

**Defendant**

**DEPARTMENT OF THE NAVY**

**Defendant**

**BOARD FOR CORRECTION OF NAVAL RECORDS**

**Defendant**

**DEPARTMENT OF DEFENSE**

**Defendant**

**SECRETARY OF THE NAVY**
*in his official capacity*

**Defendant**

**D.L. BERNHARD**
*CDR, in his individual capacity*

**Defendant**

**STEVEN RIKER**
*LCDR, in his individual capacity*

**Defendant**

**HAYS**
*CDR, in his individual capacity*

**Defendant**

**JOHN DOES 1-5**
*in their individual capacities*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/19/2025 | 1 | COMPLAINT against All Defendants filed by OSEI HARPER. (Attachments: # 1 Civil Cover Sheet)(zmtm) (Entered: 09/23/2025) |
| 09/19/2025 | 2 | MOTION for Leave to Proceed in forma pauperis by OSEI HARPER. (zmtm) (Entered: 09/23/2025) |
| 09/19/2025 | | Initiating Pleading & IFP Application Received. (zmtm) (Entered: 09/23/2025) |
| 09/22/2025 | 3 | MOTION for CM/ECF Password by OSEI HARPER. (Attachments: # 1 Text of Proposed Order)(zmtm) (Entered: 09/23/2025) |
| 09/30/2025 | 4 | CERTIFICATE OF SERVICE by OSEI HARPER. (Attachments: # 1 Waiver of Service, # 2 Waiver of Service)(zmtm) (Entered: 10/02/2025) |
| 09/30/2025 | 5 | Emergency Ex Parte MOTION for Temporary Restraining Order by OSEI HARPER. (Attachments: # 1 Certification, # 2 Affidavit, # 3 Text of Proposed Order)(zmtm) (Entered: 10/02/2025) |
| 09/30/2025 | 6 | NOTICE of Exhibits by OSEI HARPER re 1 Complaint (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9) (zmtm). # 10 Exhibit 9b, # 11 Exhibit 10) # 12 Exhibit 11, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15) (Exhibit 12 filed is incompatible with ECF and cannot be uploaded) (zmtm) . (Additional attachment(s) added on 10/2/2025: # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20) (zmtm). (Additional attachment(s) added on 10/2/2025: # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30) (zmtm). (Entered: 10/02/2025) |
| 09/30/2025 | 7 | NOTICE of Exhibits Cross Reference by OSEI HARPER (Attachments: # 1 Notice, # 2 Memorandum in Support)(zmtm) (Entered: 10/02/2025) |
| 10/08/2025 | 8 | Notice of Procedural Delay and Renewed MOTION to Expedite Ruling re 5 Emergency MOTION for Temporary Restraining Order by OSEI HARPER. (zmtm) (Entered: 10/09/2025) |
| 10/09/2025 | 9 | Addendum to NOTICE of Procedural Delay by OSEI HARPER (zmtm) (Entered: 10/10/2025) |
| 10/13/2025 | 10 | Final Notice and MOTION/Request for Judicial Action of Pending Emergency Motion re 5 MOTION for Temporary Restraining Order by OSEI HARPER. (zmtm) (Entered: 10/14/2025) |
| 10/20/2025 | 11 | AFFIDAVIT Addendum #2 by OSEI HARPER. (zmtm) (Entered: 10/21/2025) |
| 10/20/2025 | 12 | AFFIDAVIT Addendum by OSEI HARPER. (zmtm) (Entered: 10/21/2025) |
| 10/21/2025 | 13 | AFFIDAVIT Addendum #3 by OSEI HARPER. (zmtm) (Entered: 10/21/2025) |
| 10/24/2025 | 14 | AFFIDAVIT Addendum #4 by OSEI HARPER. (zmtm) (Entered: 10/30/2025) |
| 10/31/2025 | 15 | AFFIDAVIT Addendum #5 by OSEI HARPER. (zmtm) (Entered: 11/03/2025) |
| 11/08/2025 | 16 | AFFIDAVIT Addendum #6 by OSEI HARPER. (zmtm) (Entered: 11/12/2025) |

| 11/13/2025 | 17 | MEMORANDUM AND OPINION. Signed by Judge Trevor N. McFadden on 11/13/2025. (zmtm) (Entered: 11/14/2025) |
| 11/13/2025 | 18 | ORDER DISMISSING PRO SE CASE WITHOUT PREJUDICE. Ordered that the application of the plaintiff to proceed in forma pauperis is granted. This is a final appealable Order. Pro Se party has been notified by first class mail. Signed by Judge Trevor N. McFadden on 11/13/2025. (zmtm) (Entered: 11/14/2025) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/14/2025 18:21:18 | | |
| **PACER Login:** | oseis572 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:25-cv-03345-UNA |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT C1

District Court Public Advisory Regarding
Oct. 17, 2025 Shutdown
Harper v. Navy, No. 25-cv-03345
(D.D.C.), Exhibit C1



## United States District Court
### for the District of Columbia

**James E. Boasberg**
**Chief Judge**

Angela D. Caesar
Clerk of Court

### PUBLIC AND MEDIA ADVISORY

### Court Operations During Shutdown

Due to the lapse in appropriations, as of Monday, October 20, 2025, the federal judiciary is authorized only to engage in "excepted" activities -- that is, activities that (a) are necessary to the exercise of the judiciary's constitutional functions; (b) address emergency circumstances; or (c) are otherwise authorized by law. This Court has determined that all activities related to the resolution of cases are "excepted." Thus, during the shutdown, the Court will continue:

- conducting conferences, hearings, and criminal and civil jury and non-jury trials;
- reviewing and processing motions, orders, emergency applications, and other filings;
- accepting and docketing new cases;
- summoning jurors, providing administrative support for the petit- and grand-jury system, and processing payments to jurors; and
- appointing counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, and authorizing experts.

All staff necessary to support these and other excepted activities will be required to work during the shutdown. Staff members who are not needed for excepted functions will be furloughed. No staff will be paid until funding is restored to the federal judiciary.

Questions about court operations during the shutdown may be sent to:
DCDml_OperationalStatus@dcd.uscourts.gov .

The Court recognizes the significant hardship this shutdown imposes upon its staff and is grateful for their commitment to maintaining the Court's core functions during this time.

Posted: October 17, 2025

# EXHIBIT C2

Executive Order 25-55 (Shutdown Order)

Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit C2

FILED

OCT 1 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: STAY OF CIVIL PROCEEDINGS
INVOLVING THE UNITED STATES IN
LIGHT OF LAPSE OF APPROPRIATIONS

Standing Order No. 25-55 (JEB)

Chief Judge James E. Boasberg

## ORDER

Funding for various Executive Branch agencies, including the Department of Justice, lapsed at the end of the day on September 30, 2025. Employees of the affected agencies, including the Department of Justice, are generally prohibited, with limited exceptions, from working during the pendency of the lapse in appropriations, even on a voluntary basis.

This Court has a significant volume of civil matters involving the United States, its agencies, and its officers and employees, in which the U.S. Attorney's Office for the District of Columbia and other Department of Justice litigating components represent those party litigants.

The Court has a need to minimize expenditures of scarce judicial resources on large volumes of case-specific motions to stay or extend pending deadlines.

The Court finds that the impact of the current lapse in appropriations, as described above, constitutes good cause under Federal Rule of Civil Procedure 6 for extending deadlines and staying matters in which the United States, its agencies, and its officers and employees are involved.

Accordingly, pursuant to Federal Rule Civil Procedure 6(b)(1)(A), it is hereby **ORDERED**, effective October 1, 2025, and until further order of the Court, that:

1. In all civil actions and civil miscellaneous matters pending in the U.S. District Court for the District of Columbia, all filing and discovery deadlines imposed upon the United States, any of its federal agencies, and any of its officers or employees, shall be extended by the number of days equal to the length (in days) of the lapse of

25 – 55

appropriations plus ten days, provided that if the lapse is seven days or fewer, such extension shall be the number of days equal to the length (in days) of the lapse of appropriations plus five days;

2. Any party seeking relief from this Order in any particular civil action or civil miscellaneous matter, shall, in addition to serving the government attorney of record, serve the Civil Division of the U.S. Attorney's Office for the District of Columbia by electronic mail at USADC.ServiceCivil@usdoj.gov with the papers seeking such relief;

3. This Order shall not extend the United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions, but any such motions seeking relief against the United States shall be served promptly on the Civil Division of the U.S. Attorney's Office for the District of Columbia by electronic mail at USADC.ServiceCivil@usdoj.gov and on the Civil Chief for the U.S. Attorney's Office for the District of Columbia, whose email address is linked on the Civil Division's webpage: https://www.justice.gov/usao-dc/civil-division; and

4. The U.S. Attorney's Office for the District of Columbia shall inform the Chief Judge when appropriations are restored to the Department of Justice.

Dated: October 1, 2025

James E. Boasberg
Chief Judge

- 2 -

# EXHIBIT D

# CourtListener Search: 949 Total IFP Civil Filings (2025)

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit D

11/8/25, 12:18 AM Search Results — ... urts. 1 > Query: 'IFP, in forma pauperis › Filed After: ... 1-51 – 949 Results – CourtListener.com

USCA Case #25-5424     Document #2147621     Filed: 11/19/2025     Page 82 of 208

## 949 Cases and 1,421 Docket Entries 🔊 (/feed/search/?type=r&type=r&q=IFP%2C+in+forma+pauperis+&order_by=score+desc&filed_after=01%2F01%2F2...

1ms

### REDACTED v. REDACTED FEDERAL (D.D.C. 2025) (/docket/70439680/redacted-v-redacted-federal/)

Docket Number: 1:25-cv-01736
Date Filed: May 27th, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 05:0706 Judicial Review of Agency Actions (?type=r&cause="05%3A0706%20Judicial%20Review%20of%20Agency%20Actions")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: REDACTED, REDACTED FEDERAL DEFENDANTS
Attorneys: REDACTED

Expedite — Document #21 (/docket/70439680/21/redacted-v-redacted-federal/) (3 pages)

Date Filed: September 2nd, 2025
Description: MOTION for Expedited ruling on Pending Motion for Leave to Proceed in Forma Pauperis by REDACTED. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(zmtm) (Entered: 09/03/2025)
...LEAVE TO PROCEED IN FORMA SECURITY, ET AL., PAUPERIS PROPOSED 10 ...

Proceed In Forma Pauperis — Document #6 (/docket/70439680/6/redacted-v-redacted-federal/) ⊘

Date Filed: June 2nd, 2025
Description: MOTION for Leave to Proceed in forma pauperis by REDACTED. (zjd) (Entered: 06/02/2025)
...

Text of Proposed Order — Document #21, Attachment #2 (/docket/70439680/21/2/redacted-v-redacted-federal/) ⊘

Date Filed: September 2nd, 2025
Description: MOTION for Expedited ruling on Pending Motion for Leave to Proceed in Forma Pauperis by REDACTED. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(zmtm) (Entered: 09/03/2025)

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011422897?caseid=281183)

> View Additional Results for this Case (/?type=r&q=%28IFP%2C+in+forma+pauperis+%29+AND+docket_id%3A70439680&order_by=score+desc&filed_after=01%2F01%2F2025&court=dcd)

### DOE v. ADMINISTRATIVE OFFICE OF THE U.S. COURTS (D.D.C. 2025) (/docket/69899698/doe-v-administrative-office-of-the-us-courts/)

Docket Number: 1:25-cv-00701
Date Filed: March 10th, 2025
Date Terminated: April 15th, 2025
Nature of Suit: Other Statutory Actions (?type=r&nature_of_suit="Other%20Statutory%20Actions")
Cause: 28:2201 Injunction (?type=r&cause="28%3A2201%20Injunction")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Sparkle L. Sooknanan (?type=r&assigned_to="Sparkle%20L.%20Sooknanan")
Parties: DANA VAN METRE, JUDITH LANHAM, JANE DOE, ADMINISTRATIVE OFFICE OF THE U.S. COURTS, ... ➕
Attorneys: JANE DOE

Notice of Appeal to DC Circuit — Document #22 (/docket/69899698/22/doe-v-administrative-office-of-the-us-courts/) (5 pages)

Date Filed: April 16th, 2025
Description: NOTICE OF APPEAL TO DC CIRCUIT COURT as to 20 Memorandum & Opinion, 21 Order on Motion for Leave to Proceed in forma pauperis , by JANE DOE. Fee Status: IFP . Parties have been notified. (znmw) (Entered: 04/16/2025)
...(or Mert 1 yhe Gourto Aerusa/ | to preokct me, IN chret Welakn OF | Aarne s Vo Kerner! (The Sopre ...

Document #2 (/docket/69899698/2/doe-v-administrative-office-of-the-us-courts/) ⊘

Date Filed: March 10th, 2025
Description: MOTION for Leave to Proceed in forma pauperis , MOTION to Expedite Ruling by JANE DOE. (zsl) (Entered: 03/10/2025)
...

Transmission of Notice of Appeal and Docket Sheet to USCA — Document #23 (/docket/69899698/23/doe-v-administrative-office-of-the-us-courts/) ⊘

Date Filed: April 16th, 2025
Description: Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The fee was not paid because it was filed in forma pauperis re 22 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 04/16/2025)
...

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011244916?caseid=278218)

> View Additional Results for this Case (/?type=r&q=%28IFP%2C+in+forma+pauperis+%29+AND+docket_id%3A69899698&order_by=score+desc&filed_after=01%2F01%2F2025&court=dcd)

### WILSON v. HOLEMAN (D.D.C. 2025) (/docket/69658427/wilson-v-holeman/)

Docket Number: 1:25-cv-00473
Date Filed: February 1st, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 42:1981 Civil Rights (?type=r&cause="42%3A1981%20Civil%20Rights")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: STEPHEN RICKARD, JESSICA A GLAJCH, ALYSSA LYNN SZYMCZYK, RONALD L VAVRUSKA, JR, SHANNON ... ➕
Attorneys: ZENOBIA WILSON

Order on Motion for Leave to Proceed In Forma Pauperis — Document #3 (/docket/69658427/3/wilson-v-holeman/) ⊘

Date Filed: April 10th, 2025

Description: ORDER denying 2 Motion for Leave to Proceed in forma pauperis . Ordered that, within 30 days of the entry of this order, Plaintiff shall either submit a fully detailed amended IFP application, or alternatively, submit the $405 filing fee. See order for details. Signed by Judge Tanya S. Chutkan on 4/10/2025. (znmw) (Entered: 04/10/2025)

...

### Document #2 (/docket/69658427/2/wilson-v-holeman/) ⊘

Date Filed: February 1st, 2025
Description: MOTION for Leave to Proceed in forma pauperis by ZENOBIA WILSON. (zmgb) (Entered: 02/20/2025)

...

### Response to Order of the Court — Document #4 (/docket/69658427/4/wilson-v-holeman/) ⊘

Date Filed: April 18th, 2025
Description: RESPONSE TO ORDER OF THE COURT re 3 Order on Motion for Leave to Proceed in forma pauperis , filed by ZENOBIA WILSON. (znmw) (Entered: 04/23/2025)

...

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011210870?caseid=277644)

## ETHEREDGE v. CURRITUCK COUNTY DSS (D.D.C. 2025) (/docket/71145896/etheredge-v-currituck-county-dss/)

Docket Number: 1:25-cv-01737
Date Filed: June 2nd, 2025
Nature of Suit: 375 False Claims Act (?type=r&nature_of_suit="375%20False%20Claims%20Act")
Cause: 31:3729 False Claims Act (?type=r&cause="31%3A3729%20False%20Claims%20Act")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: CURRITUCK COUNTY DSS, CHRISTINE A. ETHEREDGE, VIRGINIA BEACH DSS, VIRGINIA DEPARTMENT OF HEALTH ... 🖃
Attorneys: CHRISTINE A. ETHEREDGE

### Order on Motion for Leave to Proceed in forma pauperis — Document #32 (/docket/71145896/32/etheredge-v-currituck-county-dss/) (1 page)

Date Filed: August 18th, 2025
Description: ORDER granting 3 Motion for Leave to Proceed in forma pauperis . (See order for details). Within 20 days from the entry date of this Order, Plaintiff shall comply fully with Chief Judge Boasbergs order or suffer dismissal of the case without prejudice. The Clerk of Court is directed to unseal the case.. Signed by Judge Jia M. Cobb on 8/18/2025. Pro Se party has been notified by first class mail.(zmtm) (Entered: 08/19/2025)

...Plaintiff's Second Motion for Leave to Proceed in forma pauperis ( IFP ). On July 17, 2025, Chief Judge Boasberg ...

### Motion for Leave to Proceed in forma pauperis — Document #2 (/docket/71145896/2/etheredge-v-currituck-county-dss/) ⊘

Date Filed: June 2nd, 2025
Description: MOTION for Leave to Proceed in forma pauperis by CHRISTINE A. ETHEREDGE. (znmw) (Entered: 06/10/2025)

...

### Motion for Leave to Proceed in forma pauperis — Document #3 (/docket/71145896/3/etheredge-v-currituck-county-dss/) ⊘

Date Filed: June 2nd, 2025
Description: Second MOTION for Leave to Proceed in forma pauperis by CHRISTINE A. ETHEREDGE. (znmw) (Entered: 06/10/2025)

...

> Initial Document (/docket/71145896/1/etheredge-v-currituck-county-dss/)

> View Additional Results for this Case (/?type=r&q=%28IFP%2C+in+forma+pauperis+%29+AND+docket_id%3A71145896&order_by=score+desc&filed_after=01%2F01%2F2025&court=dcd)

## ROBINSON v. ADMINISTRATOR D.C. JAIL (D.D.C. 2025) (/docket/71526985/robinson-v-administrator-dc-jail/)

Docket Number: 1:25-cv-03497
Date Filed: October 2nd, 2025
Nature of Suit: 555 Prisoner Petition: Prison Condition (Other) (?type=r&nature_of_suit="555%20Prisoner%20Petition%3A%20Prison%20Condition%20%28Other%29")
Cause: 28:1331 Federal Question: Other Civil Rights (?type=r&cause="28%3A1331%20Federal%20Question%3A%20Other%20Civil%20Rights")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: ADMINISTRATOR D.C. JAIL, AVERY ROBINSON
Attorneys: AVERY ROBINSON

### Document #6 (/docket/71526985/6/robinson-v-administrator-dc-jail/) ⊘

Date Filed: June 30th, 2025
Description: ORDER denying 2 Motion for Leave to Proceed in forma pauperis , Plaintiff shall file a properly completed application to proceed in forma pauperis or pay the filing fee in full by July 30, 2025. Failure to timely file a properly completed application to proceed in forma pauperis or filing fee will result in the case being dismiss. The Clerk of Court is directed to send Plaintiff a blank copy of the courts application to proceed in forma pauperis for Plaintiffs use in renewing his motion. Signed by Honorable Jennifer P. Wilson on 6/30/2025 (Attachments: # 1 IFP Application) (ve) [Transferred ... 🖃

...

### Document #2 (/docket/71526985/2/robinson-v-administrator-dc-jail/) ⊘

Date Filed: June 24th, 2025
Description: CERTIFIED MOTION for Leave to Proceed in forma pauperis by Avery Robinson,(lp) [Transferred from Pennsylvania Middle on 10/2/2025.] (Entered: 06/24/2025)

...

### Document #7 (/docket/71526985/7/robinson-v-administrator-dc-jail/) ⊘

Date Filed: July 15th, 2025
Description: MOTION for Leave to Proceed in forma pauperis by Avery Robinson,(ll) [Transferred from Pennsylvania Middle on 10/2/2025.] Modified on 10/2/2025 (zmtm). (Entered: 07/15/2025)

...

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011670301?caseid=285562)

> View Additional Results for this Case (/?type=r&q=%28IFP%2C+in+forma+pauperis+%29+AND+docket_id%3A71526985&order_by=score+desc&filed_after=01%2F01%2F2025&court=dcd)

## KNISELY v. EISENBERG (D.D.C. 2025) (/docket/71583523/knisely-v-eisenberg/)

Docket Number: 1:25-cv-03592
Date Filed: October 1st, 2025
Nature of Suit: 890 Other Statutory Actions (?type=r&nature_of_suit="890%20Other%20Statutory%20Actions")
Cause: 18:2331 Anti-terrorism Act (?type=r&cause="18%3A2331%20Anti-terrorism%20Act")

USCA Case #25-5424    Document #2147621    Filed: 11/19/2025    Page 84 of 208

11/8/25, 12:18 AM    Search Results    urts: 1 › Query, IFP, in forma pauperis › Filed After: . .    1-01 – 949 Results – CourtListener.com

Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: JOHN A. EISENBERG, MATTHEW R. GALEOTTI, SUSAN KNISELY, PAM BONDI
Attorneys: SUSAN KNISELY

Proceed In Forma Pauperis — Document #2 (/docket/71583523/2/knisely-v-eisenberg/) ⊘

Date Filed: October 1st, 2025
Description: MOTION for Leave to Proceed in forma pauperis by SUSAN KNISELY. (znmw) (Entered: 10/08/2025)
...

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011681281?caseid=285733)

## PETROZZI v. BOWSER (D.D.C. 2025) (/docket/70903707/petrozzi-v-bowser/)

Docket Number: 1:25-cv-02372
Date Filed: July 23rd, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 42:1983 Civil Rights Act (?type=r&cause="42%3A1983%20Civil%20Rights%20Act")
Jury Demand: Plaintiff (?type=r&q=juryDemand:"Plaintiff")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: MERRICK GARLAND, KASH PATEL, CHRISTOPHER WRAY, TIMOTHY R. PETROZZI, RUDOLPH CONTRERAS, MURIEL BOWSER, ... ⊞
Attorneys: TIMOTHY R. PETROZZI

Proceed In Forma Pauperis — Document #2 (/docket/70903707/2/petrozzi-v-bowser/) ⊘

Date Filed: July 23rd, 2025
Description: MOTION for Leave to Proceed in forma pauperis by TIMOTHY R. PETROZZI. (zmbs) (Entered: 07/24/2025)
...

Memorandum & Opinion — Document #3 (/docket/70903707/3/petrozzi-v-bowser/) (2 pages)

Date Filed: September 2nd, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Jia M. Cobb on 9/2/2025. (zmbs)
...plaintiff's application for leave to proceed in forma pauperis, ECF No. 2, and pro se complaint, ECF No, ...

> Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/0450115242937?caseid=282972)

## VALINE v. SCHUMER (D.D.C. 2025) (/docket/71713365/valine-v-schumer/)

Docket Number: 1:25-cv-03724
Date Filed: October 20th, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 28:1983 Civil Rights (?type=r&cause="28%3A1983%20Civil%20Rights")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: CHARLES E. SCHUMER, JACOB VALINE
Attorneys: JACOB VALINE

Proceed In Forma Pauperis — Document #2 (/docket/71713365/2/valine-v-schumer/) ⊘

Date Filed: October 20th, 2025
Description: MOTION for Leave to Proceed in forma pauperis by JACOB VALINE. (zmtm) (Entered: 10/21/2025)
...

Memorandum & Opinion — Document #4 (/docket/71713365/4/valine-v-schumer/) (2 pages)

Date Filed: October 31st, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Carl J. Nichols on 10/31/2025. (zmtm)
...Court on Plaintiff's application to proceed in forma pauperis, ECF No. 2, and his pro se complaint, ECF ...

> Initial Document (/docket/71713365/1/valine-v-schumer/)

## TABAEE v. NATIONAL AERONAUTICS AND SPACE ADMINISTRATION (D.D.C. 2025) (/docket/70642520/tabaee-v-national-aeronautics-and-space-administration/)

Docket Number: 1:25-cv-01900
Date Filed: June 13th, 2025
Nature of Suit: 442 Civil Rights: Jobs (?type=r&nature_of_suit="442%20Civil%20Rights%3A%20Jobs")
Cause: 42:2000e Job Discrimination (Employment) (?type=r&cause="42%3A2000e%20Job%20Discrimination%20%28Employment%29")
Jury Demand: Plaintiff (?type=r&q=juryDemand:"Plaintiff")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: MICHAEL JASINSKI, NASA OFFICE OF DIVERSITY AND EQUAL OPPORTUNITY, NATIONAL AERONAUTICS AND SPACE ... ⊞
Attorneys: PARDIS TABAEE

Proceed In Forma Pauperis — Document #2 (/docket/70642520/2/tabaee-v-national-aeronautics-and-space-administration/) ⊘

Date Filed: June 13th, 2025
Description: MOTION for Leave to Proceed in forma pauperis by PARDIS TABAEE. (int3) (Entered: 06/26/2025)
...

Order on Motion for Leave to Proceed In Forma Pauperis — Document # (/docket/70642520/tabaee-v-national-aeronautics-and-space-administration/#minute-entry-434694801) ⊘

Date Filed: August 14th, 2025
...

> Initial Document (/docket/70642520/1/tabaee-v-national-aeronautics-and-space-administration/)

## COLLIER v. U.S. DEPARTMENT OF JUSTICE (D.D.C. 2025) (/docket/71871437/collier-v-us-department-of-justice/)

Docket Number: 1:25-cv-03572

11/8/25, 12:18 AM    Search Results    urts. 1 › Query: IFP, in forma pauperis › Filed After:.    1-51 — 949 Results    CourtListener.com

USCA Case #25-5424    Document #2147621    Filed: 11/19/2025    Page 85 of 208

Date Filed: September 30th, 2025

Nature of Suit: 540 Prisoner Petition: Mandamus & Other (Other) (?type=r&nature_of_suit="540%20Prisoner%20Petition%3A%20Mandamus%20%26%20Other%20%28Other%29")

Cause: 28:1361 Petition for Writ of Mandamus (?type=r&cause="28%3A1361%20Petition%20for%20Writ%20of%20Mandamus")

Jury Demand: None (?type=r&q=juryDemand:"None")

Assigned To: Unassigned (?type=r&assigned_to="Unassigned")

Parties: SHARARD COLLIER, U.S. DEPARTMENT OF JUSTICE

Attorneys: SHARARD COLLIER

## Proceed In Forma Pauperis — Document #2 (/docket/71871437/2/collier-v-us-department-of-justice/) ⊘

Date Filed: September 30th, 2025

Description: MOTION for Leave to Proceed in forma pauperis by SHARARD COLLIER. (znmw) (Entered: 11/04/2025)

...

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011724341?caseid=286500)

💡 **Quick Tip!** With an estimated 1 billion documents, PACER is the largest paywall in the world.

# EXHIBIT E

# CourtListener Search: 101 Unassigned IFP Cases (as of Nov. 7, 2025)

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit E

## 101 Cases and 102 Docket Entries 🔊 (/feed/search/?

q=IFP%2C+in+forma+pauperis+AND+unassigned&type=r&order_by=score+desc&filed_after=01%2...

742ms

---

### REDACTED v. REDACTED FEDERAL (D.D.C. 2025) (/docket/70439680/redacted-v-redacted-federal/)

Docket Number: 1:25-cv-01736
Date Filed: May 27th, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 05:0706 Judicial Review of Agency Actions (?type=r&cause="05%3A0706%20Judicial%20Review%20of%20Agency%20Actions")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: REDACTED, REDACTED FEDERAL DEFENDANTS
Attorneys: REDACTED

Expedite — Document #21 (/docket/70439680/21/redacted-v-redacted-federal/) (3 pages)

Date Filed: September 2nd, 2025
Description: MOTION for Expedited ruling on Pending Motion for Leave to Proceed in Forma Pauperis by REDACTED, (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(zmtm) (Entered: 09/03/2025)
…LEAVE TO PROCEED IN FORMA SECURITY, ET AL., PAUPERIS PROPOSED 10 …

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011422897?caseid=281183)

---

### WILSON v. HOLEMAN (D.D.C. 2025) (/docket/69658427/wilson-v-holeman/)

Docket Number: 1:25-cv-00473
Date Filed: February 1st, 2025
Nature of Suit: 440 Civil Rights: Other (?type=r&nature_of_suit="440%20Civil%20Rights%3A%20Other")
Cause: 42:1981 Civil Rights (?type=r&cause="42%3A1981%20Civil%20Rights")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: STEPHEN RICKARD, JESSICA A GLAJCH, ALYSSA LYNN SZYMCZYK, RONALD L VAVRUSKA, JR, SHANNON … 🔓
Attorneys: ZENOBIA WILSON

Order on Motion for Leave to Proceed In Forma Pauperis — Document #3 (/docket/69658427/3/wilson-v-holeman/) ⊘

Date Filed: April 10th, 2025
Description: ORDER denying 2 Motion for Leave to Proceed in forma pauperis . Ordered that, within 30 days of the entry of this order, Plaintiff shall either submit a fully detailed amended IFP application, or alternatively, submit the $405 filing fee. See order for details. Signed by Judge Tanya S. Chutkan on 4/10/2025. (znmw) (Entered: 04/10/2025)
…

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011210870?caseid=277644)

---

### ETHEREDGE v. CURRITUCK COUNTY DSS (D.D.C. 2025) (/docket/71145896/etheredge-v-currituck-county-dss/)

Docket Number: 1:25-cv-01737
Date Filed: June 2nd, 2025
Nature of Suit: 375 False Claims Act (?type=r&nature_of_suit="375%20False%20Claims%20Act")
Cause: 31:3729 False Claims Act (?type=r&cause="31%3A3729%20False%20Claims%20Act")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: CURRITUCK COUNTY DSS, CHRISTINE A. ETHEREDGE, VIRGINIA BEACH DSS, VIRGINIA DEPARTMENT OF HEALTH … 🔓
Attorneys: CHRISTINE A. ETHEREDGE

Order on Motion for Leave to Proceed in forma pauperis — Document #32 (/docket/71145896/32/etheredge-v-currituck-county-dss/) (1 page)

Date Filed: August 18th, 2025
Description: ORDER granting 3 Motion for Leave to Proceed in forma pauperis . (See order for details). Within 20 days from the entry date of this Order, Plaintiff shall comply fully with Chief Judge Boasbergs order or suffer dismissal of the case without prejudice. The Clerk of Court is directed to unseal the case . Signed by Judge Jia M. Cobb on 8/18/2025. Pro Se party has been notified by first class mail.(zmtm) (Entered: 08/19/2025)
…Plaintiff's Second Motion to Proceed in forma pauperis ( IFP ). On July 17, 2025, Chief Judge Boasberg …

Motion to Amend/Correct — Document #19 (/docket/71145896/19/etheredge-v-currituck-county-dss/) (71 pages)

Date Filed: July 8th, 2025
Description: MOTION to Amend 1 Complaint, MOTION to Reopen Priorly Dismissed Case, MOTION for Service by U.S. Marshals, and MOTION for Emergency Protective Relief by CHRISTINE A. ETHEREDGE. (zmtm) . (Entered: 07/09/2024)
…Honorable Court to grant leave to amend the complaint  in  Case No. 25-CV-01737, and to coordinate the reopening …

Initial Document (/docket/71145896/1/etheredge-v-currituck-county-dss/)

---

### ROBINSON v. ADMINISTRATOR D.C. JAIL (D.D.C. 2025) (/docket/71526985/robinson-v-administrator-dc-jail/)

Docket Number: 1:25-cv-03497
Date Filed: October 2nd, 2025
Nature of Suit: 555 Prisoner Petition: Prison Condition (Other) (?type=r&nature_of_suit="555%20Prisoner%20Petition%3A%20Prison%20Condition%20%28Other%29")
Cause: 28:1331 Federal Question: Other Civil Rights (?type=r&cause="28%3A1331%20Federal%20Question%3A%20Other%20Civil%20Rights")
Jury Demand: None (?type=r&q=juryDemand:"None")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: ADMINISTRATOR D.C. JAIL, AVERY ROBINSON
Attorneys: AVERY ROBINSON

Document #6 (/docket/71526985/6/robinson-v-administrator-dc-jail/) ⊘

Date Filed: June 30th, 2025
Description: ORDER denying 2 Motion for Leave to Proceed in forma pauperis . Plaintiff shall file a properly completed application to proceed in forma pauperis or pay the filing fee in full by July 30, 2025. Failure to timely file a properly completed application to proceed in forma pauperis or filing fee will result in the case being dismiss. The Clerk of Court is directed to send Plaintiff a blank copy of the courts application to proceed in forma pauperis for Plaintiffs use in renewing his motion. Signed by Honorable Jennifer P. Wilson on 6/30/2025 (Attachments: # 1 IFP Application) (ve) [Transferred … 🔓

...

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011670301?caseid=285562)

### NOHA v. EMBASSY OF THE RUSSIAN FEDERATION IN THE USA (D.D.C. 2025) (/docket/70693509/noha-v-embassy-of-the-russian-federation-in-the-usa/)

Docket Number: 1:25-cv-02099
Date Filed: July 1st, 2025
Nature of Suit: Civil Rights: Other (?type=r&nature_of_suit="Civil%20Rights%3A%20Other")
Cause: 42:1981 Civil Rights (?type=r&cause="42%3A1981%20Civil%20Rights")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: NOHA, EMBASSY OF THE RUSSIAN FEDERATION IN THE USA

Memorandum & Opinion — Document #49 (/docket/70693509/49/noha-v-embassy-of-the-russian-federation-in-the-usa/) (4 pages)

Date Filed: August 5th, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Jia M. Cobb on 08/05/2025. (zmgb)
...OF THE RUSSIAN ) FEDERATION IN THE USA, et al., ) ...

Initial Document (/docket/70693509/1/noha-v-embassy-of-the-russian-federation-in-the-usa/)

### NOHA v. EMBASSY OF THE RUSSIAN FEDERATION IN THE USA (D.D.C. 2025) (/docket/70652855/noha-v-embassy-of-the-russian-federation-in-the-usa/)

Docket Number: 1:25-cv-01957
Date Filed: June 23rd, 2025
Nature of Suit: Civil Rights: Other (?type=r&nature_of_suit="Civil%20Rights%3A%20Other")
Cause: 42:1983 Civil Rights Act (?type=r&cause="42%3A1983%20Civil%20Rights%20Act")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: NOHA, EMBASSY OF THE RUSSIAN FEDERATION IN THE USA

Memorandum & Opinion — Document #23 (/docket/70652855/23/noha-v-embassy-of-the-russian-federation-in-the-usa/) (5 pages)

Date Filed: August 5th, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Jia M. Cobb on 8/5/2025. (zmtm)
...OF THE RUSSIAN ) FEDERATION IN THE USA, et al., ) ...

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011473648?caseid=282041)

### VALINE v. UNITED STATES DEPARTMENT OF LABOR (D.D.C. 2025) (/docket/71583525/valine-v-united-states-department-of-labor/)

Docket Number: 1:25-cv-03431
Date Filed: September 25th, 2025
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: VALINE, UNITED STATES DEPARTMENT OF LABOR

Notice (Other) — Document #6 (/docket/71583525/6/valine-v-united-states-department-of-labor/) (1 page)

Date Filed: October 21st, 2025
...with a Motion for Leave to Proceed In Forma Pauperis, a Motion for Leave to File Amended Complaint ...

Initial Document (/docket/71583525/1/valine-v-united-states-department-of-labor/)

### OKORIE v. TRUMP (D.D.C. 2025) (/docket/71530584/okorie-v-trump/)

Docket Number: 1:25-cv-03428
Date Filed: September 26th, 2025
Nature of Suit: Civil Rights: Other (?type=r&nature_of_suit="Civil%20Rights%3A%20Other")
Cause: 42:1983 Civil Rights Act (?type=r&cause="42%3A1983%20Civil%20Rights%20Act")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: OKORIE, TRUMP

Memorandum & Opinion — Document #3 (/docket/71530584/3/okorie-v-trump/) (1 page)

Date Filed: November 5th, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Trevor N. McFadden on 11/5/2025. (znmw)
...1, and application for leave to proceed in forma pauperis (IFP), ECF No. 2. For the following reasons ...

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011671471?caseid=285585)

### ALLEN v. BANK OF AMERICA (D.D.C. 2025) (/docket/69597684/allen-v-bank-of-america/)

Docket Number: 1:25-cv-00029
Date Filed: January 2nd, 2025
Date Terminated: April 7th, 2025
Nature of Suit: Civil Rights: Other (?type=r&nature_of_suit="Civil%20Rights%3A%20Other")
Cause: 28:1983 Civil Rights (?type=r&cause="28%3A1983%20Civil%20Rights")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: ALLEN, BANK OF AMERICA

Memorandum & Opinion — Document #3 (/docket/69597684/3/allen-v-bank-of-america/) (2 pages)

Date Filed: April 7th, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Tanya S. Chutkan on 4/7/2025. (znmw)
...complaint and an application to proceed in forma pauperis (IFP). For the following reasons, the Court ...

## KNIGHT v. UNITED MEDICAL CENTER (D.D.C. 2025) (/docket/71219228/knight-v-united-medical-center/)

Docket Number: 1:25-cv-02726
Date Filed: August 18th, 2025
Nature of Suit: P.I.: Other (?type=r&nature_of_suit="P.I.%3A%20Other")
Cause: 28:1391 Personal Injury (?type=r&cause="28%3A1391%20Personal%20Injury")
Assigned To: Unassigned (?type=r&assigned_to="Unassigned")
Parties: KNIGHT, UNITED MEDICAL CENTER

Memorandum & Opinion — Document #10 (/docket/71219228/10/knight-v-united-medical-center/) (2 pages)

Date Filed: October 7th, 2025
Description: MEMORANDUM AND OPINION. Signed by Judge Carl J. Nichols on 10/7/2025. (zmtm)
...complaint and an application to proceed in forma pauperis ( IFP ). For the following reasons, the Court ...

Buy Initial Document (https://ecf.dcd.uscourts.gov/doc1/045011595390?caseid=284273)

♀ **Quick Tip!** CourtListener has every free opinion and order available in PACER (https://free.law/2017/08/15/we-have-all-free-pacer/) and gets the latest ones every night.

# EXHIBIT F

# PacerWatch Report of Comparator Case (Venezia)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit F

# VENEZIA v. U.S. DEPARTMENT OF STATE

**District Of Columbia District Court**

| | |
|---|---|
| **Judge:** | James E Boasberg |
| **Case #:** | 1:25-cv-03522 |
| **Nature of Suit** | 895 Other Statutes - Freedom of Information Act |
| **Cause** | 05:552 Freedom of Information Act |
| **Case Filed:** | Oct 01, 2025 |

Docket    Parties (2)

Last checked: **Wednesday Oct 01, 2025 1:01 PM EDT**

**Defendant**
U.S. DEPARTMENT OF STATE

**Plaintiff**
RICHARD VENEZIA

**Represented By**
Matthew Topic
*Loevy & Loevy*
contact info

Merrick Jason Wayne
*Loevy & Loevy*
contact info

Stephen Stich Match
*Loevy & Loevy*
contact info

Docket last updated: **11/03/2025 11:59 PM EST**

## Thursday, October 02, 2025

**6** | service | Electronic Summons Issued as to AUSA,USAG | Thu 10/02 9:38 AM

SUMMONS (3) Issued Electronically as to U.S. DEPARTMENT OF STATE, U.S. Attorney and U.S. Attorney General(zhcn)

Att: 1 📄 Notice and Consent

| utility | Case Assigned/Reassigned | Thu 10/02 9:34 AM |

Case Assigned to Chief Judge James E. Boasberg. (zhcn)

## Wednesday, October 01, 2025

**5** 📄 | notice | Notice of Appearance | Wed 10/01 12:49 PM |

NOTICE of Appearance by Merrick Jason Wayne on behalf of RICHARD VENEZIA (Wayne, Merrick)

**4** 📄 | notice | Notice of Appearance | Wed 10/01 12:47 PM |

NOTICE of Appearance by Stephen Stich Match on behalf of RICHARD VENEZIA (Match, Stephen)

**3** 📄 | notice | Notice of Appearance | Wed 10/01 12:45 PM |

NOTICE of Appearance by Matthew Topic on behalf of RICHARD VENEZIA (Topic, Matthew)

**2** 📄 | misc | Sealed Document | Wed 10/01 12:40 PM |

SEALED DOCUMENT filed by RICHARD VENEZIA(This document is SEALED and only available to authorized persons.)(Topic, Matthew)

**1** 📄 | cmp | Complaint | Wed 10/01 12:38 PM |

COMPLAINT against U.S. DEPARTMENT OF STATE ( Filing fee $ 405 receipt number ADCDC-11997496) filed by RICHARD VENEZIA.(Topic, Matthew)

Att: 1 📄 Exhibit 1-2,

Att: 2 📄 Civil Cover Sheet,

Att: 3 📄 Summons

## Continue to Create Account

Privacy Policy • Cookie Policy • Terms • About
PacerMonitor, LLC © 2025.

# EXHIBIT G

# Addendum 7 – Plaintiff's Evidentiary Affidavit

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit G

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se<br><br>v.<br><br>**DEPARTMENT OF THE NAVY; et al.;**<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  25-CV-03345

## PLAINTIFF'S AFFIDAVIT ADDENDUM #7

**For the Preservation of Evidentiary Integrity and Judicial Accountability**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. **Purpose and Scope —** This Addendum builds upon Addendum #6's certification of willful conduct by demonstrating that **all legitimate administrative, procedural, or contextual explanations have been tested, quantified, and exhausted.**

2. When every conceivable justification is eliminated and delay persists, what remains is no longer administrative — it is constitutional.

---

3. **Standard Timelines and Deviation Multipliers**

| Action Required | Standard Period | Elapsed in This Case | Deviation |
|---|---|---|---|
| Duty-Judge TRO Review | 24–72 hours | 56 + days | 18–56 × |
| § 1915 IFP Motion Ruling | 7–14 days | 56 + days | 4–8 × |
| Case Assignment | 1–7 days | 56 + days | 8–56 × |
| Chief Judge Response | 3–7 days | 28 + days + | 4–9 × |

4. The cumulative deviation exceeds **every known tolerance** for administrative delay in the District of Columbia.

---

5. **Exhaustion of Legitimate Explanations**

   a. **Government Shutdown (Oct 1–17)**

      1. Emergency and essential matters explicitly exempted per the Court's October 17 Public Advisory.

      2. Accounts for only 17 of 56 + days.

      3. Cannot explain the 12 days before Oct 1 or the 25 + days after Oct 17.

         → *Explanation exhausted.*

   b. **Case Complexity**

1. IFP review and TRO screenings are threshold determinations, not merits analyses.

2. No judicial engagement occurred to generate complexity.

   → *Explanation exhausted.*

## c.  **Judicial Backlog**

1. Emergency motions are expressly removed from backlog queues.

2. Duty-judge rotation exists to ensure immediate handling.

   → *Explanation exhausted.*

## d.  **Pro Se Status**

1. Courts are required to liberally construe and expedite access for pro se litigants under *Haines v. Kerner*, 404 U.S. 519 (1972).

2. § 1915 was enacted to remove financial barriers, not create procedural ones.

   → *Explanation exhausted.*

## e.  **Administrative Error**

1. Five prior addenda and a direct motion to the Chief Judge provided constructive and actual notice.

2. An eight-week error uncorrected after repeated notice cannot be inadvertent.

   → *Explanation exhausted.*

## f.  **Service Issues**

1. Service cannot commence until the § 1915 motion is adjudicated.

2. TRO review may proceed *ex parte.*

   → *Explanation exhausted.*

g. **Case Not Ready for Assignment**

1. A case number was issued and filings accepted, confirming procedural readiness.

2. Readiness cannot depend on an order the Court refuses to issue.

   → *Explanation exhausted.*

---

6. **Mathematical Validation of Excess**

7. Applying extremely generous allowances:

   a. Shutdown impact (17 days): ≈ 30 % of delay

   b. Backlog tolerance ( + 14 days ): ≈ 25 %

   c. Administrative processing ( + 7 days ): ≈ 13 % Total = 38 days explained of 56 + actual.

   d. **18 + days — 32 % of total delay — remain wholly unexplained** by any plausible operational factor.

8. This unexplained remainder therefore constitutes prima facie evidence of willful **administrative deprivation.**

---

### 9. Temporal Landmarks of Excess

| Day Count | Date (2025) | Threshold Crossed |
|---|---|---|
| 3 | Sept 22 | TRO review period exceeded |
| 14 | Oct 3 | IFP decision period exceeded |
| 17 | Oct 6 | Shutdown begins |
| 24 | Oct 13 | Direct Chief Judge motion filed |
| 28 | Oct 17 | Advisory confirms court operations |
| 34 | Oct 23 | Chief Judge motion unanswered |
| 38 | Oct 27 | Addendum #4 filed |
| 45 | Nov 3 | Addendum #5 filed |
| 56 + | Nov 14 + | All explanations exhausted |

10. Each milestone represents not delay alone, but an ignored opportunity for correction.

---

11. **The Legal Standard of Willfulness Met** — "Willfulness does not require malice or evil intent; it requires only that the act be done voluntarily and intentionally, with knowledge that the conduct violates the law." *Ratzlaf v. United States*, 510 U.S. 135 (1994). Applied to the present record:

     a. **Voluntary** – No external barrier to judicial action.

     b. **Intentional** – Sustained pattern after notice.

    c. **Knowledge** – Documented awareness via five addenda + direct motion.

    d. **Result** – Complete denial of adjudicative access.

12. The totality therefore **meets each element** of the federal willfulness standard without requiring inference of motive.

---

### 13. The Record Compels Conclusion

14. When administrative explanations fail, the residue is intent. When opportunity after opportunity passes without response, silence itself becomes declarative. The Court's conduct toward Case No. 25-CV-03345 no longer suggests delay; it **proves deprivation.** The pattern does not indicate oversight; it **demonstrates choice.** The record does not request interpretation; it **demands accountability.**

15. **Preservation of the Record**—Plaintiff respectfully requests that this Addendum be entered into the public record to provide a formal documentation of these jurisdictional facts and the resultant lack of external procedural checks.

16. All prior statements and exhibits remain true and correct to the best of Plaintiff's knowledge and belief. This Addendum is made under penalty of perjury pursuant to 28 U.S.C. §1746.

Respectfully submitted this 14th day of November, 2025.

---

### SIGNATURE

Respectfully submitted,

/s/ Osei Harper

---

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT H1

# District Court Memorandum Opinion
## (Dismissal)

## Harper v. Navy, No. 25-cv-03345
## (D.D.C.), Exhibit H1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OSEI HARPER,                        )
                                    )
          Plaintiff,                )
                                    )
     v.                             )       Civil Action No. 1:25-cv-03345 (UNA)
                                    )
DEPARTMENT OF THE NAVY, et al.,     )
                                    )
                                    )
          Defendants.               )

**MEMORANDUM OPINION**

This matter is currently before the Court on consideration of, *inter alia*, Plaintiff's *pro se* Complaint, ECF No. 1, and his Application for Leave to Proceed *in forma pauperis* ("IFP"), ECF No. 2. Upon review, the Court grants Plaintiff's IFP Application, and dismisses this matter without prejudice.

Plaintiff, a resident of Florida, sues the Department of the Navy, the Board for Correction of Naval Records, the Department of Defense, the Secretary of the Navy (in his official capacity), three naval officers (in their individual capacities), and "John Does 1–5," *see* Compl. at 4–6. But Plaintiff may not sue these Doe Defendants, as it contravenes D.C. Local Civil Rule 5.1(c)(1). The Complaint itself chronicles "Plaintiff's journey" and his attempt to "challenge[] a continuum of harm spanning more than three decades, compounded by administrative obstruction and falsification of records. This continuum originated in the U.S. Navy and metastasized through three decades of discriminatory exclusion, marginalization, and systemic betrayal." *See id.* at 7–8.

Where the Complaint is most cognizable, Plaintiff broadly challenges the Navy's responses to his FOIA requests, *see id.* at 10–12, but Plaintiff then attempts to expand and connect these

FOIA responses to a sprawling nefarious scheme orchestrated against him that "began as command-level misconduct [and then] evolved into a pattern of administrative sabotage, legal manipulation, and systemic obstruction," *id.* at 8; *see generally* Compl. Plaintiff invokes the FOIA, the Privacy Act, the Little Tucker Act, the Administrative Procedure Act, the Rehabilitation Act, the Americans with Disabilities Act, *Bivens* and the Fifth and Sixth Amendments, the Federal Mandamus Act, and the Federal Tort Claims Act. *See id.* at 6, 20–26.

In essence, Plaintiff attempts to address every wrong that he ever allegedly endured arising from his military service and thereafter, from Defendants' alleged "pyramid of misconduct," *see id.* at 11, 16, that has purportedly manifested in myriad ways, including alleged federal crimes, *see id.* at 11, 25; "suppression of earned promotions," *see id.* at 20; "targeted retaliation [and] discriminatory exclusion," *see id.* at 24; cruel and unusual punishment, *see id.* at 10, 24; mistreatment based on disability leading up to his wrongful discharge in 1992, *see id.* at 4–10, 13, 10, 15–17, 20, 22, 24–25; post-discharge discrimination based on disability, 7, 17–21; denial of benefits and medical treatment, *see id.* at 8, 10, 16–18, 20–21, 24, 27; failure to correct his military record and falsification of records, *see id.* at 4, 6–8, 11–12, 18–20, 24–27; denial of "fair access to administrative review," and refusal "to engage in good faith consideration of his petitions," *see id.* at 6–7, 11, 14, 17, 20–21, 24, 26. He demands assorted equitable relief and damages. *See id.* at 27–28.

The Court also notes that, since this case was initiated less than two months ago, Plaintiff has proliferated this case with numerous additional submissions, including supplementing the Complaint with 171 pages of additional Exhibits and Memoranda, ECF Nos. 6 through 6-30, ECF Nos. 7 through 7-2, but these proposed additions fail to comply with Federal Rule 15(a) or D.C. Local Civil Rule 5.1(e), (g), 7(i), or 15(i), and to that same end, "Plaintiff's [C]omplaint is not the

legal equivalent of a LEGO set, something to be recreated," in such piecemeal fashion, *see Whitman v. Dep't of Army*, No. 21-03163, 2023 WL 3844603, at *2 (D.D.C. June 5, 2023). And although a "a *pro se* litigant must of course be given fair and equal treatment, he cannot generally be permitted to shift the burden of litigating his case to the courts." *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) (cleaned up); *see Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

Here, the breadth of Plaintiff's submissions does not assist him. Certainly, some of the alleged wrongs may constitute plausible causes of action, if better pleaded, but instead of providing the necessary supporting details of any these potential claims—e.g., how or when Defendants negligently handled his administrative petitions—and which petitions were mishandled, or the dates and administrative history of his FOIA requests, Plaintiff instead focuses largely on fleshing out his theory of a "coordinated effort . . . of engineered neglect and deception," Compl. at 7; *see generally* Compl., but "'a laundry list of wrongful acts and conclusory allegations to support h[is] theory of a conspiracy,'" are patently "'insufficient to allow the case to go forward.'" *Curran v. Holder*, 626 F. Supp. 2d 30, 34 (D.D.C. 2009) (dismissing for lack of subject matter jurisdiction as frivolous) (quoting *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 233 (D.D.C. 2007)). Plaintiff also focuses heavily on his attempts at settlement, *see* Compl. at 13–15, 19, 27–28, but those discussions are irrelevant to the Court, *see Jones v. Ashcroft*, 321 F. Supp. 2d 1, 12 (D.D.C. 2004).

*Pro se* litigants must comply with the Federal Rules of Civil Procedure, *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987), and here, the Complaint and its addendums fail to comply with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a pleading to contain "(1) a short and plain statement of the grounds for the court's jurisdiction [and] (2) a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Ciralsky v. CIA*, 355 F.3d 661, 668-71 (D.C. Cir.

2004). The Rule 8 standard ensures that defendants receive fair notice of the claim being asserted

so that they can prepare a responsive answer and an adequate defense and determine whether the

doctrine of *res judicata* applies. *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977).

Here, the Complaint is neither short nor plain, *see* Fed. R. Civ. P. 8(a), the allegations

cannot be described as simple, concise, and direct, *see* Fed. R. Civ. P. 8(d)(1), and the paragraphs

are not limited to a single set of circumstances, *see* Fed. R. Civ. P. 10(b). Indeed, Plaintiff's

intended claims are "too unwieldy to proceed." *See Spence v. U.S. Dep't of Vet. Affairs*, No. 19-

cv-1947, 2022 WL 3354726, at *11 (D.D.C. Aug. 12, 2022) (holding that, where allegations are

presented in a "disorganized and convoluted" manner, dismissal is appropriate for that reason

alone), *aff'd*, 109 F.4th 531 (D.C. Cir. 2024). "Courts have often dismissed complaints that contain

bloated and disorganized allegations such as this for violations of Rule 8." *Id.* (collecting cases);

*see Brown*, 75 F.R.D. at 499 (finding that the complaint failed to comply with Rule 8(a) and

because it was "long-winded and redundant, and hides the substance of its claims within its

prolixity. Defendants should not be forced to spend time and energy in attempting to decipher

Hamrick's utterly confusing and lengthy pleading.")).

Put differently, Plaintiff's ongoing distrust of Defendants is clear, but when it comes down

to pleading actual legal claims, he presents only "threadbare recitals" that are "supported by mere

conclusory statements" which are insufficient. *See Iqbal*, 556 U.S. at 678. A complaint "must

plead 'factual matter' that permits the court to infer 'more than the mere possibility of

[defendant's] misconduct.'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672,

681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79; *see Aktieselskabet AF 21. Nov.2001*

*v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) ("We have never accepted 'legal conclusions cast in the form of factual allegations' because a complaint needs some information about the circumstances giving rise to the claims.") (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

For all of these reasons, the Complaint, ECF No. 1, will be dismissed without prejudice. Plaintiff's Motion for Temporary Restraining Order, ECF No. 5, raising conspiratorial accusations of a "perpetuation of injustice . . . sustained for over three decades," substantially similar to those raised in the Complaint, will be denied for the same reasons. *Accord DeLorean 88 LLC v. District of Columbia*, --- F. Supp. 3d ---, 2025 WL 2851597, at *10 (D.D.C. 2025) (denying motion for preliminary injunction as moot when complaint was dismissed). Plaintiff's Motion for CM/ECF Password, ECF No. 3, Motion to Expedite Ruling, ECF No. 8, and Motion for Judicial Action, ECF No. 10, are all denied as moot. A separate Order accompanies this Memorandum Opinion.

TREVOR N. McFADDEN
Date: November 13, 2025    United States District Judge

# EXHIBIT H2

District Court Dismissal Order

(11/13/2025)

Harper v. Navy, No. 25-cv-03345

(D.D.C.), Exhibit H2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

OSEI HARPER,                              )
                                         )
              Plaintiff,                  )
                                         )
    v.                                    )    Civil Action No. 1:25-cv-03345 (UNA)
                                         )
DEPARTMENT OF THE NAVY, et al.,           )
                                         )
                                         )
              Defendants.                 )

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Application for Leave to Proceed *in forma pauperis*, ECF No.

2, is **GRANTED**, and it is further

**ORDERED** that Plaintiff's Motion for Temporary Restraining Order, ECF No. 5, is

**DENIED**, and it is further

**ORDERED** that the Complaint, ECF No. 1, and this case, are **DISMISSED** without

prejudice, and it is further

**ORDERED** that Plaintiff's Motion for CM/ECF Password, ECF No. 3, Motion to Expedite

Ruling, ECF No. 8, and Motion for Judicial Action, ECF No. 10, are all **DENIED** as moot.

This is a final appealable Order. *See* Fed. R. App. P. 4(a). The Clerk of Court is requested

to close this case.



TREVOR N. McFADDEN
Date: November 13, 2025              United States District Judge

# EXHIBIT I

## Emergency Motion for Temporary Restraining Order (Signed, 09/30/2025)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit I

# UNITED STATES DISTRICT COURT

for the

District of Columbia

**OSEI HARPER,**
Plaintiff, pro se

v.

**DEPARTMENT OF THE NAVY; et. al.;**
Defendants

Case No.   25-CV-03345

## PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR A TEMPORARY

## RESTRAINING ORDER TO PREVENT ONGOING SPOLIATION OF EVIDENCE AND

## FRAUD ON THE COURT

## TABLE OF CONTENTS

| Section | Title | Page |
|---------|-------|------|
| I | Introduction | 3 |
| II | Factual Background | 4 |
| III | Compliance with Rule 65(b)(1) | 10 |
| IV | Legal Standard | 10 |
| V | Requested Relief | 12 |
| VI | Conclusion | 13 |
| VII | Signature | 15 |

## TABLE OF AUTHORITIES

| Authority | Citation | Page(s) |
|-----------|----------|---------|
| 18 U.S.C. § 1519 | Falsification of federal records | 3, 12 |
| *Winter v. NRDC* | 555 U.S. 7 (2008) | 11 |
| *Malibu Media, LLC v. Harrison* 2014 WL 6474065 (S.D. Ind. Nov. 19, 2014) | | 11 |
| *United States v. Rosner* | 516 F.2d 269 (2d Cir. 1975) | 12 |

## I. INTRODUCTION:

EVIDENCE OF A FEDERAL CRIME REQUIRES IMMEDIATE JUDICIAL INTERVENTION

1. This Motion presents the Court with evidence of an ongoing federal crime—the deliberate alteration and concealment of federal records to obstruct justice. 18 U.S.C. § 1519. The official military record of Plaintiff Osei Harper has been actively falsified, as evidenced by the substitution of the key retaliating officer's identity ("CDR D.L. Bernhard" has been replaced with "CDR D.L. Cochran"). This is not a clerical error; it is a deliberate act of revisionism.

2. Coupled with a pattern of "Glomar" responses (refusing to confirm or deny the existence of records) and intentionally contradictory FOIA productions, these actions form a coherent pattern of obstruction designed to render Plaintiff's claims—and this Court's ability to adjudicate them—impossible.

3. Plaintiff moves ex parte for a narrowly tailored Temporary Restraining Order to halt this spoliation immediately. The requested relief is minimal: an order to preserve the status quo and prevent the continued destruction of evidence central to what is now a potential investigation into fraud upon the Court and obstruction of justice.

4. This Court's jurisdiction rests in part on 28 U.S.C. § 1361 (mandamus), as Plaintiff seeks to compel agency action unlawfully withheld and to remedy clear abuses of discretion. The ongoing spoliation of evidence directly frustrates this Court's mandamus power by systematically destroying the very records needed to determine what agency action should be compelled. An ex parte TRO is thus essential not merely to preserve evidence, but to preserve this Court's constitutional authority to issue meaningful mandamus relief.

---

## II. FACTUAL BACKGROUND

### IRRECONCILABLE RECORDS DEMONSTRATE FABRICATION AND EVIDENCE OF FRAUD

5. The heart of Plaintiff's case is that Commander D.L. Bernhard initiated a retaliatory campaign against him in 1992. Contemporaneous records from the time of Plaintiff's service (Non-Judicial Punishment paperwork, Temporary Personnel Unit logs, performance reviews) repeatedly and consistently identify **CDR D.L. Bernhard**.

6. In 2025, Plaintiff sought to obtain records related to CDR Bernhard via the Freedom of Information Act. On August 7, 2025, the Naval Criminal Investigative Service (NCIS) issued a "Glomar" response, refusing to confirm or deny the very existence of any records pertaining to Bernhard, a response typically reserved for matters of national security or covert operations.

#### IRRECONCILABLE RECORDS

7. To understand the discrepancy between the contemporaneous records identifying CDR Bernhard and the Navy's current assertion of CDR Cochran, Plaintiff submitted a FOIA request for CDR Bernhard's own service record.

8. The production of CDR Bernhard's records reveals a chronology so riddled with internal contradictions and contradictions of verifiable historical facts that it is structurally incapable of representing a truthful account of naval service. The data, gleaned from the

unredacted portions of his Fitness Reports, demonstrates multiple logical and regulatory impossibilities, including:

   a. **Overlapping Detachments and Commands**: The record places CDR Bernhard in two separate fighter squadrons (VF-1 and VF-124) simultaneously, a direct violation of U.S. Navy command protocol.

   b. **Temporal Impossibilities**: The FitReps contain multiple, overlapping periods of 'Detachment' and 'Periodic' reporting, creating a chronologically impossible timeline of his service.

   c. **Erased Rank Progression**: The records list Bernhard at the rank of Commander (O-5) for periods when, according to the Navy's own purported timeline, he would have been a Lieutenant Commander (O-4), suggesting a retroactive and inaccurate alteration of his rank history.

   d. **The 'Cochran' Substitution**: Public-facing Navy databases and official responses now identify CDR Donnie L. Cochran—a highly decorated, publicly documented aviator—as the commanding officer of VF-1 during the precise period in question, directly contradicting the contemporaneous evidence that identifies CDR Bernhard.

9. (See Exhibit 03: Contradictory NARA Command Photos; Exhibit 02: Bernhard's OMPF showing simultaneous command; Exhibit 18: Analysis of Illogical and Impossible FitRep Chronology).

10. The impossibility of the Navy's internal record-keeping is proven by comparing it to the verified, historical chain of command. As established by contemporary press reports and official Navy historical sources, the command billets for VF-1 and VF-124 were filled by

other, documented officers during the precise period the Navy's altered records now claim CDR Bernhard was in command of both. (See Exhibit 17: Externally Verified Chain of Command Timeline). The Navy's internal records do not merely contain errors; they describe a reality that could not have physically existed, confirming they are the product of a revisionist alteration of history.

## SELECTIVE MODIFICATION OF DISCLOSURE PRACTICE CONFIRMS BAD-FAITH SPOLIATION

11. The National Personnel Records Center (NPRC) and Department of Defense uniformly treat certain fields of a DD-214 — including name, rank, dates of service, duty status, awards, and characterization of discharge — as public information routinely released in FOIA responses and widely available through civilian background checks. Plaintiff's DD-214 has been disclosed in full, consistent with this practice. Yet Defendants have taken the extraordinary step of redacting or withholding CDR D.L. Bernhard's DD-214 (Ex. 2, p. 29), suppressing exactly those fields customarily disclosed.

12. Defendants attempt to justify these redactions under the label of "Privacy Reasons." In their September 15, 2025 response (Ex. 1), the Navy invoked FOIA Exemption 6, asserting that disclosure of Bernhard's service dates, duty status, and discharge characterization would constitute "a clearly unwarranted invasion of personal privacy." But NPRC policy expressly treats those same fields as not private and presumptively releasable. There is no valid presumption of privacy for information expressly defined by regulation as public record.

13. **The** asymmetry is striking. The same information appears unredacted in Plaintiff's DD-214, but is concealed in Bernhard's. Defendants' reliance on Exemption 6 — while pointedly declining to invoke Exemption 3 (national security/classified assignments) — demonstrates that this concealment has nothing to do with sensitive operations. It is the selective suppression of ordinary records, masquerading as privacy protection.

14. Such deviation from established FOIA norms[1], applied only to shield a named Defendant, constitutes not merely inconsistency but intentional concealment.[2] It is bad-faith spoliation, and it warrants immediate injunctive relief to preserve and produce unaltered records.

### TEMPORAL AMBIGUITY OF REDACTIONS WARRANTS DISCOVERY

15. It is unclear when the redactions to CDR Bernhard's DD-214 were applied. Plaintiff's record was restored from microfiche in its original, unredacted form. By contrast, Bernhard's record appears to have been more recently maintained and subjected to electronic redaction. Defendants have not identified whether unaltered versions exist in microfiche, archival repositories, or earlier iterations of the OMPF.

16. This ambiguity raises critical questions: Were the redactions contemporaneous with Bernhard's 1992 separation, or were they applied decades later in 2025? If the latter, Defendants may have altered or destroyed evidence in anticipation of litigation. Only a complete chain-of-custody accounting and production of unaltered microfiche or archival copies can resolve this issue.

---

[1] See National Archives, FOIA Reference Guide, "Official Military Personnel Files (OMPF)," available at https://www.archives.gov/personnel-records-center/ompf-access

[2] Identifying "public information" releasable under FOIA, including service dates, duty status, and discharge characterization — precisely the fields redacted from CDR Bernhard's DD-2140

17. The uncertainty itself confirms the need for immediate preservation orders and limited expedited discovery to prevent further spoliation and to establish when and why these redactions were imposed.

## NECESSITY OF DISCOVERY UNDER RULE 26(b)(2)(C)

18. The Federal Rules of Civil Procedure require that discovery be "proportional to the needs of the case, considering the importance of the issues at stake, the importance of the discovery in resolving the issues, and whether the burden or expense outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii).

19. Discovery into the timing and method of redactions on CDR Bernhard's DD-214 squarely satisfies this standard. The questions are binary and critical: Were the redactions contemporaneous with his separation, or imposed decades later during administrative handling? Do unaltered microfiche or archival versions exist? These answers go directly to the integrity of the evidentiary record and to whether Defendants engaged in post-hoc alteration to conceal misconduct. The burden of producing chain-of-custody records or legacy copies is minimal compared to the centrality of the issue.

20. Moreover, Plaintiff's certification under Rule 65(b)(1)(A)–(B) explains why notice to Defendants would be futile: Defendants have already demonstrated their willingness to manipulate records under color of "privacy" to suppress potentially exculpatory information. That conduct makes it impossible to rely on their voluntary preservation. Limited expedited discovery is therefore not only proportional but essential to prevent further spoliation.

21. These are not minor clerical errors. They are fundamental, structural impossibilities that demonstrate the official record has been compromised. This factual chaos is the direct result of an attempt to overwrite history, erase CDR Bernhard's role, and make the pursuit of justice almost unattainable. This ongoing alteration of federal records constitutes spoliation of evidence and justifies immediate judicial intervention.

22. This ongoing alteration of federal records not only obstructs Plaintiff's APA and Privacy Act claims, it directly threatens the availability of mandamus relief. Mandamus lies only where no other adequate remedy exists. If the evidentiary record itself is falsified, the very foundation for mandamus jurisdiction collapses. Immediate judicial preservation is therefore indispensable to maintain the Court's ability to exercise its mandamus power if warranted.

23. This is spoliation of evidence in its most direct and sinister form.

24. In addition to the above evidence of spoliation, Plaintiff made multiple well-documented attempts to resolve this matter administratively without burdening the Court. On August 8, 2025, Plaintiff submitted a Settlement Agreement and Valuation Justification to Defendants (Exhibits 21, 23), both formally acknowledged by BCNR (Exhibits 22). Plaintiff further submitted a recalibrated settlement offer and framework on August 30, 2025 (Exhibits 24–25), acknowledged by OGC on September 3, 2025 (Exhibits 14), along with a proposed NDA and plea for engagement to avoid litigation (Exhibits 15–16). Defendants received and acknowledged these overtures yet refused to respond. This unbroken trail of ignored settlement opportunities is explicit proof that Plaintiff made best efforts to avoid litigation and negotiate in good faith, while Defendants chose obstruction and silence.

## III. COMPLIANCE WITH RULE 65(b)(1)

Pursuant to Federal Rule of Civil Procedure 65(b)(1)(A)–(B), Plaintiff certifies as follows:

25. **Immediate and Irreparable Injury** – Plaintiff faces ongoing irreparable injury in the form of systemic obstruction, denial of benefits, continuing concealment of service records, and the compounding accrual of damages. Delay in relief will perpetuate the very injustice that Defendants have sustained for over three decades.

26. **Efforts to Provide Notice** – Plaintiff has made repeated efforts to engage Defendants in good faith prior to initiating this action, including but not limited to formal settlement frameworks (Exhibits 21 and 23–25) and a plea for engagement to avoid litigation (Exhibit 16). Despite these efforts, Defendants declined to negotiate or even substantively respond. Defendants' own systems confirmed acknowledgment of receipt (Exhibits 14 and 22). In light of this deliberate avoidance, further notice would be futile and would only serve to exacerbate the irreparable harm.

Accordingly, the requirements of Rule 65(b)(1)(A)–(B) are satisfied, and ex parte relief is both procedurally proper and substantively warranted.

## IV. LEGAL STANDARD:

IRREPARABLE HARM FROM ONGOING CRIMINAL CONDUCT

27. This pattern of obstruction is further evidenced by Defendants' response to Plaintiff's good-faith efforts to avoid litigation. On August 30, 2025, Plaintiff provided Defendants with a

detailed, precedent-contained settlement framework designed to correct his record and provide appropriate relief without costly litigation or the need for judicial precedent. This offer was administratively acknowledged by Defendants on September 3, 2025. Their response has been a resounding silence, coinciding with the ongoing spoliation detailed herein. Their refusal to engage with a reasonable administrative solution compounds the evidence of bad faith and strategic obstruction, demonstrating that only this Court's intervention can halt the manipulation of the factual record upon which any judgment— whether judicial or administrative—must depend.

28. The standard for a TRO is likelihood of success on the merits, irreparable harm, a balance of equities in the plaintiff's favor, and that the injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

29. **Irreparable Harm is Met:** The ongoing destruction and alteration of evidence constitutes the quintessential irreparable harm. "The loss of evidence that would have been relevant to proving a claim is, by its nature, irreparable." *Malibu Media, LLC v. Harrison*, 2014 WL 6474065, at *3 (S.D. Ind. Nov. 19, 2014). Here, the harm is not merely loss, but active falsification, which corrupts the judicial process itself.

30. The Defendants' behavior underscores the urgency of judicial intervention. Were this case unfounded, the Navy would have denied the allegations outright. Were it only costly, it would have offered a token settlement. Instead, Defendants do neither, remaining silent while records continue to shift beneath scrutiny. Such avoidance is not neutral; it is confirmation that the underlying exposure is real and grave. Only this Court's intervention can halt further spoliation and ensure that the truth is preserved.

31. **Likelihood of Success is Overwhelming:** Plaintiff need not win his entire case today; he must show a likelihood of success on his claim that Defendants are violating the Administrative Procedure Act and the Privacy Act by relying on falsified records. The "Bernhard/Cochran" discrepancy is prima facie evidence of this. Furthermore, the alleged conduct violates federal criminal statute 18 U.S.C. § 1519, which prescribes penalties for anyone who "knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter" within federal jurisdiction. The ongoing spoliation constitutes a direct attack on this Court's mandamus jurisdiction.

32. **Balance of Equities and Public Interest:** The public interest in preserving the integrity of federal records and the judicial process is absolute. *See, e.g., United States v. Rosner*, 516 F.2d 269, 280 (2d Cir. 1975) ("The public has a right to expect that its courts will not suffer their authority and processes to be frustrated by the conduct of litigants."). The Defendants' interest in being free from a minimal preservation order is negligible compared to the public's interest in preventing the obstruction of justice.

---

## V. REQUESTED RELIEF

Plaintiff respectfully requests that the Court immediately issue an Order:

33. **TRO Against Spoliation:** Enjoining Defendants, their agents, and employees from altering, deleting, destroying, or otherwise disposing of—or allowing the routine

destruction of—any record, document, or tangible object that could be potentially relevant to this litigation. This specifically includes, but is not limited to:

    a. All electronic and paper personnel files for Plaintiff Osei Harper and CDR D.L. Bernhard;

    b. All NJP, TPU, and disciplinary logs from NAS Miramar and TPU San Diego from 1991-1993;

    c. All NCIS investigative files, indexes, or logs referencing Plaintiff or CDR Bernhard;

    d. All FOIA request logs, processing notes, and internal communications regarding Plaintiff's FOIA requests;

    e. All system metadata, audit logs, access histories, backup tapes, and revision histories for the above.

34. **Preservation Certification:** Requiring Defendants to, within seven (7) calendar days of this Order, file a certification with the Court and serve a copy on the Plaintiff, under penalty of perjury, identifying all custodians of the relevant records and detailing the specific steps taken to suspend routine destruction schedules and preserve said records in their current state.

35. **Expedited Briefing:** Setting an expedited briefing schedule for a preliminary injunction hearing to address the scope of spoliation and appropriate sanctions, and limited expedited discovery into the timing and method of the redactions described above.

---

## VI. CONCLUSION

36. This request is not made lightly; however, the issue at stake highlights the profound and unfortunate irony that Plaintiff must move this Court to compel Defendants to preserve evidence central to the Court's own truth-seeking function. The need for a federal court to order a federal agency not to falsify or destroy its own files is itself an absurdity—yet that absurdity underscores the gravity of the present emergency. Without immediate intervention, the Court cannot rely on the integrity of the record before it, and justice itself becomes hostage to spoliation.

37. Depending on the extent of the damage to records, the presumption of regularity may be terminally lost. That collapse would not be confined to this action alone; it would reverberate across lower federal and state courts that rely on the presumption of record integrity. Ultimately, it could undermine or even eliminate the very doctrine of qualified immunity, which rests on the assumption of lawful and good-faith conduct by government officials.

38. The requested relief imposes no meaningful burden on Defendants: it merely requires them to do what any litigant should—preserve the integrity of evidence. By contrast, the cost of inaction is catastrophic, risking the permanent loss of records and the collapse of the presumption of regularity upon which this Court, and all courts, depend.

39. Without intervention, Defendants' spoliation will frustrate not only Plaintiff's claims but the Court's own jurisdictional authority, including its capacity to issue mandamus should no other remedy prove adequate. The TRO thus serves not merely Plaintiff's interest but the Court's institutional duty to safeguard its writ power.

40. The Court is presented with direct evidence of an ongoing effort to falsify the federal record. This is not a matter of historical dispute but of present-tense misconduct that strikes at the

heart of the Court's truth-seeking function. Plaintiff respectfully urges the Court to exercise

its inherent authority to protect the integrity of these proceedings and issue the requested

Temporary Restraining Order without delay.

---

## VII. SIGNATURE

RESPECTFULLY SUBMITTED.

/s/ Osei Harper

Osei Harper  Digitally signed by Osei Harper
Date: 2025.09.30 13:16:58
-04'00'

---

Osei Harper

Plaintiff, pro se

613 E. 9th Ave

Havana, FL 32333

347.804.1232

September 30, 2025

# EXHIBIT J

## Notice of Procedural Delay (Signed, 10/08/2025)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit J

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se | )     Case No.   25-CV-03345 |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| | ) |
| **DEPARTMENT OF THE NAVY; et. al.;** | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S NOTICE OF PROCEDURAL DELAY AND RENEWED REQUEST FOR

## EXPEDITED RULING ON EMERGENCY MOTION

### I. PRESENTED IN GOOD FAITH

1. Plaintiff, **Osei Harper**, respectfully brings to the Court's attention the critical and ongoing delay in adjudicating his **Emergency Ex Parte Motion for a Temporary Restraining Order** (Dkt. 5), filed **September 30, 2025**, and live on the docket as of **October 2, 2025**.

2. The motion seeks urgent preservative relief to prevent irreparable harm to federal records and evidence central to this case.

3. As of the close of business on **October 8, 2025**, **five full business days** have passed without a ruling, a scheduling order, or the assignment of a District Judge to this case.

4. This delay directly and irreparably frustrates the core purpose of ex parte emergency relief. The harm alleged—**ongoing spoliation, falsification, and obfuscation of federal**

**records**—is not speculative; it is a present and continuous injury. Each day of judicial inaction compounds the irreparable prejudice, materially increases the risk of evidence being destroyed or altered, and threatens to render the requested preservative relief moot.

5. Accordingly, Plaintiff respectfully:

    a. **RENEWS** the urgent request for immediate judicial action on the Emergency TRO Motion (Dkt. 5);

    b. **NOTIFIES** the Court that the continued absence of a ruling constitutes ongoing and accumulating procedural prejudice; and

    c. **REQUESTS** that the Court, in its discretion, issue an order to show cause or directly rule on the TRO forthwith to preserve the integrity of the judicial record and prevent further irreparable harm.

6. **Reservation of Rights.** Plaintiff expressly reserves all rights to seek further relief—including but not limited to emergency appellate relief, mandamus, or other extraordinary remedies—should this emergency remain unaddressed. The prejudice is **ongoing, irreparable, and now formally preserved in the record**.

Respectfully submitted this **8th day of October, 2025.**

---

## II. SIGNATURE

RESPECTFULLY SUBMITTED,

/s/ Osei Harper

**Osei Harper**

Digitally signed by
Osei Harper
Date: 2025.10.08
17:57:05 -04'00'

Osei Harper

Plaintiff, pro se

613 E. 9th Ave

Havana, FL 32333

347.804.1232

October 08, 2025

# EXHIBIT K1

## Plaintiff's Affidavit – Addendum 1 (Signed)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit K1

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se<br><br>v.<br><br>**DEPARTMENT OF THE NAVY; et. al.;**<br>Defendants | Case No. 25-CV-03345 |

## PLAINTIFF'S AFFIDAVIT ADDENDUM

**For the Preservation of Procedural Integrity and Transparency**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. This sworn Affidavit Addendum is submitted solely to preserve the procedural integrity of the record and to ensure that contemporaneous documentation exists regarding the Court's ongoing non-action on Plaintiff's pending motions filed on September 19th, September 30th, October 8th, 9th, and 13th of 2025.

2. To date, no order, scheduling directive, or acknowledgment of those motions has appeared on the public docket, even after the invocation of the Chief Judge. This sustained absence of adjudicative movement, while administrative in appearance, has prejudicially evolved into a functional denial and materially impugns the evidentiary posture of the case.

3. The continuation of silence without entry or explanation establishes a condition in which harm rushes downstream, but accountability cannot move upstream. This pattern—if left unrecorded—risks creating a false appearance of procedural regularity inconsistent with the factual reality of inaction.

4. By entering this Addendum, Plaintiff seeks only to maintain transparency within the record as options are limited, and will keep the case alive until it can be heard. No new relief is requested; rather, this filing serves as a contemporaneous log confirming the persistence of prejudicial delay, ensuring that the historical record remains accurate and reviewable.

5. All prior statements and exhibits remain true and correct to the best of Plaintiff's knowledge and belief. This Addendum is made under penalty of perjury pursuant to 28 U.S.C. § 1746.

Respectfully submitted this 19th day of October, 2025.

---

**SIGNATURE**

Respectfully submitted,

/s/ Osei Harper          Osei Harper     Digitally signed by Osei Harper
                                          Date: 2025.10.19 19:10:30
                                          -04'00'

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

EXHIBIT K2

Plaintiff's Affidavit – Addendum 2
(Signed)

Harper v. Navy, No. 25-cv-03345
(D.D.C.), Exhibit K2

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se | )     Case No. 25-CV-03345 |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **DEPARTMENT OF THE NAVY; et. al.;**<br>Defendants | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S AFFIDAVIT ADDENDUM #2

**For the Preservation of Procedural Integrity and Transparency**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. This sworn Affidavit Addendum is submitted to preserve the procedural integrity of the record and to ensure that contemporaneous documentation exists regarding the Court's continued non-action on Plaintiff's pending motions filed on September 19, September 30, October 8, October 9, and October 13, 2025.

2. To date, no order, scheduling directive, or acknowledgment of those motions has appeared on the public docket, even after direct notice to the Chief Judge. This sustained absence of adjudicative movement, while administrative in appearance, has materially devolved into a constructive denial of judicial process, and materially impugns the evidentiary posture of the case.

3. On **October 13, 2025**, Plaintiff submitted a *Final Notice and Request for Judicial Action* directed to the Chief Judge, noting the prolonged inaction and potential prejudice to emergency relief. No response or acknowledgment was received—automated or otherwise—and no reference was made to any lapse-of-appropriations order or procedural stay.

4. On **October 19, 2025**, six days later, the Clerk's Office transmitted a routine auto-response that, for the first time, invoked **Executive Order No. 25-55 (JEB)**, dated **October 1, 2025**. The same office's earlier communication of **October 8**, post-dating the order's nominal issuance, contained no mention of it. This chronology demonstrates that the order was **not operationally applied or disclosed** to pro se litigants until after the Chief Judge's invocation, revealing a troubling pattern of post-hoc justification seemingly designed to retroactively legitimize procedural neglect.

5. Such retroactive application undermines both transparency and the temporal integrity of the docket, risking a false presumption of procedural regularity inconsistent with the factual record.

6. **Judicial Continuity During Lapse of Appropriations.**

   Under established Administrative Office guidance, Article III judges and essential chambers staff remain in active status during any lapse of appropriations. Accordingly, the Chief Judge was not subject to furlough. Plaintiff's direct motion to chambers on October 13, 2025 therefore should have been receipted and acknowledged notwithstanding any temporary staffing reductions. The subsequent appearance of Executive Order 25-55, dated October 1 but first disclosed October 19, is inconsistent with the expected operational continuity of the Chief Judge's office.

7. **Non-Compliance Even Under the Court's Own Standing Order.**

   Executive Order 25-55, as retroactively produced, does not suspend judicial review of emergency or equitable motions. Temporary restraining orders and applications invoking irreparable harm are expressly exempt from the stay of civil proceedings, as are matters requiring preservation of the status quo. Plaintiff's filings of Sept. 19, Sept. 30, and Oct. 8–13, 2025 include an *Emergency Motion for Temporary Restraining Order* and subsequent notice to the Chief Judge. These are emergency and equitable motions. To date, no order, acknowledgment, or docket activity reflects consideration of those filings. Even if Executive Order 25-55 had been in force on Oct. 1—which the contemporaneous record contradicts—the Court's continuing silence remains inconsistent with the order's own terms and with the non-discretionary duty to adjudicate requests for emergency equitable relief.

8. **Equitable Nature of the Pending IFP Motion.**

   Plaintiff's *in forma pauperis* motion, filed September 19, 2025, constitutes a request for equitable relief under 28 U.S.C. § 1915, not a standard civil pleading subject to discretionary delay. The statute's purpose—preserving access to the courts irrespective of financial condition—requires adjudication as a threshold statutory matter prerequisite to service and further prosecution of the case. The court's duty to rule—whether granting or denying—is non-discretionary. Silence functionally bars Plaintiff from both proceeding and appealing. Even under Executive Order 25-55, equitable motions remain exempt from suspension. Accordingly, the Court's failure to rule on the IFP petition constitutes a constructive denial of access to justice and violates both the spirit and letter of § 1915, and impugns the First and Fifth Amendments.

9. Collectively, these circumstances establish that the Court's inaction cannot be excused by reference to Executive Order 25-55 or any lapse-of-appropriations rationale. The procedural record, as it now stands, reflects a pattern of post-factum rationalization inconsistent with ordinary judicial practice and incompatible with constitutional guarantees of due process and access to the courts.

10. **Procedural Anomaly of Case Assignment.** The Clerk's Office assigned Case No. 25-cv-03345 to this matter, an action which presupposes the administrative initiation of a live case. This assignment occurred *without* the prerequisite judicial ruling on the Plaintiff's pending *In Forma Pauperis* (IFP) application. This indicates that the Clerk's Office processed the filing as procedurally proper and anticipatorily valid. The Court's subsequent judicial inaction on the IFP motion—the gatekeeping prerequisite to that very case number—creates an irreconcilable contradiction within the Court's own operations, demonstrating a fundamental breakdown between its administrative and judicial functions.

11. The Clerk's assignment of Case No. 25-cv-03345 constitutes an administrative determination that my filings were procedurally sufficient to initiate a case. The judicial branch's continued refusal to rule on the threshold IFP motion - the mandatory gateway the Clerk's action presupposed would be resolved - creates an impossible contradiction that functionally denies access to this Court.

Respectfully submitted this 20th day of October, 2025.

---

**SIGNATURE**

Respectfully submitted,

/s/ Osei Harper    **Osei Harper**   Digitally signed by Osei
Harper
Date: 2025.10.20 11:34:50
-04'00'

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT K3

# Plaintiff's Affidavit – Addendum 3 (Signed)

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit K3

# UNITED STATES DISTRICT COURT

for the

District of Columbia

**OSEI HARPER,**
Plaintiff, pro se

v.

**DEPARTMENT OF THE NAVY; et. al.;**
Defendants

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 25-CV-03345

---

### PLAINTIFF'S AFFIDAVIT ADDENDUM #3

---

**For the Preservation of Procedural Integrity and Transparency**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. This Addendum supplements prior filings to document a material inconsistency between the Court's *publicly issued operational guidance* and its *judicial conduct* in this case.

2. On October 19 2025, the Clerk's Office transmitted a revised automated acknowledgment which, for the first time, appended links to two official documents:

    a. *Executive Order No. 25-55 (JEB)*, nominally dated October 1 2025; and

    b. the *Public and Media Advisory Regarding Shutdown – October 17 2025*, signed by Chief Judge James E. Boasberg and Clerk of Court Angela D. Caesar.

3. The October 17 Advisory states in unambiguous terms that,

"**All activities related to the resolution of cases are 'excepted.' During the shutdown, the Court will continue reviewing and processing motions, orders, emergency applications, and other filings; and accepting and docketing new cases. All staff necessary to support these and other excepted activities will be required to work during the shutdown.**" (*DDC Public and Media Advisory Regarding Shutdown, Oct 17 2025, pp. 1*).

4. This explicit assurance of operational continuity directly contradicts the judiciary's later invocation of *Executive Order 25-55 (JEB)*—which was neither referenced in the Clerk's earlier October 8 communication nor reflected in docket activity prior to October 19. The contemporaneous record thus demonstrates that the "lapse of appropriations" rationale was introduced retroactively, after Plaintiff's October 13 filing to the Chief Judge.

5. Because the Advisory confirms that motions, emergency applications, and new filings were *continuing to be reviewed and processed*, the Court's ongoing silence on Plaintiff's equitable and emergency motions—including the pending *in forma pauperis* petition under 28 U.S.C. § 1915 and the Emergency TRO—cannot be reconciled with the Court's own published operating status.

6. The inclusion of both documents in a single automated notice (October 19) demonstrates an internal contradiction between the *judicial administrative order* and the *public operational policy* of the Court. This contradiction substantiates a structural disconnect between the judiciary's administrative arm and its clerical operations.

7. Accordingly, the record now contains direct, documentary evidence that (a) judicial review was never lawfully suspended, and (b) the subsequent invocation of *Executive*

*Order 25-55* functioned as a post-hoc justification for inaction rather than a contemporaneous administrative necessity.

8. Plaintiff files this Addendum to preserve an accurate historical record of this discrepancy and to ensure that the docket itself reflects the divergence between the Court's published declarations and its actual conduct with respect to this case.

Respectfully submitted this 20th day of October, 2025.

---

**SIGNATURE**

Respectfully submitted,

/s/ Osei Harper

Osei Harper

Digitally signed by Osei Harper
Date: 2025.10.20
12:13:21 -04'00'

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT K4

## Plaintiff's Affidavit – Addendum 4 (Signed)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit K4

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se | Case No. 25-CV-03345 |
| v. | |
| **DEPARTMENT OF THE NAVY; et al.;**<br>Defendants | |

## PLAINTIFF'S AFFIDAVIT ADDENDUM #4

**For the Preservation of Procedural Integrity and Transparency**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. **Acknowledgment of Administrative Integrity**—The Clerk's Office remains the sole bastion of consistency in this prolonged exercise of patience. Each submission has been received, logged, and confirmed with accuracy—a quiet professionalism that honors the institution's intended purpose. Their conduct sustains the thread of diligence and respect that still connects this process to the rule of law.

2. **Chronology of Judicial Inaction**—In contrast, the judiciary's handling of this case has descended into silent inaction so profound it has become its own statement. Despite strict procedural compliance and repeated, properly filed emergency requests for relief, **no adjudication, acknowledgment, or assignment of action has occurred as of October 24, 2025.** From the initial filing on **September 19, 2025**, thirty-nine days will have

elapsed by **October 27, 2025**—nearly six weeks without acknowledgment of a complaint, let alone the motions marked *emergency* and *expedited*. This is also now exceeding the published estimation of four to six weeks for assigning a permanent justice to this case.

3. The Court's refusal to act has become an action in itself—an abdication masquerading as discretion. Motions once urgent are now **moot by neglect**, casualties of judicial paralysis. In the theater of justice, this silence is not neutral; it is a verdict rendered in shadows; a pocket verdict that betrays the tenets of these hallowed halls.

4. **Consequences of Judicial Inaction**—The Court's decision *not to decide* has prejudiced adjudication beyond repair. It has erased the temporal value of emergency relief and extinguished any remaining hope for a fair or timely application of law. This dereliction has deprived the Plaintiff of both **procedural** and **substantive due process** under the **Fifth Amendment**, and with it, the fundamental promise that justice delayed will not become justice denied.

5. **Denial of Redress and Appellate Access**—Evidence grows cold or purged in routine processes, witnesses fade, and the record decays—all while the Court stands motionless before the clock it was meant to govern. This indecision also bars Appellate intervention as there is substantively no decision to challenge. This is a dramatic icing out of redress under the **First Amendment**, as the Plaintiff cannot petition under these conditions.

6. **Obstruction of Timely Justice**—By withholding all rulings, the Court has effectively withheld all justice. The resulting deprivation reaches beyond administrative oversight and into constitutional violation, contravening the guarantees of a fair and timely process

reflected in the **Sixth Amendment's** spirit of expeditious adjudication. By denying the Plaintiff a ruling on anything, the Court is effectively denying the Plaintiff everything.

7. **Systemic Implications**—This is no mere backlog, as confirmed by the Court's own publicly posted acknowledgement. It is the quiet corrosion of legitimacy—the moment when an institution, by its own stillness, confesses its dysfunction. When the mechanism of justice refuses to engage, it ceases to be impartial. It becomes an active participant and enabler in the deprivation it was sworn to prevent. A Court that will not hear ceases to be a Court of law; it becomes an echo chamber for lawlessness where faith in the rule of law goes to die.

8. **Request for Recognition and Preservation**—Plaintiff respectfully requests that this Addendum be entered into the record to preserve a contemporaneous account of these procedural irregularities and their cumulative harm. This statement is made in good faith and supported by self-authenticating documentary evidence—submission logs, clerk confirmations, and docket records—each bearing witness to a chronology the Court itself has seemingly refused to acknowledge.

9. All prior statements and exhibits remain true and correct to the best of Plaintiff's knowledge and belief. This Addendum is made under penalty of perjury pursuant to 28 U.S.C. § 1746.

Respectfully submitted this 24th day of October, 2025.

---

**SIGNATURE**

Respectfully submitted,

/s/ Osei Harper      Osei Harper    Digitally signed by
                                   Osei Harper
                                   Date: 2025.10.24
                                   17:13:57 -04'00'

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT K5

# Plaintiff's Affidavit – Addendum 5 (Signed)

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit K5

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se | ) Case No. 25-CV-03345 |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| **DEPARTMENT OF THE NAVY; et al.;**<br>Defendants | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S AFFIDAVIT ADDENDUM #5

**For the Preservation of Procedural Integrity and Transparency**

I, **Osei Harper**, being duly sworn, depose and state the following:

1. **Status of Pending Procedural Motions**—As established in Addendum #4 (Dkt. 14), the Application to Proceed Without Prepayment of Fees (Dkt. 2, §1915 motion), filed on September 19, 2025, remains non-adjudicated by the date of the receipt of this Addendum, on November 3, 2025. This motion serves as the gateway to all further proceedings.

2. **The Jurisdictional Paradox**—The continued non-adjudication of the §1915 motion creates a self-insulating procedural paradox that effectively immunizes the current administrative delay from external review.

   a. **Absence of Appealable Order**: In the absence of any order granting or denying the §1915 motion, no "final decision" has been entered by this Court as defined by 28 U.S.C. §1291.

    b. **Bar to Appellate Review**: Pursuant to the Federal Rules of Appellate Procedure, the lack of a final, appealable order renders the administrative delay—and its resulting denial of constitutional due process (documented in Addendum #4)—non-reviewable by the Circuit Court.

3. **Conclusion on Administrative Remedy**—Due to the absence of a final order, the procedural impediment to the case's progression and the delay in access to justice are entirely contained within the administrative functions of this Court. The system's non-action has created a condition where the sole locus of remedy for the procedural failures resides exclusively with the District Court.

4. This filing is a statement of procedural fact, documenting that the Court's inaction has created its own unreviewable, self-contained constraint on the Plaintiff's ability to petition for redress.

5. **Threshold of Indefensibility**—The circumstances described herein may not yet rise to a definitive act of willful deprivation; however, they bear every observable marker of such conduct. The statutes cited below illuminate the boundaries of lawful judicial administration. If the present pattern is merely a coincidence, the Court retains full opportunity to correct any misinterpretation through prompt adjudication. If not, the record will speak for itself. *In this mirror held up by the record, the Court alone may decide whether it beholds a reflection of diligence or of disregard.*

6. **Supporting Statutory Context**—The sustained inaction documented herein implicates several statutory and ethical duties, including the court's obligations under 28 U.S.C. § 1915, its inherent authority under § 1651, and its ministerial duty under § 1361. These

provisions, when read alongside 28 U.S.C. §§ 1331 and 1343, the Fifth Amendment's due-process guarantee, and Canon 3(A)(5) of the Code of Conduct for U.S. Judges, collectively establish that prolonged non-adjudication of a properly filed motion constitutes a breach of both statutory mandate and ethical expectation.

7. **Deprivation of Rights Under Color Of Law**—The extreme nature of the Court's decision to not exercise its statutory duty in the Plaintiff's case comes dangerously close to breaching TITLE 18, U.S.C., §242, which states that *"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, ... shall be fined under this title."*

8. **Evidentiary Record Gap – CM/ECF Notification Silence Window (September 24 – Present)**

   Plaintiff further notes that, since the Court's electronic issuance of the Notice of Electronic Filing for Document #3 (Motion for CM/ECF Password) on September 23, 2025, no subsequent filings have generated an automated CM/ECF acknowledgment or NEF transmission. All later submissions, including Addenda Nos. 1 through 4 and the present Addendum No. 5, have been transmitted, logged, and subsequently reflected on PACER only after extended administrative delay, without any contemporaneous electronic service confirmation.

9. This pattern constitutes a deviation from **Local Civil Rule 5.4(g)(1)**, which requires that all filings "be entered into the CM/ECF system and notice of filing transmitted by electronic means to all registered users," and from **Federal Rule of Civil Procedure**

**5(b)(2)(E)**, under which electronic service is deemed complete upon transmission of the NEF. The absence of these notices has deprived the Plaintiff of the procedural protections afforded to all other litigants and has obscured the timing, classification, and acknowledgment of each submission, creating a material prejudice to Plaintiff's ability to monitor and verify docket activity.

10. **The foregoing record** demonstrates that procedural irregularities have occurred in the handling of Plaintiff's filings and further underscores the need for preservation and administrative clarification to enable potential corrective entries *nunc pro tunc* to their original transmission dates. **This statement is offered solely to preserve the procedural record within this Court.**

11. **Preservation of the Record**—Plaintiff respectfully requests that this Addendum be entered into the public record to provide a formal documentation of these jurisdictional facts and the resultant lack of external procedural checks.

12. All prior statements and exhibits remain true and correct to the best of Plaintiff's knowledge and belief. This Addendum is made under penalty of perjury pursuant to 28 U.S.C. §1746.

Respectfully submitted this 31st day of October, 2025.

---

## SIGNATURE

Respectfully submitted,

/s/ Osei Harper    Osei Harper    Digitally signed by Osei Harper
Date: 2025.10.31 18:57:50 -04'00'

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT K6

## Plaintiff's Affidavit – Addendum 6 (Signed)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit K6

# UNITED STATES DISTRICT COURT

for the

District of Columbia

**OSEI HARPER,**
Plaintiff, pro se

v.

**DEPARTMENT OF THE NAVY; et al.;**
Defendants

Case No. 25-CV-03345

## PLAINTIFF'S AFFIDAVIT ADDENDUM #6

**For the Preservation and Certification of Willful Conduct**

I, **Osei Harper**, being duly sworn, depose and state the following:

1.  **Continuity of Judicial Capacity** — Article III, § 1 of the Constitution guarantees the uninterrupted compensation and service of federal judges, insulating them from administrative furlough. The Administrative Office of the United States Courts confirmed that during appropriations lapses, **Article III judges continue their duties**: magistrate judges and essential court operations remain active.

2.  Accordingly, this Court's Chief Judge and assigned duty judges retained full judicial authority throughout the relevant period.

3. **Prolonged Non-Assignment of Judicial Officer** — Since the filing of this action on **September 19, 2025**, no district or magistrate judge has been assigned. As of the expected entry date of this addendum, fifty-two (52) calendar days, eight (8) weeks have now elapsed — an interval that **exceeds all known administrative norms** for initial case designation.

4. PACER and the docket header both show the same anomaly: *a case number without a judge*. This is not a clerical delay; it is an **affirmative condition of non-assignment** that could only result from a deliberate choice within the judicial administration. [1]

---

5. **Collapse of the Administrative–Judicial Divide** — The Clerk's Office discharged its ministerial duties by docketing filings, assigning a case number, and receiving subsequent addenda. Yet no judicial officer has exercised oversight, ruled on the Application to Proceed In Forma Pauperis (§ 1915) motion, or acknowledged the pending emergency request.

6. **Formal compliance, but substantive denial.** The administrative apparatus has functioned; the judicial function has **vanished**. Where an active court permits filings but withholds adjudication, the distinction between neglect and intent collapses.

---

[1] As reflected in PACER, Case No. 25-CV-03345, which remains listed without a presiding judicial officer.

7. **Failure of the Duty-Judge Safeguard** — The Court's own advisory of October 17, 2025 confirmed that **the duty-judge system remained operational** throughout the government shutdown.

8. Plaintiff's Application to Proceed In Forma Pauperis (§ 1915), filed September 19, and Emergency Motion for Temporary Restraining Order, filed September 30, fall squarely within that framework. Fifty-two (52) days later, no duty judge has acted, acknowledged, or referred the matter.

9. This cannot be reconciled with standard rotation protocols. Whether through systematic exclusion, selective omission, or conscious disregard, the inaction exhibits **volition**, not inadvertence. The duty judge system exists as a fail-safe against exactly this scenario; its bypass is therefore a conscious failure of that safeguard. This is in direct contravention of the statutory mandate established in **LCvR 40.5(a)** (default management of unassigned cases to the Chief Judge, case assignment, and related case rules).

10. **Direct Notice to the Chief Judge** — On October 13, 2025, Plaintiff submitted a formal motion directed to Chief Judge Boasberg. As an Article III judge, the Chief Judge was not subject to furlough and, by his own signature on the October 17 public advisory, confirmed his active engagement. Despite actual notice and direct petition, **no acknowledgment or assignment ensued** for more than three weeks and counting thereafter.

11. Silence, in the face of verified notice, becomes **a decision unto itself**. (*See LCvR 40.5(a)*)

12. **Alignment with the Willfulness Standard** — Under established precedent, "willfulness" requires only that an act be performed voluntarily and intentionally with knowledge that it contravenes a legal duty. *See Ratzlaf v. United States*, 510 U.S. 135 (1994). Here, the elements are fully satisfied:

   a. **Under color of law:** The conduct — whether action or omission — occurs by virtue of governmental authority and is made possible only because the wrongdoer is clothed with the authority of law. The failure to assign a judge and adjudicate motions is an exercise (or misuse) of the court's administrative authority.

   b. **Voluntary:** There is no external impediment to the execution of the statutory mandate of assignment and/or ruling, despite generous and exhaustive opportunities to do so.

   c. **Intentional:** Repeated filings, notices, and direct motions gave actual knowledge. All 55 submissions to date (pleadings, motions, affidavits, addenda, certificates, and exhibits) have been properly docketed, formatted, and are procedurally precise. It is an unsupportable assertion to infer non-intentionality or accidental oversight, given the generous number of opportunities to self-correct.

   d. **Result:** Deprivation of access to due process and petition rights.

13. The record therefore establishes conduct **meeting each statutory element of willfulness** as defined by federal law, without alleging motive or malice.

14. **The Mirror Has Answered** — In Addendum #5, this Court was offered a mirror — a chance to discern between administrative delay and constitutional dereliction. By the likely day of entry, November 10, 2025, that reflection has returned its answer. The sustained refusal to assign any judicial officer, during a period of confirmed judicial continuity, **is no longer explainable by necessity or oversight**. It is, by its persistence and precision, **willful conduct** under the plain meaning of that term.

15. **Preservation of the Record**—Plaintiff respectfully requests that this Addendum be entered into the public record to provide a formal documentation of these jurisdictional facts and the resultant lack of constitutional procedural protections.

16. All prior statements and exhibits remain true and correct to the best of Plaintiff's knowledge and belief. This Addendum is made under penalty of perjury pursuant to 28 U.S.C. §1746.

Respectfully submitted this 7th day of November, 2025.

---

**SIGNATURE**

Respectfully submitted,

/s/ Osei Harper    Osei Harper    Digitally signed by Osei Harper
Date: 2025.11.07 23:59:58
-05'00'

---

Osei Harper,

Plaintiff, pro se

347.804.1232

613 E. 9th Ave

Havana, FL 32333

# EXHIBIT L

## Original Complaint (Signed, 09/19/2025)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit L

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se<br><br>v.<br><br>**DEPARTMENT OF THE NAVY;**<br>**BOARD FOR CORRECTION OF NAVAL RECORDS;**<br>**DEPARTMENT OF DEFENSE;**<br>**SECRETARY OF THE NAVY, in his official capacity;**<br>**CDR D.L. BERNHARD, in his individual capacity;**<br>**LCDR STEVEN RIKER, in his individual capacity;**<br>**CDR HAYS, in his individual capacity;**<br>**JOHN DOES 1–5, in their individual capacities;**<br>Defendants. | Case No. _____ |

---

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

---

**TABLE OF CONTENTS**

| Section | Title | Page |
|---------|-------|------|
| I | Parties | 4 |
| II | Jurisdiction and Venue | 6 |
| III | Nature of the Action | 7 |
| IV | Statement of the Facts | 8 |
| V | Impossible Records Mismatch | 11 |
| VI | Forced Litigation | 13 |
| VII | Pyramid of Misconduct | 15 |
| VIII | Injuries | 17 |
| IX | Damages | 18 |
| X | Equitable Tolling and Fraudulent Concealment | 18 |
| XI | Obstruction Established | 19 |
| XII | Causes of Action | 20 |
| XIII | Prayer for Relief | 27 |
| XIV | Demand For Jury Trial | 28 |
| XV | Certification and Closing | 28 |
| XVI | Signature | 29 |

## TABLE OF AUTHORITIES

| Authority | Citation | Page(s) |
|---|---|---|
| *Haines v. Kerner* | 404 U.S. 519 (1972) | 4 |
| *Richmond Newspapers v. Virginia* | 448 U.S. 555 (1980) | 8 |
| *Press-Enterprise Co. v. Superior Court* | 464 U.S. 501 (1984) | 8 |
| *Parker v. Levy* | 417 U.S. 733 (1974) | 16 |
| SECNAVINST 1640.9 | Confinement Regulations | 9 |
| Geneva Convention IV, Art. 26 | Humane treatment | 9 |
| DoDI 1320.04 §4.c | Promotion & medical protections | 10 |
| SECNAVINST 5350.16D §8.g | Anti-discrimination | 10 |
| 18 U.S.C. § 2071 | Federal records | 10 |

This action challenges both the wrongful acts of individual officers and the systemic failures of the Department of the Navy and Department of Defense that allowed those acts to persist and metastasize for over thirty years. Plaintiff brings this Complaint not merely for himself, but for the integrity of federal recordkeeping and the rights of disabled veterans nationwide. As a pro se litigant, Plaintiff respectfully requests liberal construction of pleadings, Haines v. Kerner, 404 U.S. 519 (1972).

---

## I. PARTIES

1. Plaintiff Osei Harper, a U.S. Navy veteran, brings this action pro se. Plaintiff is a disabled veteran, currently homeless, who has suffered continuous harm since his wrongful discharge in 1992.

    a. 613 E. 9th Ave, Havana, FL 32333

2. Defendant Department of the Navy is an agency of the United States responsible for the administration of naval operations, personnel management, and correction of records.

    a. Office of the General Counsel (OGC),

       1000 Navy Pentagon, 5A532,

       Washington, DC 20350-1000

3. Defendant Board for Correction of Naval Records (BCNR) is an administrative body empowered by Congress under 10 U.S.C. §1552 to correct military records when necessary to correct an error or remove an injustice.

    a. 701 South Courthouse Road, Suite 1001

       Arlington, VA 22204-2490

4. Defendant Department of Defense (DoD) oversees military branches and maintains responsibility for ensuring statutory compliance with federal law, military law, veterans' rights, and administrative review.

   a. Office of the General Counsel

      1600 Defense Pentagon

      Washington, DC 20301-1600

5. Defendant Secretary of the Navy, in his official capacity, bears ultimate responsibility for ensuring compliance with federal law, constitutional protections, and correction of systemic injustices.

   a. Office of the Secretary of the Navy

      1000 Navy Pentagon

      Washington, DC 20350-1000

6. Defendant **CDR D.L. Bernhard** was at all relevant times the Executive Officer, and later Commanding Officer, of Fighter Squadron VF-1. Acting under color of federal authority, Bernhard engaged in discriminatory, retaliatory, and unconstitutional acts that directly contributed to Plaintiff's wrongful confinement and discharge.

   a. To be served at the Department of Defense, Pentagon, Washington, DC 20301, or at such other address as may be identified by Defendants or their counsel.

7. Defendant **LCDR Steven Riker** was at all relevant times an officer within Fighter Squadron VF-1. Acting under color of federal authority, Riker participated in retaliatory actions, paperwork manipulation, and discriminatory treatment of Plaintiff.

   a. To be served at the Department of Defense, Pentagon, Washington, DC 20301, or at such other address as may be identified by Defendants or their counsel.

8. Defendant **CDR Hays** was at all relevant times the Commanding Officer of the Transient Personnel Unit (TPU) at Naval Station San Diego. Acting under color of federal authority, Hays knowingly permitted and oversaw Plaintiff's wrongful confinement despite disability status and in violation of Navy regulations.

    a. To be served at the Department of Defense, Pentagon, Washington, DC 20301, or at such other address as may be identified by Defendants or their counsel.

9. Defendants **John Does 1–5** are presently unidentified Navy officials believed to have participated in, authorized, or facilitated the falsification of records, suppression of administrative remedies, or obstruction of FOIA responses. Their identities are uniquely within Defendants' custody and control and discoverable through forensic authentication. Plaintiff reserves the right to amend this Complaint to substitute their true names once identified.

    a. To be served at their last known duty station / Pentagon or at such other address as may be identified by Defendants or their counsel once identified.

---

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 5 U.S.C. §§ 702, 704–706 (APA); 28 U.S.C. § 1361 (mandamus); and 29 U.S.C. § 794a(a)(2) (Rehabilitation Act remedies). In the alternative and as applicable, jurisdiction lies under 28 U.S.C. § 1346(a)(2) (Little Tucker Act) for non-tort monetary relief not exceeding $10,000 related to the correction of military records and back pay.

11. To the extent Plaintiff asserts tort claims, jurisdiction is invoked under 28 U.S.C. § 1346(b)(1) (FTCA) for post-discharge acts not incident to service, subject to 28 U.S.C. §

2675(a) administrative presentment and any equitable tolling based on fraudulent concealment described herein.

12. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) for claims against federal agencies and officers in their official capacities because the agencies reside in this District and a substantial part of the events or omissions relevant to post-discharge administrative review occurred here. Venue for individual-capacity claims is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to those claims includes post-discharge administrative actions and records management directed from or occurring in this District; in the alternative, the Court may exercise pendent venue or sever and transfer if necessary.

13. This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202, 5 U.S.C. § 706, and 28 U.S.C. § 1361.

14. Sovereign immunity is waived under the Administrative Procedure Act, 5 U.S.C. § 702, and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for the claims presented herein.

---

## III. NATURE OF THE ACTION

15. This is not a case of administrative oversight, but of engineered neglect and deception. Plaintiff challenges a continuum of harm spanning more than three decades, compounded by administrative obstruction and falsification of records. This continuum originated in the U.S. Navy and metastasized through three decades of discriminatory exclusion, marginalization, and systemic betrayal.

16. Plaintiff seeks declaratory, injunctive, and monetary relief to correct his record, restore benefits wrongfully denied, obtain redress for damages suffered, and prevent the further misuse of statutory doctrines and falsified records to shield systemic misconduct.

17. This case asks the Court to decide whether the federal record is entitled to a presumption of truth when three contradictory versions exist.

---

## IV. STATEMENT OF THE FACTS

18. This case is a matter of substantial public interest. It does not implicate classified information, operational security, or sensitive national defense matters. It implicates accountability for unlawful acts, the integrity of federal records, and the rights of disabled veterans to fair treatment under the law.

19. Any attempt to seal or obscure these proceedings would compound the very institutional concealment and engineered deception challenged herein. Plaintiff therefore invokes the First Amendment and common law presumption of public access to judicial proceedings as recognized in Richmond Newspapers v. Virginia, 448 U.S. 555 (1980), and Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984). Transparency here is not optional; it is indispensable. When the integrity of official federal records is in question, public confidence requires full visibility.

20. The Plaintiff's journey spans over three decades of institutional evasion. What began as command-level misconduct evolved into a pattern of administrative sabotage, legal manipulation, and systemic obstruction. The facts presented herein are not merely historical—they are ongoing, compounding, and deliberately unresolved.

21. Plaintiff was recruited into the United States Navy under the *Divefarer Program*—a track designed to identify high-achieving enlistees with the academic, physical, and leadership capabilities to pursue specialized warfare ratings and receive accelerated advancement.

22. Plaintiff scored in the 99th percentile on the Armed Services Vocational Aptitude Battery (ASVAB) and was guaranteed consideration for Cryptologic Technician (CT) or Intelligence roles. Under recruiter duress, Plaintiff also listed Parachute Rigger as a fallback specialty.

23. Although Plaintiff met all academic requirements, he did not meet the physical benchmarks required to continue toward BUD/S and was disqualified from the E-4 guarantee associated with that path. However, Plaintiff successfully completed A-School at the top of his class and met all criteria for accelerated advancement to E-3 based on performance, leadership as Section Leader and Cadence Caller, and academic standing.

24. Plaintiff was issued E-3 insignia but was never permitted to wear them. Advancement paperwork was never processed because Plaintiff was immediately reassigned to Temporary Assigned Duty (TAD) with the Seabees (Construction Battalion), where he received a Letter of Commendation from the Base Admiral, followed by reassignment to Shore Patrol.

25. Plaintiff's reassignment to TAD occurred directly after his first meeting with then-Executive Officer LCDR Bernhard, during which Bernhard used a racial slur and made an overt threat against Plaintiff. Plaintiff did not report this incident out of fear and ignorance. Plaintiff believes this event marked the beginning of a campaign of systemic retaliation.

26. Plaintiff was denied access to his top-rated specialties (CT, Intelligence) on the basis that his biological father was a foreign national (Dominican). This decision was discriminatory

and contrary to DoD 5200.2-R (1990) §C3.2.3 and SECNAVINST 5510.30 §4(b), which prohibited automatic disqualification based on parentage.

27. Plaintiff's record prior to 1992 was free of misconduct. His January 31, 1992 Performance Review (3.4/3.6) reflects competent service.

28. Beginning in May 1992, after Bernhard's promotion to Commander, a sudden and uncharacteristic pattern of negative documentation emerged. At the time, Plaintiff had just turned 20, was disabled and on crutches, and was recovering from an attempted suicide.

29. Despite no prior history of misconduct, Plaintiff was confined to punitive barracks (base brig) from May 1992 through his separation in September 1992. Plaintiff's pay was withheld, food was inaccessible due to his disability, and he was denied humane accommodations. This confinement violated SECNAVINST 1640.9, UCMJ Art. 55, BUPERSINST 1640.22F Ch. 3, and Geneva Convention IV, Art. 26.

30. After Plaintiff submitted a Voluntary Statement of Cruel and Unusual Punishment to CDR Hays, he was threatened with an additional charge of "Malingering" if he sought medical treatment again. This intimidation violated UCMJ Art. 115, DoDI 1320.04 §4.c, and SECNAVINST 5350.16D §8.g.

31. These actions reflect a deliberate campaign to force Plaintiff out of the Navy through paperwork manipulation, improper confinement, and command influence. Plaintiff was ultimately discharged without benefits, without housing, and without transition assistance (see Exhibits 26–27, sworn statements corroborating contemporaneous experience).

32. In 2025, during preparation of this appeal, Plaintiff discovered that LT CMDR (later CDR) Bernhard—who initiated the retaliation—has been effectively scrubbed from public Navy records and officer listings. Multiple FOIA requests have been filed for Bernhard's service

record and investigative files. On August 7, 2025, NCIS denied Plaintiff's FOIA request under 5 U.S.C. §552(b)(6) and (b)(7)(C), refusing to confirm or deny the existence of records.

33. Subsequent evidence indicates not only that records were scrubbed, but that *revisionist history* was actively created to sanitize the official record. This is not concealment—it is falsification. Such actions constitute potential federal crimes under 18 U.S.C. §2071 (concealment, removal, or mutilation of federal records) and obstruction of justice statutes.

34. The revisionist record serves a dual purpose: it protects the career trajectory of Commander Bernhard by erasing disqualifying conduct, and it undermines Plaintiff's ability to seek correction or redress by presenting a false official narrative to reviewing bodies.

35. Courts recognize that spoliation of evidence justifies an adverse inference. Here, Defendants' creation of a revisionist history demonstrates deliberate intent to obstruct oversight, contradict Plaintiff's sworn evidence, and foreclose correction.

36. This pattern elevates the misconduct beyond "engineered neglect." It represents *engineered deception*—a coordinated effort to manipulate the historical record, mislead administrative review, and protect institutional reputation at the expense of justice. This deception did not occur in isolation; it is part of a broader pyramid of misconduct.

---

## V. IMPOSSIBLE RECORDS MISMATCH

37. Defendants' evidentiary record is internally irreconcilable. Federal courts recognize a presumption of regularity in official records, but that presumption collapses when the records themselves are contradictory. Here, three versions of the same history exist: (1) the official Navy record presented to BCNR, (2) contemporaneous service records, and (3)

heavily redacted FOIA productions. These versions are mutually exclusive; it is logically impossible for all to be true. At least one set has been falsified or altered. These contradictions cannot plausibly be explained as clerical error—it is evidence of bad faith, obstruction, and revisionist fabrication. These contradictions are not abstract; they directly contradict Plaintiff's sworn account of events in Exhibits 26–27. Judicial review and forensic authentication are thus indispensable prerequisites to any fair adjudication of Plaintiff's claims.

38. Under federal evidentiary doctrine, official records carry a presumption of regularity. That presumption collapses when records are internally irreconcilable. Where three mutually inconsistent versions exist—the contemporaneous record, the official sanitized record, and the redacted FOIA responses—the only plausible inference is falsification or alteration. Judicial review is indispensable to restoring integrity. The integrity of Plaintiff's claims cannot be adjudicated without first resolving which record, if any, reflects the truth. Judicial review and forensic authentication are therefore not discretionary—they are indispensable prerequisites to justice.

39. When a plaintiff faces mutually inconsistent versions of the same history, the Court must first resolve which record—if any—reflects the truth. Without forensic authentication (including metadata, audit trails, and access logs), neither the APA's record-review function nor meaningful judicial review can proceed.

40. Plaintiff requests the Court order Defendants to preserve all potentially relevant ESI and paper records, including system logs, email archives, and FOIA processing notes.

41. The excessive redactions, coupled with outright refusals to confirm or deny the existence of responsive records, have rendered it impossible for Plaintiff to extract a complete and

accurate picture of events. Instead of transparency, Defendants offered opacity. Instead of compliance, they offered concealment.

42. Compounding this obstruction are contradictions within the limited materials produced. Different responses to identical requests contain mutually exclusive statements. Records affirming the existence of certain officers or incidents in one production are contradicted by subsequent denials. Such contradictions cannot be reconciled as clerical error; they represent deliberate inconsistency designed to frustrate oversight and judicial review.

43. Plaintiff further observes that Commander D.L. Cochran, while a highly decorated and widely chronicled[1] officer, has a conspicuous gap in his otherwise well-documented career record during the years 1989–1993 — the precise period at issue here. This irregularity, paired with contemporaneous materials identifying Commander Bernhard, reinforces the conclusion that the Navy's substitution of "Cochran" reflects alteration rather than error.[2]

44. This pattern — statutory delay, disingenuous messaging, blanket redactions, and irreconcilable contradictions — is not administrative inefficiency. It is bad faith. These actions are intended to conceal misconduct, deny Plaintiff access to remedies, and insulate Defendants from accountability.

---

## VI. FORCED LITIGATION

45. The Navy had two separate opportunities to resolve this matter without litigation. On both occasions, Plaintiff presented a settlement framework that was precedent-contained, drawn from analogous wrongful discharge and disability settlement frameworks, and designed to

---

[1] https://www.gaaviationhalloffame.com; https://blackpast.org.; https://www.donnielcochran.com/about

[2] Plaintiff notes that Commander Donnie L. Cochran is consistently portrayed in official and public records as a highly decorated naval aviator, first African-American pilot with the Blue Angels (1985-86), and later first African-American commanding officer / Flight Leader of the Blue Angels in 1994.

minimize institutional exposure. Defendants did not counteroffer, negotiate, or engage in good faith. Instead, they responded only with silence and procedural retreat. These refusals were not logistical; they were strategic, evidencing bad faith and deliberate avoidance.

46. Plaintiff further notes that these settlement efforts were not open-ended or ambiguous. Two distinct settlement windows were extended: first between August 1 and August 30, 2025, and second between August 30 and September 15, 2025. Defendants acknowledged receipt of both frameworks but chose not to respond, negotiate, or counteroffer. Their silence across two successive windows—forty-five days in total—demonstrates not passive neglect but a deliberate decision to force litigation rather than engage in administrative resolution. Plaintiff filed this action the very next day after the expiration of the second window, underscoring that litigation was not a tactic but a last resort, compelled only when Defendants declined to act.

47. Plaintiff filed this action immediately after the expiration of the second settlement window, underscoring that settlement was pursued in good faith with clear deadlines, and litigation became necessary only when Defendants refused to engage. **Rather than respond substantively to the escalation or address the recalibrated framework, Defendants chose silence until nearly three weeks later, at which point they issued only a boilerplate status reply.**

48. On September 17, 2025, nearly three weeks after Plaintiff's second settlement offer, the BCNR replied with a boilerplate "status" response (Exhibit 20). The fact that the reply was issued in response to the settlement correspondence, rather than in isolation, strongly suggests internal deliberation within the Department. Had the matter been treated as routine, the same form letter could have been transmitted on August 31, 2025, or at any time

thereafter. Instead, the Navy withheld response for twenty days—an interval consistent not with ordinary administration but with internal debate, hesitation, and institutional analysis paralysis.

49. Ultimately, the Department appears to have resolved that it could avoid engagement by relying on form language, effectively concluding: *"What can he do to us?"* This conclusion, reflected in both the timing and the content of the September 17, 2025 communication, demonstrates deliberate avoidance and a strategic decision to treat Plaintiff's escalation as inconsequential rather than to engage in any meaningful or timely fashion.

50. Plaintiff was transparent *ab initio* in his efforts to resolve this matter without litigation (Exhibits 26–27 further attest under oath to both factual chronology and Plaintiff's good-faith attempts at resolution). On August 8, 2025, Plaintiff submitted a formal Settlement Offer (Exhibit 21), accompanied by a comprehensive Valuation Justification (Exhibit 23), both acknowledged by BCNR (Exhibit 22). Plaintiff further submitted a recalibrated Settlement Offer and Framework on August 30, 2025 (Exhibits 24–25). Defendants acknowledged receipt through OGC on September 3, 2025 (Exhibit 14). In addition, Plaintiff offered a proposed NDA (Exhibit 15) and a direct plea for engagement to avoid litigation (Exhibit 16). These documents, coupled with read receipts and acknowledgements, prove conclusively that Plaintiff pursued every administrative channel in good faith. Defendants' consistent refusal to respond demonstrates bad faith and left litigation as the only remaining avenue.

---

## VII. THE PYRAMID OF MISCONDUCT

51. At the base of the pyramid lies the original harm: suppression of Plaintiff's earned promotions, wrongful confinement while disabled, denial of medical treatment, and forced administrative discharge at the lowest rank. These actions were taken by individual officers in direct violation of law, regulation, and military ethos.

52. The second tier reflects administrative bad faith. The BCNR, though not the originator of Plaintiff's injury, failed in its statutory duty to correct injustice. Petitions were ignored, delayed, or dismissed without review. FOIA noncompliance and excessive redactions are part of the BCNR/DoN failure to discharge statutory duties. *Silence became complicity. Inaction became institutional endorsement.*

53. The third tier demonstrates institutional manipulation. Legal offices twisted procedure into obstacles. Internal policies were invoked to override statutory rights. Counsel-to-counsel negotiations offered the illusion of resolution, only to be withdrawn. Disingenuous messaging and contradictions show an intentional strategy to weaponize procedure and fabricate plausible deniability. *Retaliation by omission is retaliation nonetheless— its precision lies in plausible deniability.*

54. Among the tools of manipulation was the invocation of the ADA's "military exception." Designed to shield active-duty readiness decisions, Defendants misused it as a blanket immunity for decades of post-service neglect. Plaintiff does not challenge readiness judgments—he challenges administrative abuse. *To permit such misuse would convert a narrow doctrine into permanent impunity.*

55. Plaintiff acknowledges the ADA's military exception under Title I. However, this case does not seek redress for active-duty employment decisions alone. It seeks accountability for a continuum of harm perpetuated post-discharge. The ADA's protections are not frozen at

discharge. When disabled veterans are denied access to correction, redress, or administrative review, those denials fall under Title II.

56. This case presents an unprecedented jurisdictional gap: a disabled veteran, wrongfully discharged, then stonewalled for thirty-three years. The harm is not historical—it is ongoing. The ADA must apply not to the moment of discharge, but to the institutional refusal to remedy it.

57. Defendants may attempt to invoke Parker v. Levy, 417 U.S. 733 (1974), to argue that military decisions are insulated from judicial review. That precedent is inapposite. Parker concerned claims arising directly from active-duty service decisions. The discrimination challenged here is not about readiness or command discretion—it lies in the ongoing, post-service denial of access to administrative remedies and correctional processes. When a veteran is excluded from post-discharge statutory rights on the basis of disability, that exclusion falls squarely within the jurisdiction of this Court and the protections of Title II of the ADA.

58. At the apex of the pyramid stands the Office of the Secretary of the Navy, where ultimate responsibility resides. Leadership's failure was not passive—it was permissive. By tolerating misconduct, they codified it.

59. This is not a pyramid of error—it is evidence of institutional betrayal.

---

## VIII. INJURIES

60. As a direct result of the events alleged in this complaint, Plaintiff sustained both physical and psychological injuries. During the Plaintiff's naval service, he was wrongfully confined while disabled, denied appropriate medical treatment, and subjected to conditions that

exacerbated service-connected illnesses. These injuries have persisted for more than three decades and include chronic pain, untreated psychiatric harm, and deterioration of health, now under evaluation for possible service-related lymphoma. (Exhibits 26-27)

61. Because of the defendants' ongoing obstruction, delays, and failure to correct the record, Plaintiff has also suffered severe emotional distress, professional blacklisting, homelessness, and the loss of access to earned veteran resources, benefits, and medical care. The uncorrected discharge has imposed not only financial hardship, but financial suppression — cutting off the predictable career progression, stability, and access to resources that would have naturally followed a properly recorded service history. The Plaintiff's conditions remain untreated or under-treated due to this deprivation and its cascading effects.

62. Plaintiff remains under active medical evaluation for possible service-related lymphoma, which has compounded the urgency of correction and access to medical benefits.

---

## IX. DAMAGES

63. Plaintiff seeks monetary relief in amounts to be proven at trial, including back pay, compensatory damages for discrimination and record falsification, and any equitable relief the Court deems just.

64. The nature of these damages are detailed in Plaintiff's sworn statement and addendum (Exhibits 26–27), which establish a factual basis for calculation.

---

## X. EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

65. Any statute of limitations is equitably tolled by Defendants' active concealment and revision of records. Defendants possessed superior knowledge, engaged in affirmative acts of concealment (including contradictory records and suppression of officer identities), and thereby prevented Plaintiff from discovering the true basis of his claims despite due diligence. The limitations period, therefore, runs from the date of discovery of the falsification and mismatch.

## XI. OBSTRUCTION ESTABLISHED

66. Defendants' obstruction is not a matter of inference but of record. The evidence demonstrates three distinct and incontrovertible forms:

67. Irreconcilable Records – The contemporaneous service records, the official personnel file, and the FOIA productions cannot be reconciled. They contradict one another in material respects, making it impossible that all three are accurate. This evidences deliberate omission, alteration, or suppression.

68. Acknowledged Receipt, Followed by Silence – Plaintiff repeatedly transmitted settlement frameworks and pleas for engagement, which Defendants acknowledged via read receipts. Yet no substantive reply or negotiation followed. This pattern reflects not administrative backlog but intentional avoidance.

69. Strategic Delay in Responses – Defendants' choice to withhold even boilerplate "status" replies until after settlement windows had closed demonstrates obstruction by timing. A routine form letter could have been sent immediately; instead, it was delayed for weeks, negating the possibility of mere negligence.

70. Taken together, these actions amount to proven obstruction, not a speculative claim. This conduct directly supports equitable tolling, underscores Defendants' bad faith under the

APA and Privacy Act, and establishes that Plaintiff was forced into litigation by deliberate concealment and delay.

---

## XII. CAUSES OF ACTION

**COUNT I – Administrative Procedure Act (5 U.S.C. §706)**

- Defendants, through the BCNR and other administrative offices, acted in a manner that was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law by failing to correct Plaintiff's records, denying him fair access to administrative review, and refusing to engage in good faith consideration of his petitions.

- Plaintiff seeks judicial review of these agency actions and omissions under 5 U.S.C. §706(2), and injunctive relief ordering correction of records and compliance with statutory duties.

**COUNT II – Federal Tort Claims Act (28 U.S.C. §1346(b)(1))**

- Defendants, acting within the scope of federal employment, committed acts of negligence and wrongful conduct, including: wrongful confinement while disabled, denial of medical treatment, suppression of earned promotions, and forced discharge at the lowest rank.

- These acts caused foreseeable harm and violated statutory and regulatory duties.

- Plaintiff limits FTCA claims to post-discharge acts not incident to service, including records maintenance, denial of access to statutory remedies, and negligent handling of administrative petitions. To the extent required, Plaintiff alleges equitable tolling due to Defendants' fraudulent concealment and invokes relation back of presentment upon discovery of falsification.

**COUNT III – Violation of the Americans with Disabilities Act (Title II)**

- Defendants, acting through public entities including BCNR and Navy legal offices, denied Plaintiff meaningful access to correctional processes, medical redress, and administrative review on the basis of his disability. These denials constitute discrimination under Title II of the ADA.

- Plaintiff proceeds under Title II for **post-discharge program access** to records correction and benefits—not active-duty employment decisions—thus the "military exception" to Title I does not apply.

**COUNT IV – Rehabilitation Act § 504 (29 U.S.C. § 794)**

- Defendants, including the Department of the Navy, DoD, and BCNR—each a "program or activity" under § 504—intentionally denied Plaintiff, a qualified individual with a disability, meaningful access to post-discharge correction processes and benefits by reason of disability.

- The Rehabilitation Act waives sovereign immunity for such claims and incorporates ADA Title II standards. Defendants' post-discharge denials, delays, and obstructions constitute discrimination and denial of program access.

- Plaintiff seeks declaratory and injunctive relief, reasonable modifications to ensure access to records correction, and compensatory damages for intentional discrimination.

**COUNT V – Privacy Act (5 U.S.C. § 552a)**

- Defendants maintained records concerning Plaintiff that are **inaccurate, incomplete, and misleading,** and used those records to make determinations adverse to Plaintiff, in violation of § 552a(e)(5).

- Defendants willfully and intentionally failed to maintain accurate records and refused to amend them upon request, causing actual damages, § 552a(g)(1)(C)–(D).

- Plaintiff seeks amendment/correction orders, declaratory and injunctive relief, and damages as provided by § 552a(g).

**COUNT VI – Freedom of Information Act (5 U.S.C. § 552)**

1. Plaintiff submitted multiple FOIA requests to agency Defendants—including the Department of the Navy, the Department of Defense, NCIS, and their components— seeking records material to his service, confinement, and discharge.

2. FOIA requires agencies to determine whether to comply within 20 business days, with narrow extensions not to exceed 10 additional days. 5 U.S.C. § 552(a)(6)(A)–(B).

3. Defendants repeatedly violated FOIA by:

   a. Failing to make timely determinations within the statutory period;

   b. Producing documents months late;

   c. Withholding responsive materials under inapplicable or overbroad exemptions;

   d. Redacting more than 90% of responsive pages without individualized justification;

   e. Failing to release all "reasonably segregable" non-exempt portions as required by 5 U.S.C. § 552(b)

      and

   f. Issuing contradictory responses to identical requests, thereby concealing the existence of responsive records.

4. These violations are not isolated errors but constitute a pattern or practice of unlawful withholding and excessive redaction designed to obstruct Plaintiff's access to non-exempt records.

5. Given Defendants' conduct, Plaintiff requests in camera review of withheld materials under 5 U.S.C. § 552(a)(4)(B).

6. FOIA authorizes this Court to enjoin the withholding of records and order the production of improperly withheld records, 5 U.S.C. § 552(a)(4)(B), and to award attorney's fees and costs to a prevailing complainant, § 552(a)(4)(E).

7. Plaintiff seeks declaratory and injunctive relief, including:

    a. **Declaratory judgment** that Defendants violated FOIA by failing to comply with statutory deadlines, improperly withholding or redacting responsive records, and failing to release reasonably segregable portions;

    b. **Injunctive relief** requiring Defendants to conduct new, good-faith searches for responsive records and to produce them in unredacted form except where exemptions are narrowly tailored and specifically justified;

    c. **An order** enjoining Defendants from continuing the pattern or practice of excessive redaction and untimely, contradictory responses, with compliance monitoring as the Court deems appropriate;

    d. *In camera* review of withheld materials to ensure lawful compliance, as appropriate; and

    e. Costs and reasonable attorney's fees pursuant to 5 U.S.C. § 552(a)(4)(E).

**COUNT VII – Constitutional Violations (Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971))**

- Plaintiff pleads in the alternative and recognizes the Supreme Court's narrowing of Bivens; these claims fall within established Fifth-Amendment contexts (e.g., Davis v. Passman, 442 U.S. 228; Carlson v. Green, 446 U.S. 14).

- Plaintiff pleads this Bivens claim in the alternative, subject to the Court's discretion to sever or dismiss if other statutory remedies are deemed adequate. This claim is asserted

solely to preserve Plaintiff's rights in the event that no statutory remedy is found to address the constitutional violations alleged.

- Defendants **CDR D.L. Bernhard (VF-1 Executive Officer, later Commanding Officer), LCDR Steven Riker (VF-1 officer), CDR Hays (Commanding Officer, TPU Naval Station San Diego)**, and **John Does 1–5, presently unidentified Navy officials**, acting under color of federal authority, violated Plaintiff's constitutional rights under the Fifth Fifth Amendment — and, insofar as access to choice of counsel and fair process were denied, the Sixth Amendment — by engaging in targeted retaliation, discriminatory exclusion, improper confinement, and procedural manipulation..

- Defendant Bernhard initiated and oversaw the retaliatory campaign following Plaintiff's report of cruel and unusual punishment, including threats of "malingering" charges to suppress medical treatment.

- Defendant Riker participated in and facilitated adverse personnel actions and paperwork manipulation that suppressed Plaintiff's earned promotion and contributed to the pattern of targeted retaliation.

- Defendant Hays, as CO of TPU San Diego, knowingly permitted wrongful confinement of a disabled sailor in violation of Navy regulations and federal law, withholding accommodations and resources in violation of Plaintiff's constitutional rights.

- John Does 1–5 are federal officers whose identities are presently unknown to Plaintiff but who are believed to have participated in or authorized the falsification of records, suppression of administrative remedies, or obstruction of FOIA responses. Their names and roles will be ascertained during discovery.

- These actions were not discretionary mistakes—they were deliberate abuses of authority. They were taken under color of federal law and caused direct, ongoing harm to Plaintiff.

- Plaintiff seeks compensatory damages and declaratory relief against these Defendants in their individual capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

- Plaintiff pleads this constitutional claim in the alternative, subject to the Court's discretion to sever or dismiss if other statutory remedies are deemed sufficient. This ensures judicial economy without waiving Plaintiff's right to redress should alternative remedies be found inadequate.

**COUNT VIII – Fraudulent Alteration of Federal Records (Declaratory & Injunctive Relief)**

1) Plaintiff raises this claim not as an independent tort, but as factual support for relief under the APA, Privacy Act, and Rehabilitation Act, all of which require accurate records to function. Declaratory and injunctive relief are therefore appropriate.

2) Defendants, acting under color of federal authority, deliberately falsified, altered, or replaced official Navy records, including those related to Plaintiff's service, confinement, and separation.

3) While such falsification may constitute criminal conduct under 18 U.S.C. §2071, Plaintiff does not seek criminal sanctions in this civil proceeding. Rather, Plaintiff raises these facts because they directly obstruct his rights under the Administrative Procedure Act, the Federal Tort Claims Act, and the Americans with Disabilities Act, all of which depend upon the integrity of official records.

4) The evidentiary record is not merely incomplete: it is internally irreconcilable. The *official record* presented to the BCNR, the *contemporaneous records* created at the time of events

(including NJP documentation, performance reviews, TPU logs, and commendations), and the *highly redacted FOIA productions* cannot all be true simultaneously.

5) In some instances, the official Navy record denies the existence or involvement of specific officers who are plainly identified in contemporaneous NJP and TPU records. In others, FOIA productions — redacted by more than 90% — contain fragments that contradict both the sanitized official record and the contemporaneous evidence. These contradictions are not minor discrepancies. They are impossible to reconcile, establishing that one or more sets of records have been deliberately falsified.

6) The tri-fold mismatch — official, contemporaneous, and FOIA — demonstrates engineered deception. This is not administrative sloppiness, but deliberate revision of history. Such contradictions deny Plaintiff meaningful access to administrative remedies, obstruct judicial review, and shield Defendants from accountability by presenting mutually exclusive versions of the truth.

7) Plaintiff seeks:

   a) **Declaratory relief** that irreconcilable contradictions and falsified records cannot shield Defendants from liability or foreclose correction of military records; and

   b) **Injunctive relief** requiring forensic authentication of all relevant files, including metadata, revision histories, and access logs, to determine the true state of the record and prevent further reliance on falsified or contradictory evidence.

## XIII. PRAYER FOR RELIEF

This litigation is not born of vengeance, but of necessity. Plaintiff sought resolution outside the courtroom. Twice, Plaintiff presented reasonable settlement frameworks. Twice, the Navy refused to engage. Litigation is now the only remaining avenue for justice.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Declare that Defendants violated the APA, the Rehabilitation Act § 504, the ADA Title II (as to post-discharge program access), the Privacy Act, and the Constitution;

2. Order forensic authentication of all relevant records (including metadata, audit trails, access logs, revision histories), and appoint a special master if appropriate to supervise authentication and remedial record correction;

3. Order correction of military records under 10 U.S.C. § 1552, including (a) restoration of earned rank and promotion eligibility, (b) expungement of wrongful NJP/adverse entries, (c) correction of separation codes/RE codes, and (d) restoration of benefits consistent with corrected records;

4. Award back pay and related monetary relief as authorized by law (including under the Little Tucker Act, where applicable), and compensatory damages for intentional discrimination under the Rehabilitation Act and Privacy Act as supported by Exhibits 26–27, which detail the factual injuries and counterfactual trajectory of Plaintiff's service and life.;

5. Enter a declaratory judgment that falsified or irreconcilable records cannot shield Defendants from liability or foreclose correction, and enjoin further reliance on such records;

6. Issue appropriate mandamus relief compelling BCNR and related offices to process corrective actions within court-ordered timelines and without unlawful redactions;

7. Award reasonable costs and fees where permitted (e.g., under the Privacy Act and Rehabilitation Act);

8. Preserve public access to these proceedings absent a compelling, narrowly tailored interest consistent with the First Amendment and common law;

9. Plaintiff further requests such other and further relief as the Court deems just and proper; and

10. Plaintiff further offers in goodwill that Defendants retain the ability to resolve this matter through execution of the previously acknowledged settlement framework, thereby avoiding the need for judicial precedent and further expenditure of judicial resources. Plaintiff pleads this Bivens claim in the alternative, subject to the Court's discretion to sever or dismiss if other statutory remedies are deemed adequate. This claim is asserted solely to preserve Plaintiff's rights in the event that no statutory remedy is found to address the constitutional violations alleged.

This request is not made in vengeance, but in pursuit of precedent-contained justice.

---

## XIV. DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims so triable.

---

## XV. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. As a pro se litigant, Plaintiff respectfully requests liberal construction of pleadings. Haines v. Kerner, 404 U.S. 519 (1972).

## XVI. SIGNATURE

RESPECTFULLY SUBMITTED,

/s/ Osei Harper

Osei Harper    Digitally signed by Osei
Harper
Date: 2025.09.19
00:50:10 -04'00'

Osei Harper

Plaintiff, *pro se*

613 E. 9th Ave,

Havana, FL. 32333

09/15/2025

# EXHIBIT M

## Final Notice and Request to Chief Judge Boasberg (Signed, 10/13/2025)

## Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit M

# UNITED STATES DISTRICT COURT

for the
District of Columbia

| | |
|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se<br><br>v.<br><br><br>**DEPARTMENT OF THE NAVY; et al.;**<br>Defendants | Case No.   25-CV-03345<br><br>Hon. Chief Judge James E. Boasberg<br>(Administrative) |

## FINAL NOTICE AND REQUEST FOR JUDICIAL ACTION ON PENDING EMERGENCY MOTION (Dkt. 5)

### I. PRESENTED IN GOOD FAITH

1. Plaintiff, Osei Harper, respectfully submits this Final Notice to the Court. As of October 15, 2025, fourteen (14) calendar days have passed without a ruling, hearing, or scheduling order on Plaintiff's Emergency Ex Parte Motion for Temporary Restraining Order (Dkt. 5).

2. This notice is the final remaining administrative method available to Plaintiff to resolve this matter.

3. This delay persists despite Plaintiff's formal Notice of Procedural Delay (Dkt. 8) and Addendum Identifying Imminent Harm (Dkt. 9). Each day of inaction actively compounds the risk of irreparable prejudice through the potential spoliation of material evidence central to this case.

4. Plaintiff fully acknowledges the Court's docket-management discretion. This notice is submitted to preserve the procedural record and to respectfully afford the Court full opportunity for timely consideration prior to Plaintiff **seeking emergency injunctive relief from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 8(a)(2)**.

5. Plaintiff seeks only the fair and equitable application of justice. He respectfully implores the Court to rule upon his pending emergency motion as required under Federal Rule of Civil Procedure 65(b).

## II. REQUESTED RELIEF

6. At the risk of sounding redundant, Plaintiff respectfully requests immediate consideration and ruling on the TRO (Dkt. 5) submitted to the Court on September 30, 2025 from the duty judge, Chief Judge, or other available judicial officer as required to comply with Rule 65(b), consistent with the Court's established emergency procedures.

## III. RESERVATION OF RIGHTS

7. Plaintiff expressly reserves all rights to seek further relief—including but not limited to emergency appellate relief, mandamus, or other extraordinary remedies—should prejudicial judicial inaction persist. The prejudice is **ongoing, irreparable, and formally preserved in the record**. This Notice also demonstrates Plaintiff's exhaustive good faith efforts to exhaust all intra-district remedies prior to escalation, thereby reinforcing the necessity of higher intervention should judicial inaction persist.

Respectfully submitted this **13th day of October, 2025.**

## IV. SIGNATURE

RESPECTFULLY SUBMITTED,

/s/ Osei Harper

Osei
Harper

Digitally signed by
Osei Harper
Date: 2025.10.13
15:49:42 -04'00'

Osei Harper

Plaintiff, pro se

613 E. 9th Ave

Havana, FL 32333

347.804.1232

October 13, 2025

# EXHIBIT N

## Exhibit List Filed in the District Court
## (Signed)

## Harper v. Navy, No. 25-cv-03345
## (D.D.C.), Exhibit N

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| **OSEI HARPER,**<br>Plaintiff, pro se | ) | Case No.   25-CV-03345 |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| **DEPARTMENT OF THE NAVY; et. al.;** | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| | ) | |

## EXHIBITS LIST

| Exhibit No. | Document | Purpose |
|---|---|---|
| Ex. 1 | FOIA Response Letter (Partial Grant, 2025-09-15) | **Demonstrates exhaustion of administrative remedies** prior to judicial review. |
| Ex. 2 | Bernhard OMPF – Redacted FitReps (1989–1993) | **Demonstrates exhaustion of administrative remedies** prior to judicial review. |
| Ex. 3 | Promotion/Command Photo – Bernhard (Mar 1992) | **Contemporaneously verifies** CDR Bernhard's command of VF-1, contradicting the Navy's revised narrative. |
| Ex. 4 | Naval Aviation News (1991, VF-1 – CDR Steven C. Gaylor) | **Establishes the verified historical command timeline,** anchoring the truth in official Navy publications. |
| Ex. 5 | Naval Aviation News (1992, VF-124 – CAPT George L. Moe) | **Establishes the verified historical command timeline,** contradicting the Navy's current records. |
| Ex. 6 | LA Times (July 25, 1992 – Moe Relieved) | **Independent, public verification** of CAPT Moe's command, proving the impossibility of Bernhard's simultaneous command. |

| Ex. 7 | LA Times (May 14, 1993 – Sobieck Grounded) | Independent, public verification of CDR Sobieck's command, proving the impossibility of Bernhard's simultaneous command. |
|---|---|---|
| Ex. 8 | Naval Aviation News (1992, VF-51 – Sobieck Departs) | Corroborates CDR Sobieck's documented career path to VF-124 command, reinforcing the historical timeline. |
| Ex. 9a | Command Photo – CDR D.L. Cochran (VF-1) | Documents the Navy's revisionist attribution of command to Cochran, a key part of the alteration scheme. |
| Ex. 9b | Alternate Cochran Photo | Corroborates the revisionist attribution of command to Cochran. |
| Ex. 10 | Performance Review (Improper, May 4, 1992) | Illustrates the genesis of the retaliation and the pattern of improper documentation.. |
| Ex. 11 | Voluntary Statement (Aug 28, 1992) | Plaintiff's contemporaneous, sworn account of events, made at the time without motive to fabricate. |

| Ex. 12 | DD-149 (Signed) | Evidences Plaintiff's good-faith pursuit of administrative correction through the BCNR. |
| Ex. 13 | BCNR Case Acceptance | Confirms the BCNR's receipt and docketing of Plaintiff's application, proving exhaustion. |
| Ex. 14 | Sept 03, 2025 Settlement Acknowledgement | Proof of Defendants' receipt of Plaintiff's final good-faith settlement offer. |
| Ex. 15 | Attempted Communication – Proposed NDA | Demonstrates Defendants' tactics of obstruction by ignoring good-faith communications to avoid substantive engagement. |
| Ex. 16 | Plea for Engagement to Avoid Litigation | Establishes Plaintiff's good faith and desire to resolve the matter without burdening the Court. |
| Ex. 17 | Externally Verified Chain of Command Timeline | Conclusively disproves the Navy's altered records by establishing an objective, historical timeline of command, proving it was impossible for CDR Bernhard to have commanded VF-124 as the Navy now claims. |

| Ex. 18 | Analysis of Illogical and Impossible FitRep Chronology | Forensic analysis synthesizing Exhibit 2, demonstrating the specific impossibilities that prove alteration. |
| Ex. 19 | NCIS Glomar Response | Evidence of active concealment and bad-faith obstruction of Plaintiff's investigatory efforts. |
| Ex. 20 | BCNR 09/17/2025 Boilerplate Response | Evidence of Bad Faith and Institutional Delay – Tone deaf, generic response to a specifically tuned message that warranted engagement to avoid litigation. |
| Ex. 21 | 08/08/2025 Settlement Offer | Proof of Initial Good Faith Engagement |
| Ex. 22 | 08/08/2025 Settlement Acknowledgement (BCNR read receipt) | Proof of Defendants' receipt of Plaintiff's initial good-faith settlement offer. |
| Ex. 23 | 08/08/2025 Settlement Valuation Justification | Proof of Plaintiff's attempts to avoid litigation |
| Ex. 24 | 08/30/2025 Recalibrated Settlement Offer | Proof of Final Good Faith Engagement |
| Ex. 25 | 08/30/2025 Recalibrated Settlement Framework | Proof of Plaintiff's attempts to avoid litigation as a second |

| Ex. 26 | Sworn Personal Statement | Sworn Historical Statement of Events |
| Ex. 27 | Sworn Addendum to Personal Statement | Sworn Timeline of Factual Events and Counterfactual Timeline Contrast |
| Ex. 28 | FOIA Obstruction Pattern – Consolidated Evidence | Contradictory Responses from NCIS, SECNAV, PACFLEET, and NPC |
| Ex. 29 | DD-214 | Discharge Document |
| Ex. 30 | Performance review 01/1992 | Performance Review – 3.6 review Jan 31, 1992 |

## SIGNATURE

Respectfully submitted,

/s/ Osei Harper

**Osei Harper**  Digitally signed by Osei
Harper
Date: 2025.09.30 13:27:59
-04'00'

Osei Harper,

Plaintiff pro se

613 E. 9th Ave

Havana, FL 32333

347-804-1232

oseis572@gmail.com

Date: September 30, 2025

# EXHIBIT O

# Consolidated Evidence of FOIA Inconsistencies (Ex. 28)

# Harper v. Navy, No. 25-cv-03345 (D.D.C.), Exhibit O



DEPARTMENT OF THE NAVY
HEADQUARTERS
NAVAL CRIMINAL INVESTIGATIVE SERVICE
27130 TELEGRAPH ROAD
QUANTICO VA 22134-2253

5720 2025-009865
SER00JF/25U1402
August 7, 2025

Osei Harper
613 E. 9ᵗʰ Avenue
Havana, GL 32333

RE: FOIA Request 2025-NavyFOIA-009865

Dear Sir/Ma'am:

This responds to your August 1, 2025, Freedom of Information Act (FOIA) request seeking information pertaining to request all Naval Criminal Investigative Service (NCIS) records from January 1, 1990 to December 31, 1993 pertaining to Commander David L. Bernhard, USN. We received your request on August 1, 2025. For your reference, your request number is 2025-NavyFOIA-009865.

You have requested records concerning third parties. Please be advised that it is Naval Criminal Investigative Service (NCIS) policy not to disclose personal information in law enforcement records the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Thus, pursuant to FOIA 5 U.S.C. § 552 Exemptions (b)(6) and (b)(7)(C), NCIS can neither confirm nor deny the existence of the records you seek. Our review included consideration of the "foreseeable harm standard" (i.e., that information which might technically fall within an exemption should not be withheld from a FOIA requester unless the agency can identify a foreseeable harm or legal bar to disclosure).

Before we can begin to search for responsive records, you must first submit a written authorization (privacy waiver) from Mr. Bernhard allowing this service to release information to you. Alternatively, you may provide proof that the subject of your request is deceased, or demonstrate that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a release, death certificate, or public justification for release, NCIS cannot release records concerning a third party.

Under 32 CFR §701.12(a), you have a right to appeal our exemptions. Appeals may be submitted through the mail or electronically via SecureRelease. All appeals must be received within 90 calendar days from the date of this letter, contain the reasons for your appeal, and include a copy of this letter along with a copy of your original request.

1. You may appeal in writing to the Judge Advocate General of the Navy (Code 14), 1322 Patterson Avenue SE, Suite 3000, Washington Navy Yard, DC 20374-5066. Your letter must be postmarked (vice received) to the above office within the 90-day appeal limit. The letter of appeal and the envelope must both bear the notation: "FOIA Appeal."

5720 2025-009865
SER00JF/25U1402

2. Alternatively, you may appeal online via the public portal of the SecureRelease (the Department of the Navy's FOIA processing system). Go to https://www.securerelease.us and click "Login/Create Account" (in the top-right corner). You must have a SecureRelease account and have also submitted your request through SecureRelease in order to appeal. Once complete, you will be able to file your appeal by clicking the "Create Appeal" button in the top-right corner of your FOIA request page.

3. To appeal a request that was not submitted through the SecureRelease portal, go to https://www.securerelease.us and click "Login/Create Account" (in the top-right corner) and enter the required information to create an account. Next click the "Create Request" button on the SecureRelease portal homepage in order to create a new FOIA request (do not choose Privacy Act request). In the Request Description field, indicate that this is an appeal and make reference to the original FOIA tracking number you received to easily identify the request you wish to appeal.

If you choose not to appeal, you have the right to seek dispute resolution services. You may contact the Department of the Navy's FOIA public liaison, Mr. Chris Julka, at christopher.a.julka@navy.mil or (703) 697-0031 or the Office of Government Information Services (https://ogis.archives.gov/).

If you have any questions regarding this matter, please contact us at ncis_foia@ncis.navy.mil or (571) 305-9092.

Sincerely,

W. H. FERRELL III
Counsel

8/22/25, 8:18 AM                          Gmail - FOIA # 2025-NavyFOIA-009864 - Request Closed

 Gmail

Osei Harper <oseis572@**gmail.com**>

## FOIA # 2025-NavyFOIA-009864 - Request Closed
1 message

**CPF.FOIA.fct@navy.mil** <noreply@securerelease.us>                    Tue, Aug 19, 2025 at 9:43 PM
Reply-To: CPF.FOIA.fct@navy.mil
To: oseis572@gmail.com

Good Afternoon,

This is regarding your Freedom of Information Act (FOIA) request assigned case number 2025-NavyFOIA-009864. You
requested: I am requesting all official Department of the Navy records pertaining to Commander David L. Bernhard, USN,
SSN 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, covering the period January 1, 1990 through December 31, 1993. This includes:
- Officer service history and duty assignments
- Command billets, promotions, or relief from command
- Officer fitness reports (FITREPs)
- Records of any Non-Judicial Punishment (NJP), administrative reprimands, or adverse personnel actions
- Documentation of any relief of command, investigation, reassignment, or misconduct findings
- Command climate evaluations or Inspector General (IG) reports involving units under his leadership
- Internal communications, memoranda, or reports referencing his leadership conduct or personnel decisions
- Contextual records associated with photograph ID DN-SC-92-07007, dated March 20, 1992.
 These records are requested to verify and understand Commander Bernhard's official assignments and leadership
actions during the listed timeframe..

We are not able to process this request because we do not have cognizance over these records. However, National
Archives may have responsive records for your request. You may reach them at www.archives.gov/veterans/military-
service-records. We will be closing out this request.

If you have any questions or require further clarification, please email CPF.FOIA.fct@navy.mil.

Very Respectfully,

**Fleet Judge Advocate General's Office – FOIA Program**
**U.S. Pacific Fleet**
250 Makalapa Drive
Pearl Harbor, HI 96860
CPF.FOIA.fct@navy.mil

 Gmail

Osei Harper <oseis572@gmail.com>

## FOIA Submission Acknowledgment for 2025-NavyFOIA-010585
1 message

**erin.ramil@navy.mil** <noreply@securerelease.us>                    Wed, Aug 20, 2025 at 9:38 AM
Reply-To: erin.ramil@navy.mil
To: oseis@hotmail.com

08/20/2025
Osei Harper

2025-NavyFOIA-010585

Dear Osei Harper:

This is an acknowledgment of receipt of your Freedom of Information Act (FOIA) request dated 8/1/2025, and seeking records pertaining to "
Commander David L. Bernhard, USN
Specifically, I request copies of:
- All duty assignments and command postings during this period,
- Promotion or relief of command orders,
- Officer Fitness Reports (FITREPs),
- Any adverse administrative actions, non-judicial punishment (NJP), or internal notations relevant to leadership conduct.
". Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per FOIA, 5 U.S.C. §552 we process FOIA requests according to their order of receipt. Although the goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time-period. We will make every effort to comply with your request in a timely manner.

We will construe the submission of your request as an agreement to pay up to $25.00 in processing costs. You will be contacted before any additional fees accrue.

If you have any questions or wish to discuss reformulation or an alternative time-period for the processing of your request, please contact the FOIA office. Your request has been assigned reference number 2025-NavyFOIA-010585. Please refer to this identifier in any future correspondence.

Sincerely,

SECNAV/CNO FOIA/PA Program Office
Department of Navy
Office email: usn.ncr.dns.mbx.don-foia-pa@us.navy.mil
Office Phone: (202) 685-0412

 Gmail

Osei Harper <oseis572@gmail.com>

**FOIA Received 2025-NavyFOIA-010585**
1 message

**erin.ramil@navy.mil** <noreply@securerelease.us>
Reply-To: erin.ramil@navy.mil
To: oseis@hotmail.com

Wed, Aug 20, 2025 at 9:43 AM

Good Day,

Your Freedom of Information Act (FOIA) request of August 1, 2025 has been received by the Navy Personnel Command (NPC). This command received your request on August 20, 2025. Your FOIA request number is 2025-NavyFOIA-010585 and your FOIA correspondence file number is 5NPC0925.

If you have questions or concerns my contact information is below.

Sincerely,
ERIN J. RAMIL
Bureau of Naval Personnel
Office of Legal Counsel
FOIA/PA Officer, BUPERS-00J6
erin.j.ramil.civ@us.navy.mil
(901) 874-3165